# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| MIRROR WORLDS TECHNOLOGIES, LLC, <br> Plaintiff, | CIVIL ACTION NO. 6:13-cv-419 |
| v. | **JURY TRIAL DEMANDED** |
| APPLE INC., ET AL, <br> Defendants. | |

| | |
|---|---|
| MIRROR WORLDS TECHNOLOGIES, LLC, <br> Plaintiff, | CIVIL ACTION NO. 6:13-cv-941 |
| v. | **JURY TRIAL DEMANDED** |
| MICROSOFT CORPORATION, ET AL, <br> Defendants. | |

**DEFENDANTS MICROSOFT CORPORATION, DELL INC., HEWLETT-PACKARD CO., LENOVO (UNITED STATES) INC., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

Page

I.      L.R. 7(A)(1) STATEMENT OF ISSUES TO BE DECIDED ...............................................1

II.     INTRODUCTION.....................................................................................................................1

III.    THE '227 PATENT ..................................................................................................................2

IV.     ARGUMENT .............................................................................................................................5

        A.     Motions to Dismiss Under Rule 12(c)........................................................................5

        B.     Abstract Ideas Are Not Patentable .............................................................................6

        C.     *Mayo* Step 1:  The '227 Patent Claims an Abstract Idea ...........................................9

               1.     The '227 Patent Claims a Fundamental Practice ............................................9

               2.     The '227 Patent Claims Can Be Practiced in a Traditional Paper-
                      Based Setting................................................................................................11

        D.     *Mayo* Step 2:  The '227 Patent Claims Add No Inventive Concept to
               the Abstract Idea..........................................................................................................15

V.      CONCLUSION ......................................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
 134 S. Ct. 2347 (2014) ....................................................................1, 6, 7, 10, 11, 15, 16, 18

*Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada*,
 687 F.3d 1266 (Fed. Cir. 2012) ......................................................................................8, 17

*Bascom Research, LLC v. LinkedIn, Inc.*,
 No. 12-cv-06293, 2015 WL 149480 (N.D. Cal. Jan. 5, 2015) .........................................8, 11

*Bilski v. Kappos*,
 130 S. Ct. 3218 (2010) ....................................................................................................6, 10

*buySAFE, Inc. v. Google, Inc.*,
 No. 2013-1575, 2014 WL 4337771 (Fed. Cir. Sept. 3, 2014)...............................................7

*Cloud Satchel, LLC v. Amazon.com, Inc.*,
 No. 13-941, 2014 WL 7227942 (D. Del. Dec. 18, 2014)......................................................8

*Cogent Medicine, Inc. v. Elsevier Inc.*,
 No. C-13-4479, 2014 WL 4966326 6 (N.D. Cal. Sept. 30, 2014) ...................................8, 10

*Comcast IP Holdings I, LLC v. Sprint Communications Company L.P.*,
 No. 12-cv-205, 2014 WL 3542055 (D. Del. July 16, 2014) ..................................................9

*Content Extr. & Trans. LLC v. Wells Fargo Bank, Nat'l Ass'n*,
 Nos. 2013-1588, 2013-1589, 2014-1112, 2014-1687, 2014 WL 7272219
 (Fed. Cir. Dec. 23, 2014)...................................................................................................5, 7

*CyberFone Sys., LLC v. Cellco P'ship*,
 885 F. Supp. 2d 710 (D. Del. 2012) ...................................................................................10

*Cybersource Corp. v. Retail Decisions, Inc.*,
 654 F.3d 1366 (Fed. Cir. 2011) ......................................................................................8, 11

*Data Distribution Techs., LLC v. BRER Affiliates, Inc.*,
 No. 12-4878, 2014 WL 4162765 (D.N.J. Aug. 19, 2014)...................................................11

*Dealertrack, Inc. v. Huber*,
 674 F.3d 1315 (Fed. Cir. 2012 ......................................................................................8, 16

*DietGoal Innovations LLC v. Bravo Media LLC*,
 No. 13-cv-8391, 2014 WL 3582914 (S.D.N.Y. July 8, 2014) .........................................9, 12

*Digitech Image Techs., LLC v. Elects. for Imaging, Inc.*,
 758 F.3d 1344 (Fed. Cir. 2014).............................................................................................8

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*,
    No. 12-cv-517, 2015 WL 226084 (D.N.H. Jan. 15, 2015)............................................7, 8, 17

*Eclipse IP LLC v. McKinley Equipment Corp.*,
    No. 14-cv-742, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) .................................9

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*,
    No. 11-cv-2826,  2014 WL 4540319 (M.D. Fla. Sept. 11, 2014) .......................8

*Genetic Technologies Limited v. Laboratory Corporation of AmericaHoldings*,
    No. 12-cv-1736, 2014 WL 4379587 (D. Del. Sept. 3, 2014)...................................5

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
    313 F.3d 305 (5th Cir. 2002).........................................................................5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012). ........................................................6, 7, 15, 17

*Morales v. Square, Inc.*,
    No. 5:13-cv-1092, 2014 WL 7396568  (W.D. Tex. Dec. 30, 2014) ......................5

*Open Text S.A. v. Alfresco Software Ltd.*,
    No. 13-cv-4843, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ..........................8

*Open Text S.A. v. Box, Inc.*,
    No. 13-cv-04910, Dkt. No. 295 (N.D. Cal. Jan 20, 2015) ......................8

*Planet Bingo, LLC v. VKGS LLC*,
    576 F.App'x. 1005 (Fed. Cir. Aug. 26, 2014).................................5, 7, 11, 16, 17

*Smartgene, Inc. v. Advanced Biological Labs, SA*,
    555 Fed.Appx. 950 (Fed. Cir. 2014) ................................................................15

*Tuxis Technologies, LLC v. Amazon.com, Inc.*,
    No. 13-cv-1771,  2014 WL 4382446 (D. Del. Sept. 3, 2014)................................9

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 717 (Fed. Cir. 2014).....................................................................5, 11

*Walker Digital, LLC v. Google, Inc.*,
    No. 11-cv-318, 2014 WL 4365245 (D. Del. Sept. 3, 2014).......................9, 11, 12

## I.    L.R. 7(A)(1) STATEMENT OF ISSUES TO BE DECIDED

Are the asserted method claims of the '227 patent invalid pursuant to 35 U.S.C. § 101 where the claims are directed to the abstract idea of organizing documents in chronological order on a computer and do not add any inventive step to this abstract idea?

## II.    INTRODUCTION

Organizing documents in chronological order is an abstract idea outside the realm of patent protection, and chronologically organizing documents on a general purpose computer fares no better.  That is what the asserted patent, U.S. Patent No. 6,006,227 ("the '227 patent"), claims, and that is why the asserted claims of infringement based on the '227 patent must be dismissed.

In *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2356-57, 2359-60 (2014), the Supreme Court held that a "method of organizing human activity" did not constitute patentable subject matter and reiterated that to satisfy § 101 the claims must do something "significantly more" than simply describe an abstract idea: there must be an "inventive concept" to ensure the patent in practice amounts to more than an abstract idea.  By taking the age-old idea of time-based organization and using broad language to describe it (essentially, "perform the method somehow using a computer"), the '227 patent improperly claims ownership over an abstract idea, and fails to do something "significantly more" than describe organizing documents chronologically.  Indeed, all of the functions in the claimed methods of the '227 patent can be performed manually—in the real world—a telltale sign that the claims violate the requirements of § 101.  And the claims' bare reference to a generic "computer system" fails, as a matter of Supreme Court law, to give the claims patentable effect.

Because the asserted '227 patent claims fail to satisfy § 101, judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is proper.  Absent patentable subject matter, which is determinable

in this case from the face of the complaint and the '227 patent repeatedly referenced therein, Mirror

Worlds lacks a cognizable legal theory, and Mirror Worlds is entitled to no relief.  As such,

Defendants respectfully request that the Court dismiss Mirror Worlds' complaint.

### III.      THE '227 PATENT

The '227 patent describes, and the asserted claims singularly depict, a method for organizing

documents in a computer.  The purported invention identifies all documents based on time and

chronologically orders all of the documents in the computer in a "stream."  Early in its

specification, the '227 patent identifies the "present invention" as simply a system that stores

documents in a chronologically ordered stream:

> The present invention relates to an operating system in which documents
> are stored in a chronologically ordered "stream".  In other words, that is, as
> each document is presented to the operating system, the document is placed
> according to a time indicator in the sequence of documents already stored
> relative to the time indicators of the stored documents.

'227 patent, 1:4-10.  In its Summary of the Invention, the '227 patent explains that one object of

"the present invention" is to "to provide a document stream operating system in which documents

are stored in one or more chronologically ordered streams."  '227 patent, 2:17-19.  And, the

Detailed Description of the Preferred Embodiments begins by reiterating that "[t]his invention . . .

uses a time-ordered stream as a storage model."  *Id.* at 3:62-64.  The '227 patent, moreover,

explains why it uses time to order the documents:

> Time-based ordering is a natural guide to experience.  Time is the attribute
> that comes closest to a universal skeleton-key for stored experience.

*Id.* at 4:21-23.  The '227 patent even borrows the "time is a stream" metaphor by referring to the

chronologically ordered documents as "streams."

Indeed, according to the '227 patent, a "stream" is "a time-ordered sequence of documents

that functions as a diary of a person or an entity's electronic life."  *Id.* at 4:6-8.  The patent

continues that "[e]very document created and every document send [sic] to a person or entity is

2

stored in the main stream." *Id.* at 4:8-10. At its "tail," the stream contains documents from the

past, and "[m]oving away from the tail and toward the present and future, that is, toward [the] head

of the stream[,] more recent documents are found." *Id.* at 4:10-15. Additionally, "[m]oving beyond

the present and into the future, the stream contains documents allotted to future times and events,

such as, reminders, calendar items and to-do lists." *Id.* at 4:18-21. Users can also create

"substreams" from the main stream, such as "all E-mail I haven't responded to," or "all faxes I've

sent to Schwartz." *Id.* at 4:48-51. These streams can "operate dynamically," adding new

documents to the stream as they arrive. *Id.* at 5:1-13. According to the '227 patent, "like a diary, a

stream records evolving work, correspondence and transactions because historical context can be

crucial in an organizational setting." *Id.* at 4:28-30.

The patent describes a wide variety of potential applications for these chronologically

organized document diaries or "streams," including "storing technical an[d] electronic versions of a

newspaper or magazine" (*id.* at 11:5-7), a "stream-based checking account," (*id.* at 12:52-60), and

streams used for "budgeting, tracking expenditures, etc." (*id.* at 12:61-62). These document streams

"contain everything a user deals with in the user's electronic life in a convenient and searchable

location. *Id.* at 12:62-64. While the patent describes a multiplicity of embodiments and

applications for the chronologically organized streams, it identifies no algorithms or specialized

software that implements the organization.

Thus, the specification of the '227 patent describes the abstract idea of using the common-

sense notion of organizing documents on a computer in chronological order, and asserted

independent claim 13, from which all other asserted claims depend, is no different:

> 13. A method which organizes each data unit received by or generated by a
> computer system, comprising the steps of:
>
>> generating a main stream of data units and at least one substream, the main
>> stream for receiving each data unit received by or generated by the
>> computer system, and each substream for containing data units only from
>> the main stream;

3

> receiving data units from other computer systems;
>
> generating data units in the computer system;
>
> selecting a timestamp to identify each data unit;
>
> associating each data unit with at least one chronological indicator having the respective timestamp;
>
> including each data unit according to the timestamp in the respective chronological indicator in at least the main stream; and
>
> maintaining at least the main stream and the substreams as persistent streams.

As explained more fully below, none of the claim limitations, independently or taken as a whole, provide any meaningful addition to the abstract idea of chronologically organizing documents.  Claim 13 describes a method of organizing "data units" on a "computer system"; "data units" are simply items of information, while the "computer system" is simply a general purpose processing device.[1]  The asserted claims require a main stream and a substream, receiving data units from outside the system, generating data units inside the system, organizing these data units in chronological order, and maintaining these streams as "persistent" (*i.e.* updating based on new data units).  The dependent claims add limitations such as providing a timestamp of a past, present, or future time (claim 14), displaying the streams, segments of those streams, or abbreviated versions of the documents, in order (claims 15, 16, 20, 34, 39, and 55), requiring the data units to have "textual data, video data, audio data and/or multimedia data" (claim 17), providing access to different streams (claim 18), and archiving old data units (claim 22).  These limitations add nothing of patentable substance to the abstract notion of chronological organization.

---

[1]  The Court has construed "data unit" to mean "an item of information that is of direct user interest in the user's timeline" and construed "computer system" as "a processing device programmed to carry out a set of logical operations."  Dkt. No. 266 at 14.

## IV.     ARGUMENT

### A.     Motions to Dismiss Under Rule 12(c)

The Federal Rules of Civil Procedure provide an effective vehicle for prompt resolution of this case.  Rule 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Defendants' motion is appropriate here because "the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quotation omitted).  In ruling on Defendants' motion, the Court may look to the pleadings as well as exhibits to the pleadings (such as the patent-in-suit).

The question of invalidity under § 101 is a question of law.  *Planet Bingo, LLC v. VKGS LLC*, No. 576 F.App'x. 1005, 1007 (Fed. Cir. Aug. 26, 2014).  The legal nature of the § 101 inquiry makes it appropriate for a motion for judgment on the pleadings where, as here, there are no factual issues material to the § 101 analysis.  *See Content Extr. & Trans. LLC v. Wells Fargo Bank, Nat'l Ass'n*, Nos. 2013-1588, 2013-1589, 2014-1112, 2014-1687, 2014 WL 7272219, at *7 (Fed. Cir. Dec. 23, 2014); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 717 (Fed. Cir. 2014); *Loyalty Conversion Systems Corporation v. American Airlines, Inc.*, No. 13-cv-655, 2014 WL 4364848, *47-48 (E.D. Tex. September 3, 2014) (all granting or affirming grant of Rule 12 motion based on § 101); *Genetic Technologies Limited v. Laboratory Corporation of AmericaHoldings*, No. 12-cv-1736, 2014 WL 4379587 (D. Del. Sept. 3, 2014) (same).  Indeed, courts have recognized the "'salutary effects' of addressing *section 101*" before substantial discovery has occurred.  *Morales v. Square, Inc.*, No. 5:13-cv-1092, 2014 WL 7396568, at *9 (W.D. Tex. Dec. 30, 2014) (quoting *Ultramercial*, 772 F.3d at 718-19 (J. Mayer, concurring)).

### B.    Abstract Ideas Are Not Patentable

The Supreme Court and Federal Circuit have affirmed and reaffirmed, that abstract ideas are

not patentable.  Abstract ideas are "basic tools of scientific and technological work" and "free to all

men and reserved exclusively to none."  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132

S. Ct. 1289, 1293 (2012).  Monopolization of those tools through the grant of a patent impedes

innovation rather than promotes it.  *Id.*

The statutory § 101 inquiry is a "threshold test."  *Bilski v. Kappos*, 130 S. Ct. 3218, 3225

(2010).  Far from a "dead letter," the Supreme Court has held that the § 101 inquiry should be

applied *more* rigorously and performs a meaningful "screening function."  *Mayo*, 132 S. Ct. at

1303-04.  The goal in applying § 101 is to "distinguish between patents that claim the 'buildin[g]

block[s]' of human ingenuity and those that integrate the building blocks into something more."

*Alice*, 134 S. Ct. at 2354 (quoting *Mayo*, 132 S. Ct. at 1303).  The question is whether the patent

"would risk disproportionately tying up" use of the abstract idea.  *Mayo*, 132 S. Ct. at 1294, 1303.

And in this case, Mirror Worlds seeks improperly to "tie up" the abstract idea of chronological

organization on a computer.

In determining whether a patent purports to claim an abstract idea, the Supreme Court

applies a two-part analysis.  First, the Court must determine whether the claims are directed to

patent-ineligible concepts, such as an abstract idea.  *Alice*, 134 S. Ct. at 2355 (citing *Mayo*, 132 S.

Ct. at 1296-1297).  Second, the Court asks, "'[w]hat else is there in the claims before us?'"  *Alice*,

134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1297).  To be patent eligible, the claims must

possess an "inventive concept" to ensure the patent in practice amounts to "significantly more" than

an abstract idea.  *Mayo*, 132 S. Ct. at 1294).  "Simply appending conventional steps, specified at a

high level of generality," is not "*enough*" to supply an "inventive concept."  *Id.*, 132 S. Ct. at 1300,

1297, 1294.

In *Alice,* the Supreme Court made clear that when a claim is directed to an abstract idea, such as "organizing human activity," "merely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2352, 2356.  The method claims in *Alice* invoked the use of a computer to create and maintain electronic "shadow records," which the Court found amounted to nothing more than "electronic recordkeeping—one of the most basic functions of a computer." *Id.* at 2356, 2359.  "The same is true with respect to the use of a computer to obtain data, adjust account balances, and issue automated instructions; all of these computer functions are 'well-understood, routine, conventional activit[ies]' previously known to the industry." *Id.* at 2359 (quoting *Mayo*, 132 S. Ct. at 1294).  The claims did not "purport to improve the functioning of the computer itself," and the claims contained "no specific or limiting recitation of . . . improved computer technology." *Alice*, 134 S. Ct. at 2359 (quoting Brief for the United States as *Amicus Curiae* 28-30).  Accordingly, as the Court explained, applying an abstract idea to "some unspecified, generic computer" does not transform an abstract idea into a patentable invention. *Id.* at 2360; *see also East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-cv-517, 2015 WL 226084, at *7 (D.N.H. Jan. 15, 2015) ("The lesson of Aliceand [sic] the other cases [addressing § 101] is that when the alleged innovation involves the use of a generic computer to do what such computers typically do, i.e., speed up a process by eliminating the need for human activity, that innovation is not an invention eligible for patent protection.").

Under the guidelines specified by the Supreme Court, the Federal Circuit has repeatedly invalidated claims in a variety of technological contexts where they simply recite an abstract idea. *See Content Extr.*, 2014 WL 7272219 at *3-5 (data collection, recognition, and storage); *buySAFE, Inc. v. Google, Inc.,* No. 2013-1575, 2014 WL 4337771, *4 (Fed. Cir. Sept. 3, 2014) (creating a contractual relationship in the form of a transaction performance guaranty); *Planet Bingo*, 576 F.App'x. at 1007-09 (managing a bingo game); *Digitech Image Techs., LLC v. Elects. for Imaging,*

*Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (method of "***organizing*** information through mathematical correlations") (emphasis added); *Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1270-71, 1278 (Fed. Cir. 2012) (providing a stable value protected life insurance policy); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (processing car loan applications through a clearinghouse); *Fort Properties, Inc. v. American Master Lease LLC*, 671 F.3d 1317, 1322 (Fed. Cir. 2012) (investing in real estate without incurring tax liability); *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011) (providing a fraud detection system for credit card purchases over the Internet).

Since *Alice,* district courts have also respected the limitations imposed by § 101 and have invalidated patents as failing to claim patentable subject matter.  *See* Ex. 1, *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910, Dkt. No. 295, at 5, 10 (N.D. Cal. Jan. 20, 2015) (method of ***organizing*** human activity allowing "groups of people to collaborate and share information without specialized software or expertise") (emphasis added); *East Coast Sheet Metal*, 2015 WL 226084, at *1, 6, 10 (mapping desired system characteristics to standard parts to create a manufacturing blueprint); *Bascom Research, LLC v. LinkedIn, Inc.*, No. 12-cv-06293, 2015 WL 149480, at *8, 12 (N.D. Cal. Jan. 5, 2015) (creating, storing and using relationships between document objects); *Cloud Satchel, LLC v. Amazon.com, Inc.*, No. 13-941, 2014 WL 7227942, at *6, 9 (D. Del. Dec. 18, 2014) (cataloguing documents in order to facilitate their retrieval from storage); *Cogent Medicine, Inc. v. Elsevier Inc.*, No. C-13-4479, 2014 WL 4966326, at *4, 6 (N.D. Cal. Sept. 30, 2014) (maintaining and searching a library of information); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-4843, 2014 WL 4684429, *4 (N.D. Cal. Sept. 19, 2014) (engaging in the "commonplace and time-honored practice of interacting with customers to promote marketing and sales"); *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 11-cv-2826,  2014 WL 4540319, *4 (M.D. Fla. Sept. 11, 2014) (routinely modifying transaction amounts and depositing the designated, incremental

differences into a recipient account); *Eclipse IP LLC v. McKinley Equipment Corp.*, No. 14-cv-742, 2014 WL 4407592, at *7 (C.D. Cal. Sept. 4, 2014) (asking someone whether they want to perform a task, and if they do, waiting for them to complete it, and if they do not, asking someone else); *Loyalty Conversion Systems*, 2014 WL 4364848, *6 (exchanging loyalty award credits of different vendors); *Walker Digital, LLC v. Google, Inc.*, No. 11-cv-318, 2014 WL 4365245, *5 (D. Del. Sept. 3, 2014) (controlled exchange of information about people as historically practiced by matchmakers and headhunters); *Tuxis Technologies, LLC v. Amazon.com, Inc.*, No. 13-cv-1771,  2014 WL 4382446, *3 (D. Del. Sept. 3, 2014) (the "fundamental concept of upselling—a marketing technique as old as the field itself"); *Comcast IP Holdings I, LLC v. Sprint Communications Company L.P.*, No. 12-cv-205, 2014 WL 3542055, *3-*4 (D. Del. July 16, 2014) (determining if a decision is required); *DietGoal Innovations LLC v. Bravo Media LLC*, No. 13-cv-8391, 2014 WL 3582914, *10 (S.D.N.Y. July 8, 2014) (selecting meals that align with the user's individual preferences and nutritional goals and calculating the dietary impact of the addition or subtraction of certain foods).

There can be no doubt that section 101 provides a robust tool for curbing improper attempts to monopolize abstract ideas, no matter what the subject area.  That tool applies here.

## C. *Mayo* Step 1:  The '227 Patent Claims an Abstract Idea

While the Supreme Court has not provided a precise definition of what constitutes an "abstract idea," the Court and the Federal Circuit have provided guidance that yield one conclusion—the asserted '227 patent claims recite an abstract idea and do not cover patentable subject matter.

### 1. The '227 Patent Claims a Fundamental Practice

As explained above, claims directed solely to fundamental, long-standing practices are too abstract to patent.  Such is the case here where the '227 patent claims simply recite a method directed to the abstract idea of organizing information, albeit in chronological order.  As also

explained above, the '227 patent states that "[t]he present invention relates to an operating system in which documents are stored in a chronologically ordered 'stream.'" '227 patent, 1:4-6; *see also id*. at 2:17-19 (one object of "the present invention" is to "to provide a document stream operating system in which documents are stored in one or more chronologically ordered streams"); claim 13, preamble ("A method which organizes each data unit received by or generated by a computer system"). Like the claims at issue in *Bilski*, which outlined "a method of organizing human activity," and the claims at issue in *Alice*, which were directed to "a fundamental economic practice long prevalent in our system of commerce," and, again, the claims in *Digitech*, which described "a process of organizing information through mathematical correlations," the '227 patent claims an abstract idea, which has long been practiced. *Alice*, 134 S. Ct. at 2356 (quoting *Bilski*, 130 S. Ct. at 3218).

For as long as humankind has kept records, it has used time as basis for organizing those records. Indeed, the first book of the Old Testament—Genesis, which means "origin" or "*beginning*"—describes, in chronological order, the creation of the universe to the story of Joseph. Organizing information chronologically, therefore, is very old and very natural, as the patent itself notes: "Time-based ordering is a natural guide to experience. Time is the attribute that comes closest to a universal skeleton-key for stored experience." '227 patent, 4:21-23. Courts have found this sort of fundamental organizational concept to be "manifestly apparent" and not eligible for patent protection. *Cogent Medicine*, 2014 WL 4966326, at *4, 6 (finding that the claims were directed to "the abstract idea of maintaining and searching a library of information" and that the method steps only recite "using a computer to…merely automate[] what was previously done manually by assistants or librarians"); *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 719 (D. Del. 2012) (claim which "recites steps by which data is obtained, sorted and stored" represents "nothing more than a disembodied concept of data sorting and storage"); *see also Data*

*Distribution Techs., LLC v. BRER Affiliates, Inc.*, No. 12-4878, 2014 WL 4162765, at *11(D.N.J. Aug. 19, 2014) (finding that the idea of maintaining a database and updating users about new information was an abstract idea); *see also Walker Digital*, 2014 WL 4365245, at *5 ("[N]one of these [claim] limitations adds anything meaningful to the basic concept of controlled exchange of information about people as historically practiced by matchmakers and headhunters . . . ."). When compared to the abstract idea of "intermediated settlement" at issue in *Alice*, organizing documents in chronological order is even more basic.

### 2.     The '227 Patent Claims Can Be Practiced in a Traditional Paper-Based Setting

Another telltale sign of an impermissibly abstract claim is one that merely grafts generic, computer-based limitations on processes or functions that humans can perform.  *See Alice*, 134 S. Ct. at 2359-60 (invalidating claims requiring the use of a computer to create and maintain electronic "shadow records," which simply amount to "electronic recordkeeping [as opposed to human recordkeeping]"); *Bascom Research*, 2015 WL 149480, at *8-9, 12 (invalidating claims directed to creating, storing, and using relationships between data objects because the concept "can also be performed mentally" and "such mental processes" are "generally considered…unpatentable.") (internal quotation marks omitted); *Ultramercial*, 772 F.3d at 715, 717 (invalidating claims that "simply instruct the practitioner to implement the abstract idea with routine, conventional activity."); *Planet Bingo*, 576 F.App'x. at 1007-09 (invalidating claim for "selecting, storing, and retrieving two sets of numbers" could be "carried out by a human using pen and paper"); *CyberSource*, 654 F.3d at 1371 ("[M]ethods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas—the 'basic tools of scientific and technological work' that are open to all."); *Loyalty Conversion Systems*, 2014 WL 4364848, at *10 ("As confirmation of the simplicity of the functions that the claims assign to computers, it is clear that each of the functions recited in the asserted claims . . . could be performed by a human being

without the aid of a computer of any kind."); *Walker Digital*, 2014 WL 4365245, at *5 ("[A]ll of these steps could be performed (and have been performed) by human beings interacting with one another prior to the filing of the [asserted] patent."); *DietGoal Innovations*, 2014 WL 3582914, at *10 (The claimed steps were "conventional and quotidian tasks.  A person can perform them without the aid of any particular or structured method and without the need of any technology.").

The steps of the asserted '227 patent claims are precisely the kinds of abstract actions performed by humans.  To illustrate this point, Defendants provide below an example of how, using the claimed methods, a court's docket system could chronologically organize each document received by or generated by the court for a particular case:

| Claim Limitation | Routine Steps in Organizing Case Documents |
|---|---|
| 13.  A method which organizes each data unit received by or generated by a computer system | The court employs a method that organizes each document received by or generated by the Court pertaining to a particular case. |
| generating a main stream of data units and at least one substream, the main stream for receiving each data unit received by or generated by the computer system, and each substream for containing data units only from the main stream | The court clerk generates a main stream (the docket) for a case; the main stream receives each document received by or generated by the court and sorts those documents chronologically.  These documents, which define the case records, are of direct interest to the court and parties.  Documents from within this main stream can be organized into substreams, which contain documents only from the main stream.  For example, the judge may request copies of all of the summary judgment briefing in the case. |
| receiving data units from other computer systems; | The court's docket receives all of the documents filed by the parties. |
| generating data units in the computer system; | The docket includes documents that the court generates, such as orders. |
| selecting a timestamp to identify each data unit; | Pleadings, notices, and orders are given a timestamp to identify the date and time each was filed. |

| Claim Limitation | Routine Steps in Organizing Case Documents |
|---|---|
| associating each data unit with at least one chronological indicator having the respective timestamp | The court would generate a chronological indicator,[2] such as a docket indicator, for the document based on the time stamp of the document. |
| including each data unit according to the timestamp in the respective chronological indicator in at least the main stream; and | The court's docketing system would then use the docket indicator to place and store the document in chronological order in the main stream. |
| maintaining at least the main stream and the substreams as persistent streams. | The court clerk maintains the case docket and updates it as pleadings are filed and orders are issued.  The court also keeps copies of summary judgment briefing for reference in the case, which is updated as necessary with any additional filings.  Likewise, if the judge were to request copies of the summary judgment briefing that set would be updated as new briefs were filed. |
| 14.  The method of claim 13, wherein each timestamp is selected from the group consisting of: past, present, and future times. | The docket's main stream would have portions that point to the past, present, and future; for example, a party files documents in the present, previously filed documents are in the past, and scheduled filings, such as pre-trial statements, are in the future. |
| 15.  The method of claim 13, further comprising the step of displaying the streams on a display device as visual streams. | All of the case documents are available for viewing in the court clerk's office. |
| 16.  The method of claim 15, wherein the step of displaying the streams further comprises the steps of: a) receiving from a user one or more indications of one or more selected segments of the streams corresponding to one or more selected intervals of time, and b) displaying the selected segments. | The court asks to see all summary judgment motion briefing filed after the *Markman* order, and the clerk provides copes of that briefing. |
| 17.  The method of claim 13, wherein each data unit includes textual data, video data, audio data and/or multimedia data. | The pleadings, notices and orders contain textual data.  The parties also submit claim construction tutorials with video data, audio data, and multimedia data, as well as textual data. |

---

[2]  The Court construed "chronological indicator" as simply a "data structure that contains at least a timestamp."  Dkt. No. 266 at 14.

| Claim Limitation | Routine Steps in Organizing Case Documents |
|---|---|
| 18.  The method of claim 13, further comprising the step of: providing access to a first stream from a second stream by generating a data unit indicating the first stream. | Access to another case docket is provided by the filing of a Notice of Related Case in the docket. |
| 20. The method of claim 13, further comprising the step of: displaying data from one of the data units in abbreviated form. | The docket lists an abbreviated description of each filing in the case. |
| 22.  The method of claim 13, further comprising the step of: archiving data units having timestamps older than a specified time point. | The court clerk archives case documents that are more than two years old. |
| 34.  A method as in claim 13 including displaying on a display device only the data units that are within a segment of a stream selected from the main stream and the at least one substream, without at the same time displaying data units that are within the selected stream but not within said segment, | The court views a summary judgment motion and opposition, without at the same time viewing other documents filed in the case. |
| wherein the displayed data units maintain a time order of the data units as in the selected stream, | The summary judgment motion and opposition as viewed by the court are maintained in the order in which they were filed. |
| and the segment corresponds to a selected interval of time shorter than the time interval of time-ordered data units in the entire selected stream, | The selected summary judgment motion and opposition corresponds to a briefing schedule shorter than the time interval of the time-ordered documents in the entire docket. |
| said displaying taking place while the entire selected stream persists, and | The court views copies of the summary judgment briefing while the overall docket is updated as additional documents are filed. |
| said segment moving toward an earlier or a later time in response to an input from a user interface to thereby change the set of data units being displayed. | The court asks to review the reply in support of the summary judgment motion, filed after the motion and opposition. |
| 39.  The method as in claim 34 in which said displaying comprises displaying on the display device a time-based identification of the time interval corresponding to the chronological indicators of the concurrently displayed data units that are within said segment. | The selected summary judgment briefing is stamped with the time stamp indicating the time in which it was filed, and a docket indicator indicating the order in which it was filed. |

| Claim Limitation | Routine Steps in Organizing Case Documents |
|---|---|
| 55.  The method of claim 13 further comprising: identifying a set of data units from said main stream or at least one substream based on search criteria provided by a user, | The court provides the clerk criteria to search for and identify all docket entries related to case-dispositive motions. |
| displaying document representations for some, but not all, of the set of data units identified in the preceding step; and | The clerk provides the court docket entry descriptions for some, but not all, of the docket entries related to case-dispositive motions. |
| displaying at different times different plural document representations of the data units in the set in response to a user selecting through a user interface element said different document representations. | |

As illustrated by this example, all of the claimed steps are "routine functions that can readily be performed by a generic computer with conventional programming"—as well as a person—and are therefore unpatentable abstract ideas.  *Loyalty Conversion Systems,* 2014 WL 4364848, at *7.

**D.    *Mayo* Step 2:  The '227 Patent Claims Add No Inventive Concept to the Abstract Idea**

Because the asserted '227 patent claims are directed to an abstract idea, they must include concrete elements sufficient to "transform an abstract idea into a patent-eligible invention."  *See Alice*, 134 S. Ct. at 2360.  Nothing in the asserted claims adds anything to the abstract idea of organizing documents in chronological order that would render the claims patentable under § 101.

The '227 patent claims' requirement for a generic "computer system" or "display device" do not provide patentable substance to the abstract idea.  "[M]erely requir[ing] generic computer implementation" does not save invalid claims.  *Alice*, 134 S. Ct. at 2357.  Here, like in *Alice,* because the "patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer,' . . . that addition cannot impart patent eligibility."  *Id.* at 2358 (quoting *Mayo,* 132 S. Ct. at 1301).[3]  Based on this test, the Federal Circuit, in *Planet Bingo,*

---

[3]    Even before *Alice,* in *Smartgene, Inc. v. Advanced Biological Labs, SA,* 555 Fed.Appx. 950, 954-55 (Fed. Cir. 2014), the Federal Circuit found that the inclusion of a "computing device" in a method for "guiding the selection

*(Cont'd on next page)*

refused to confirm claims directed to an abstract idea simply because the claims required "a computer with a central processing unit," "a memory," "an input and output terminal," "a printer," (in some cases) a "video screen," and "a program . . . enabling" the steps of managing a game of bingo. *Planet Bingo,* 576 F.App'x. at 1008-09.  The '227 patent claims' recitation of a "computer system" and a "display device" provide far less detail than the "generic computer implementation" found in *Planet Bingo.*  Because, moreover, "display of information" is a "basic computer function," the requirement for a "display device" does not render this abstract idea patentable. *Loyalty Conversion Systems*, 2014 WL 4364848, at *9 (citing *Dealertrack*, 674 F.3d at 1333).  For each '227 claimed step, the function performed by the computer is "purely conventional."  *Alice*, 134 S. Ct. at 2359.

Further, the '227 patent claims contain only the generic steps of, for example, "receiving data units," "selecting a timestamp" for each data unit, "associating each data unit with at least one chronological indicator having the respective timestamp," "maintaining" the streams as "persistent," and "archiving" old documents.  These steps are "largely functional in nature and do little more than set forth the general concept" of time-ordered organization of documents.  *Loyalty Conversion Systems*, 2014 WL 4364848, at *7. They are "mundane operation[s] that can be performed by any generic computer with conventional programming," as well as in a traditional paper-based system. *Id.*  And, to the extent Mirror Worlds asserts that the '227 patent includes complex software that implements these functional method steps, that software is neither described in the '227 patent's specification nor is it claimed.  Indeed, in *Planet Bingo*, the Federal Circuit rejected the patentee's argument that the claims covered patentable subject matter because the invention included

---

*(Cont'd from previous page)*

of a therapeutic treatment regimen" did not save the claim.  The court explained that the claim "does no more than call on a 'computing device,' with basic functionality for comparing stored and input data and rules, to do what doctors do routinely."  *Id.* at 954.

"complex computer code with three distinct subparts."  576 F.App'x. at 1008-09.  The court found

that Planet Bingo's claims contained no such limitations but only recited "a program that is used for

the generic functions of storing, retrieving, and verifying a chosen set of bingo numbers against a

winning set of bingo numbers."  *Id.*  Similarly, in *East Coast Sheet Metal*, the court found claims

directed to the abstract idea of mapping a desired system to standard parts to create a manufacturing

blueprint lacked an inventive concept because "[t]here is no language in the patents-in-suit that

describes the computer programming involved in the invention as operating in anything other than

their normal, expected manner."  2015 WL 226084, at *1, 6, 9-10 (internal quotation marks

omitted).  Again, here, as in *East Coast Sheet Metal*, there is no language in the '227 patent's

specification or claims that describes any specific programming required to perform the claimed

method.[4]  At bottom, the functional limitations of the '227 patent do nothing to avoid

"disproportionately tying up the use of the [abstract idea]" of chronological organization.  *Mayo*,

132 S. Ct. at 1294.

None of the other elements of the asserted claims add anything to the abstract idea of

chronologically organizing documents.  Indeed, the patent relies heavily on the "diary" metaphor,

even criticizing prior art computer systems that were too *unlike* traditional paper-based systems.

*See* '227 patent, 1:32-2:9 (explaining that one of the invention's objectives is to overcome the

"disadvantages" of computer-based systems, providing a system *more* similar to traditional paper-

based systems for functions such as file naming and archiving).  The patent claims "data units," but

a "data unit" is simply an item of information, including "pictures, correspondence, bills, movies,"

as well as "calendar items and to-do lists."  *Id.* at 4:16-21.  The patent claims "streams" of

---

[4]   In its Claim Construction Order (Dkt. No. 266), this Court confirmed that the asserted claims of the '227 patent do
not require any particularized programming.  *See, e.g.*, Dkt. No. 266 at 11 (declining for example, to read "linking
and storing limitations" into the construction of "chronological indicator").  While claim construction is not
necessary to resolve the section 101 challenge here, *see Bancorp Servs*, 687 F.3d at 1273-74, the Court's recent
ruling in this case further confirms that the claims fail to meet the requirements for patentable subject matter on
their face.

documents, but a "stream" is nothing more than the electronic version of a stack or filing cabinet of time-ordered paper documents.  *Id.* at 4:6-8 (A "stream" is "a time-ordered sequence of documents that functions as a diary of a person or an entity's electronic life.").  The claims recite a "chronological indicator," but that is simply a data structure that associates a document with its corresponding timestamp.  Using such data structures is a well-known computer technique that, as employed here, is functionally identical to simply stamping the face of a paper document with the date and time on which it was received or generated.  None of the claim limitations amount to anything more than the "electronic recordkeeping" and "basic [computer] functions" the Supreme Court has found invalid.  *Alice*, 134 S. Ct. at 2359.

## V.    CONCLUSION

The '227 patent is invalid because disguising an abstract idea in a generic computer environment and reciting well-known steps to perform the idea is insufficient to bring it within § 101.  For these reasons, Defendants respectfully request that the Court grant Defendants' motion for judgment on the pleadings.

January 23, 2015                                    Respectfully submitted,

                                                   */s/ Mark N. Reiter*
                                                   William B. Dawson SBN 05606300
                                                   wdawson@gibsondunn.com
                                                   Mark N. Reiter SBN 16759900
                                                   mreiter@gibsondunn.com
                                                   Michael A. Valek SBN 24044028
                                                   mvalek@gibsondunn.com
                                                   Mandy Pezzano SBN 24074886
                                                   mpezzano@gibsondunn.com
                                                   GIBSON, DUNN & CRUTCHER LLP
                                                   2100 McKinney Avenue
                                                   Suite 1100
                                                   Dallas, TX 75201-6912
                                                   Telephone: 214.698.3100
                                                   Facsimile: 214.571.2900

                                                   *Attorneys for Defendants Microsoft Corporation, Dell
                                                   Inc., Hewlett-Packard Co., and Lenovo (United States)
                                                   Inc.*


                                                   */s/ Allan M. Soobert* (with permission)
                                                   Allan M. Soobert
                                                   PAUL HASTINGS LLP
                                                   875 15th Street, N.W.
                                                   Washington, DC 20005
                                                   Telephone: (202) 551-1822
                                                   Facsimile: (202) 551-0222
                                                   allansoobert@paulhastings.com
                                                   *Attorneys for Defendants Samsung
                                                   Electronics America, Inc. and Samsung
                                                   Telecommunications America, LLC.*


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV–5(a).  As such, this document was served on all counsel who have consented to electronic service on January 23, 2015.


                                                   */s/ Mark N. Reiter*
                                                   Mark N. Reiter

19