**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| MIRROR WORLDS<br>    TECHNOLOGIES, LLC,<br>    Plaintiff, | CIVIL ACTION NO. 6:13-cv-419 |
| v. | **JURY TRIAL DEMANDED** |
| APPLE INC., ET AL,<br>    Defendants. | |

| | |
|---|---|
| MIRROR WORLDS<br>    TECHNOLOGIES, LLC,<br>    Plaintiff, | CIVIL ACTION NO. 6:13-cv-941 |
| v. | **JURY TRIAL DEMANDED** |
| MICROSOFT CORP., ET AL,<br>    Defendants. | |

**DEFENDANT APPLE INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

**Page**

I.  L.R. 47(B) STATEMENT OF ISSUES TO BE DECIDED. .................................................. 1

II.  INTRODUCTION ............................................................................................................... 1

III.  BACKGROUND ................................................................................................................ 2

    A.  Relevant Procedural History ..................................................................................... 2

    B.  The '227 Patent ......................................................................................................... 3

        1.  Background on the '227 Patent .................................................................... 3

        2.  Common Asserted Claims:  Claims 13-18, 20, 22, 34, 39, and 55 ........................ 5

        3.  Apple Asserted Claims:  Claims 40, 42, 43, and 44 ............................................. 7

IV.  ARGUMENT ...................................................................................................................... 8

    A.  Invalidity Under Section 101 Warrants Judgment on the Pleadings ............................. 8

    B.  The Asserted Claims of the '227 Patent Are Invalid Under Section 101 ...................... 8

        1.  The Asserted Claims Are Directed to An Abstract Idea (*Mayo* Step 1) ................. 8

        2.  The '227 Patent Claims Add No "Inventive" Concept to the Abstract Idea (*Mayo* Step 2) .................................................................................................. 13

V.  CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alice Corp. v. CLS Bank Int'l,*
   134 S. Ct. 2347 (2014) ................................................................................. 1, 9, 15, 16, 17

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
   No. 1:10-cv-910, 2014 U.S. Dist. LEXIS 152447 (E.D. Va. Oct. 24, 2014) ............................ 9

*Bascom Research, LLC v. Facebook, Inc.,*
   --- F. Supp. 3d ----, 2015 WL 149480 (N.D. Cal. Jan. 5, 2015) ......................................... 9, 17

*Bascom Research, LLC v. LinkedIn, Inc.,*
   No. 12-cv-06293, 2015 WL 149480 (N.D. Cal. Jan. 5, 2015) ................................................ 10

*Bilski v. Kappos,*
   130 S. Ct. 3218 (2010) ............................................................................................................. 8

*Cogent Medicine, Inc. v. Elsevier Inc.,*
   No. C-13-4479-RMW, 2014 U.S. Dist. LEXIS 139856 (N.D. Cal. Sept. 30, 2014) ............... 10

*Content Extr. & Trans. LLC v. Wells Fargo Bank,*
   Nos. 2013-1588, 2013-1589, 2014-1112, 2014-1687, 2014 WL 7272219 (Fed. Cir. Dec. 23,
   2014) ....................................................................................................................................... 10

*CyberFone Sys., LLC v. Cellco Partnership,*
   885 F. Supp. 2d 710 (D. Del. 2012) ....................................................................................... 11

*CyberSource Corp. v. Retail Decisions, Inc.,*
   654 F.3d 1366 (Fed. Cir. 2011) ................................................................................... 13, 14, 19

*Data Distribution Techs., LLC v. Brer Affil. Inc.,*
   No. 12-4878, 2014 WL 4162765 (D.N.J. Aug. 19, 2014) ....................................................... 11

*DDR Holdings, LLC v. Hotels.com, L.P.,*
   773 F.3d 1245 (Fed. Cir. 2014) ....................................................................... 2, 15, 17, 18, 19

*Diamond v. Diehr,*
   450 U.S. 175 (1981) ................................................................................................................ 17

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.,*
   758 F.3d 1344 (Fed. Cir. 2014) ................................................................................................ 9

*East Coast Sheet Metal Fab. Corp. v. Autodesk, Inc.,*
   No. 12-cv-517, 2015 WL 226084 (D.N.H. Jan. 15, 2015) ............................................... 15, 18

*Enfish, LLC v. Microsoft Corp.*,
  No. 2:12-cv-07360, 2014 U.S. Dist. LEXIS 156760 (C.D. Cal. Nov. 3, 2014) .................. 9, 15

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) ....................................................................................................... 9, 11, 12

*Mayo Collaborative Services v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012) ....................................................................................................... 8, 15

*Mirror Worlds Tech., LLC v. Apple, Inc.*,
  No. 6:13-cv-00419-RWS (E.D. Tex. May 23, 2013) ................................ 2, 3, 6, 8, 13, 16, 19

*Mirror Worlds Tech., LLC v. Microsoft Corp.*,
  No. 6:13-cv-941-RWS (E.D. Tex. May 23, 2013) .................................................................... 2

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
  601 F.3d 1319 (Fed. Cir. 2010) ............................................................................................. 19

*The Money Suite Co. v. 21st Century Ins. & Fin. Servs., Inc.*,
  C.A. No. 13-984-GMS (D. Del. Jan. 27, 2015) ...................................................................... 18

**Statutes**

35 U.S.C. § 101 ................................................................................................................... *passim*

**Other Authorities**

Janson, H.W., JANSON'S HISTORY OF ART at 516 (Pearson Ed. Inc. 2011) ................................. 12

The Renaissance Connection, *Discovering Linear Perspective*,
  http://www.renaissanceconnection.org/lesson_art_perspective.html (last visited Feb. 3, 2015)
  ...................................................................................................................................................... 12

## I.     L.R. 47(B) STATEMENT OF ISSUES TO BE DECIDED.

Are the asserted method claims of U.S. Patent No. 6,006,227 ("the '227 patent") invalid

pursuant to 35 U.S.C. § 101 where the claims are directed to the abstract idea of organizing

electronic documents in chronological order and do not add any inventive step to this abstract

idea?

## II.     INTRODUCTION

For the reasons set forth in the Fed. R. Civ. P. 12(c) Motion filed by Microsoft

Corporation, Dell Inc., Hewlett-Packard Co., Lenovo (United States) Inc., Samsung Electronics

America, Inc., and Samsung Telecommunications America, LLC (the "PC Defendants"), the

claims Mirror Worlds has asserted against the PC Defendants and Apple Inc. ("Apple") are

directed to unpatentable subject matter and therefore are invalid as a matter of law under 35

U.S.C. § 101 and the Supreme Court's decision in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347

(2014).  *See generally* Motion for Judgment on the Pleadings, *Mirror Worlds Tech. LLC v. Apple

Inc.*, No. 6:13-cv-419 (E.D. Tex. Jan. 23, 2015) (D.I. 277) (hereinafter "PC Defendants' Rule

12(c) Motion").  For the same reasons, and for the additional reasons set forth below, the

additional claims Mirror Worlds has asserted against only Apple ('227 Patent, Claims 40, 42, 43,

and 44) are likewise invalid under § 101.

In *Alice*, the Supreme Court confirmed that a "method of organizing human activity" is

an abstract idea, and that claims directed to such methods are patentable only if the claims recite

an "inventive concept" – something "significantly more" than a generic description of the idea

itself.  134 S. Ct. at 2356-57.  Here, all of the asserted claims of the '227 Patent are plainly

directed to an abstract "method of organizing human activity" because they are directed to

nothing more than organizing items of information that are of interest to a human in

chronological order.  Moreover, the asserted claims fail to recite any "inventive concept" that would limit their scope to patentable subject matter, such as a new technology or a new solution to a problem that is unique to computers.  *Cf. DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).  Instead, the asserted claims merely address an age-old problem (how to keep track of information or documents) with an age-old solution (put them in chronological order) and merely require this "solution" to be performed on a generic computer.  Therefore the asserted claims are invalid under § 101, and the Court should grant judgment on the pleadings to Apple under Fed. R. Civ. P. 12(c).

## III.   BACKGROUND

### A.   Relevant Procedural History

On May 23, 2013, Mirror Worlds filed complaints asserting the '227 Patent in two cases that have been consolidated for pre-trial purposes.  *See* Complaint, *Mirror Worlds Tech., LLC v. Apple, Inc.*, No. 6:13-cv-00419-RWS (E.D. Tex. May 23, 2013) (D.I. 1) (hereinafter *Apple II*); Complaint, *Mirror Worlds Tech., LLC v. Microsoft Corp.*, No. 6:13-cv-941-RWS (E.D. Tex. May 23, 2013) (D.I. 1).  Mirror Worlds is asserting Claims 13-18, 20, 22, 34, 39, and 55 against both the PC Defendants and Apple ("Common Asserted Claims").  Mirror Worlds is also asserting Claims 40, 42, 43, and 44 of the '227 Patent against Apple alone.

Presently before the Court is the PC Defendants' Rule 12(c) Motion.  In that Motion, the PC Defendants argue correctly that "[b]ecause the asserted '227 Patent claims fail to satisfy § 101, judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is proper."  PC Defendants' Rule 12(c) Motion, at 1.  Apple agrees, and therefore is filing the instant motion on the same grounds.  Because most of the asserted claims overlap, in the interests of efficiency, Apple

hereby incorporates the PC Defendants' arguments by reference as though set forth herein, and

Apple will focus its further analysis on the claims that are asserted against Apple only.

**B.      The '227 Patent**

      **1.      Background on the '227 Patent**

      As described in the PC Defendants' Motion, "[t]he '227 Patent describes, and the

asserted claims cover, a method for organizing documents in a computer."  PC Defendants' Rule

12(c) Motion, at 2.  The organizing principle used by the purported invention is time.  The '227

Patent explains that time is the "natural guide to experience" and it is "the attribute that comes

closest to a universal skeleton-key for stored experience."  '227 Patent, col. 4:21-23.  The patent

and its claims further invoke the metaphor of a "stream" (*e.g.*, *id.* col. 6:32) to describe the

ordering of "data units" – items of interest to the user, like documents or calendar events – from

past, to present, to future.[1]  *See id.* col. 5:53-57.  Thus, according to the patent,

> The present invention relates to an operating system in which documents are
> stored in a chronologically ordered "stream."  In other words, that is, as each
> document is presented to the operating system, the document is placed according
> to a time indicator in the sequence of documents already stored relative to the
> time indicators of the stored documents.

*Id.* col. 1:4-10.  In other words, "[a] 'stream' according to the present invention is a time-ordered

sequence of documents that functions as a diary of a person or an entity's electronic life."  *Id.*

col. 4:6-8.

      The '227 Patent describes two types of streams:  "main streams" and "substreams."

"Main streams" are described in the patent as comprising "[e]very document created and every

---

[1]  The parties agreed to construe "stream" as a "time-ordered sequence of data units that functions as a diary of a
person or an entity's electronic life and that is designed to have three main portions:  past, present, and future."
Memo. Op. & Order at 4, *Apple II* (Jan. 14, 2015) (D.I. 266).

document send [sic] to a person or entity."[2]  *Id.* col. 4:8-10.  A "substream" is a subset of the

documents in the "main stream."[3]  *Id.* col. 5:16-17.  The patent describes a "substream" as

containing, for example, "all documents that are relevant to a search query."  *Id.* col. 4:55-56.

The patent further states that the streams are updated "dynamically," in that new documents are

added to the main streams and substreams as they are received or created by the computer

system.  *Id.* col. 5:1-13.

Finally, the '227 Patent discloses several ways of displaying these streams to the user.

As one example, the '227 Patent describes a way to show

> at least some part of the stream . . . in the form of a receding stack of upright
> rectangles, framed in such a way that only the top line of each document is
> visible.  A foreshortened viewing angle yields a view that is approximately a right
> triangle, the bottom edge aligned with the bottom of the display and the left edge
> aligned with the display's left border.

*Id.* col. 9:46-52.  As an illustration, the patent depicts an embodiment of this invention in the X

Windows environment in Figure 1, reproduced below.[4]

---

[2]   "Main stream" was construed by the Court to mean "a stream that is inclusive of every data unit received by or generated by the computer system."  Memo. Op. & Order at 9, *Apple II* (Jan. 14, 2015) (D.I. 266).

[3]   "Substream" was construed by the Court to mean "stream that is a subset of data units yielded by a filter on a stream, the filter identifying certain documents within the stream."  Memo. Op. & Order at 9, *Apple II* (Jan. 14, 2015) (D.I. 266).

[4]   The patentee explicitly relied on Figure 1 as the supporting disclosure for new claims it added during reexamination that recite the use of "perspective" (Amendment in Response to First Office Action in Ex Parte Reexamination, Mar. 16, 2010, at 19) – claims that are now asserted against Apple.



FIG. I

## 2.    Common Asserted Claims:  Claims 13-18, 20, 22, 34, 39, and 55

Claim 13, from which all of the asserted claims depend, recites an abstract idea for

"organiz[ing] data units," or items of information of interest to the user,[5] that are "received by or

generated by a computer system."[6]  '227 Patent, col 16:9-10.  Claim 13 instructs that the "data

units" are organized by generating a "main stream" and a "substream" of the "data units," where

the "data units" in the streams are received from other computer systems, as well as generated by

the computer system.  The "data units" in the streams are organized chronologically using a

---

[5]  The Court has construed "data unit" as "an item of information that is of direct user interest in the user's
timeline."  Memo. Op. & Order at 14, *Apple II* (Jan. 14, 2015) (D.I. 266).

[6]  The Court has construed "computer system" to mean "a processing device programmed to carry out a set of
logical operations."  Memo. Op. & Order at 8, *Apple II* (Jan. 14, 2015) (D.I. 266).

selected "timestamp" and an associated "chronological indicator,"[7] and the main stream and substreams are dynamically updated.[8]  Specifically, Claim 13 recites:

> 13.  A method which organizes each data unit received by or generated by a computer system, comprising the steps of:
>
>> generating a main stream of data units and at least one substream, the main stream for receiving each data unit received by or generated by the computer system, and each substream for containing data units only from the main stream;
>>
>> receiving data units from other computer systems;
>>
>> generating data units in the computer system;
>>
>> selecting a timestamp to identify each data unit;
>>
>> associating each data unit with at least one chronological indicator having the respective timestamp;
>>
>> including each data unit according to the timestamp in the respective chronological indicator in at least the main stream; and
>>
>> maintaining at least the main stream and the substreams as persistent streams.

As described in PC Defendants' Rule 12(c) Motion, the dependent claims asserted against PC Defendants and Apple "add limitations such as providing a timestamp of a past, present, or future time (claim 14), displaying the streams, segments of those streams, or abbreviated versions of the documents, in order (claims 15, 16, 20, 34, 39, and 55), requiring the data units to have 'textual data, video data, audio data and/or multimedia data' (claim 17), providing access to different streams (claim 18), and archiving old data units (claim 22)."  PC Defendants' Rule 12(c) Motion, at 4.  None of these additional limitations add anything of patentable substance to the abstract idea of chronologically ordering items of interest to a person.

---

[7]  The Court has construed "chronological indicator" as "data structure that contains at least a timestamp."  Memo. Op. & Order at 11, *Apple II* (Jan. 14, 2015) (D.I. 266).

[8]  The parties agreed to construe Claim 13's "persistent streams" claim term as "streams that are dynamically updated."  Memo. Op. & Order at 4, *Apple II* (Jan. 14, 2015) (D.I. 266).

### 3.      Apple Asserted Claims:  Claims 40, 42, 43, and 44

Claims 40, 42, 43, and 44,which Mirror Worlds asserts against Apple (and not the PC

Defendants), likewise depend from Claim 13, and add limitations that relate to a way of

displaying "representations" of a portion of the data units (e.g., documents) in a substream in a

"stack."  The stacked documents are displayed using "perspective"[9] so that they have the

"illusion" of three-dimensional depth despite being displayed on a two-dimensional surface (like

a computer screen).

Specifically, Claim 40 recites:

> The method of claim 39 in which said displaying comprises displaying said data
> units as representations thereof in a stack of partly overlapping representations
> using perspective to create an illusion of increasing distance from a viewpoint
> implied by the displaying representations, wherein the representations at one
> place in the stack appear further away than the representations at another place in
> the stack.

Claim 42 recites:

> The method of claim 13 including displaying on a display device at least some of
> the data units of a stream selected from one of said main stream and said at least
> one substream as data unit representations in a stack of partly overlapping
> representations using perspective to create an illusion of increasing distance from
> a viewpoint implied by the displayed representations, wherein the representations
> at one place in the stack appear further away than the representations at another
> place in the stack.

Claim 43 recites:  "The method of claim 42 in which said displaying comprises including in the

displayed data units at least one data unit associated with a future time."  Finally, Claim 44

recites:

> The method of claim 13 including selectively displaying on a display device at
> least some of said data units as a receding, foreshortened stack of partly
> overlapping data unit representations so that only a part of each of said

---

9   The Court construed "perspective" to mean "a technique for representing three-dimensional space in two
dimensions by depicting surfaces that are farther away as smaller."  Memo. Op. & Order at 13, *Apple II*
(Jan. 14, 2015) (D.I. 266).

representations in the displayed stack, after the first document in the stack, is visible to a user.

For the reasons discussed below, these limitations, too, add nothing of patentable substance to the abstract notion of chronological organization.

## IV.   ARGUMENT

### A.   Invalidity Under Section 101 Warrants Judgment on the Pleadings

Judgment on the pleadings is appropriate in this case.  As the PC Defendants have argued in their Motion, a Fed. R. Civ. P. 12(c) motion is a proper vehicle by which to resolve, early in a case, a question of invalidity under § 101.  *See* PC Defendants' Rule 12(c) Motion § IV.A.  This is because the statutory § 101 inquiry is a threshold test of patentability.  *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010).  If the asserted claims of the '227 Patent fail this threshold test, then Mirror Worlds' complaint must be dismissed with prejudice.

### B.   The Asserted Claims of the '227 Patent Are Invalid Under Section 101

The application of the Supreme Court's analytical framework for determining patentability under § 101, as set forth in *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012), leads to the ineluctable conclusion that the asserted claims of the '227 Patent are not patentable.

### 1.   The Asserted Claims Are Directed to An Abstract Idea (*Mayo* Step 1)

The first step under *Mayo* is to "determine whether the claims are directed to [a] patent-ineligible concept[s], such as an abstract idea."[10]  PC Defendants' Rule 12(c) Motion, at 6 (citing

---

[10]   To assess whether claims are directed to an abstract idea, the claims should be evaluated "[o]n their face" (*Alice*, 123 S. Ct. at 2356), and the "concept" to which the claims are "drawn" should be recited "at a reasonably high level of generality."  *Enfish, LLC v. Microsoft Corp.*, No. 2:12-cv-07360, 2014 U.S. Dist. LEXIS 156760, at *13 (C.D. Cal. Nov. 3, 2014).  *See also, e.g., Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 1:10-cv-910, 2014 U.S. Dist. LEXIS 152447, at *14 (E.D. Va. Oct. 24, 2014) (examining the patent's claims "[o]n its face and looking past the mere claim language" to identify the "concept" to which the claims are drawn); *Bascom Research, LLC v. Facebook, Inc.*, --- F. Supp. 3d ----, 2015 WL 149480 (N.D. Cal. Jan. 5, 2015) (same).

*Alice*, 134 S. Ct. at 2355).   The claims here are indeed directed to an abstract idea.   Although the

Supreme Court in *Alice* did not "delimit the precise contours of the 'abstract ideas' category"

(134 S. Ct. at 2356-57), the Supreme Court *did* hold that one example of an abstract idea is

"organizing human activity," which is exactly the abstract idea to which Mirror Worlds' claims

are directed.   *See id.*[11]   Indeed, Mirror Worlds' claims are on all fours with methods of

"organization" held invalid in many appellate and district court decisions after *Alice*.   For

example, in *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, the Federal

Circuit held that a method for "organizing information through mathematical correlations" that

"is not tied to a specific structure or machine" is an unpatentable abstract idea.   758 F.3d 1344,

1350 (Fed. Cir. 2014).[12]   A method for "establishing relationships between document objects and

making those relationships accessible" to a user is similarly unpatentable because it is "not

meaningfully different from classifying and organizing data."   *Bascom Research, LLC v.*

*LinkedIn, Inc.*, No. 12-cv-06293, 2015 WL 149480, at *9 (N.D. Cal. Jan. 5, 2015).   And in

*Cogent Medicine, Inc. v. Elsevier Inc.*, the court invalidated a method for "maintaining and

searching a library of information" and "set[ting] aside particular information that may be

especially relevant based on the particular user" because it "merely automates what was

previously done manually by assistants or librarians."   No. C-13-4483-RMW, 2014 U.S. Dist.

LEXIS 139856, at *11, *13 (N.D. Cal. Sept. 30, 2014).

---

[11]   *See also Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (holding "[p]henomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work").

[12]   *See also Content Extraction, & Transmission, LLC v. Wells Fargo Bank*, Nos. 2013-1588, 2013-1589, 2014-1112, 2014-1687, 2014 WL 7272219, at *7 (Fed. Cir. Dec. 23, 2014) (holding that collecting data and then recognizing certain data within the data collected is an unpatentable abstract idea).

### a.   The '227 Patent claims a fundamental practice

The asserted claims are unpatentable because they are directed to the abstract idea of organizing items of information ("data units") in chronological order.  Organizing information in chronological order, including by storing and retrieving information according to chronological order, is as old as history itself.  As the PC Defendants argued correctly in their Motion, "Courts have found this sort of fundamental concept to be 'manifestly apparent' and not eligible for patent protection."  PC Defendants' Rule 12(c) Motion, at 10.  For example, in *CyberFone Systems, LLC v. Cellco Partnership*, the Court held that a "manifestly apparent" abstract claim is one that, "broken down into its component parts, recites steps by which data is obtained, sorted and stored."  885 F. Supp. 2d 710, 719 (D. Del. 2012).  Maintaining a database and updating users about new information was deemed by one Court to be "undeniably abstract," and indeed a "fundamental economic or business practice."  *Data Distribution Techs., LLC v. Brer Affil. Inc.*, No. 12-4878, 2014 WL 4162765, at *11 (D.N.J. Aug. 19, 2014).  Even specifying that the data be organized in a logical table does not save a claim from abstraction because "[t]ables are a basic and convenient way to organize information on paper; [so] unsurprisingly, they are a basic and convenient way to organize information on computers."  *Enfish*, 2014 U.S. Dist. LEXIS 156760, at *19-20.[13]

The PC Defendants' Rule 12 (c) Motion shows that the Common Asserted Claims merely recite this abstract idea.  *See* PC Defendants Rule 12(c) Motion §IV.C.1 (incorporated here by reference).  Likewise, Claims 40, 42, 43, and 44 of the '227 Patent (which are asserted against Apple alone) merely recite an abstract idea, and do not add any element to the Common Asserted Claims that would render those claims patentable.  Rather, these claims are merely directed at a

---

[13]   Moreover, nothing in the claims is limited to *how* to accomplish the chronological organization in a computer.  *Cf. Gottschalk*, 409 U.S. 63, 67 (1972) (holding that applications of abstract ideas to a "new and useful end" are patentable).

particular way of viewing the stored information:  that of using "perspective" so that the documents contained in the "stream" appear to be "stacked."[14]

The use of "perspective" to give the "impression" of depth is an abstract idea that relies on mathematical and geometric truths,[15] and therefore is not patent-eligible.  *See, e.g.*, *Gottschalk,* 409 U.S. at 71-72 (reaffirming the principle that "a scientific truth, or the mathematical expression of it, is not a patentable invention" in the abstract).  Artists have used "perspective" to give a viewer the impression of three-dimensional depth despite the depiction on a flat, two-dimensional surface (like on canvas or paper) since the 15th Century,[16] and have invoked that idea on computers since well before this patent was filed.  Indeed, the patentee here *admitted* to the Patent Office that the limitations regarding "perspective" merely invoke this well-known concept.[17]

---

[14]   While Claim 44 does not use the term "perspective" to describe the claimed display, it nevertheless invokes the principle of perspective by describing the stack of documents as being displayed as a "receding, foreshortened stack of partly overlapping data unit representations so that only a part of each of said representations in the displayed stack, after the first document in the stack, is visible to a user."

[15]   A linear, or scientific, perspective system is a "geometric procedure for projecting the illusion of space onto a two-dimensional surface."  Janson, H.W., JANSON'S HISTORY OF ART at 516 (Pearson Ed. Inc. 2011).  "In Early Renaissance Italy, scientific perspective systemized the projection of space using mathematics and geometry, overturning the intuitive perspective practices of the past."  *Id.*

[16]   The "idea that converging lines meet at a single vanishing point and all shapes get smaller in all directions with increasing distance from the eye" is attributed to the architect Filippo Brunelleschi (1377-1446), who "suggested a system that explained how objects shrink in size according to their position and distance from the eye."  The Renaissance Connection, *Discovering Linear Perspective*, http://www.renaissanceconnection.org/lesson_art_perspective.html (last visited Feb. 3, 2015).  Leon Battista Alberti (1404-1472), is credited with articulating the first theory of "linear perspective" in his book, "On Painting," which first appeared between 1435-1436.  *Id.*

[17]   When the Patent Office first reviewed the patentee's proposed claims that added limitation that recited the display of representations of documents using "perspective," the Patent Office rejected those claims on the grounds that "the display of small documents as a *perspective* representation of a (polygonal) card file is well known in the art."  Office Action, 11/3/1998, at 12 (emphasis added).  In an attempt to traverse the rejection, the patentee argued that the claims should be allowed for other reasons, *admitting* that prior art taught "the display of data units in overlapping windows" and that "overlaid windows are known in the art."  05/11/1999 Amendment in Response to 11/3/1998 Office Action, at 15 and 29.

### b.  The '227 Patent claims can be practiced using pen and paper

Claims that generically combine the use of a computer with tasks that humans could otherwise perform "in the human mind," or by "using a pen and paper," are abstract and unpatentable.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).  As demonstrated in the PC Defendants' Rule 12(c) Motion, the Common Asserted Claims of the '227 Patent can be performed by humans, and, in the example provided by the PC Defendants, by a court clerk managing a court docket.  *See* PC Defendants' Rule 12(c) Motion, at 12-15 (incorporated by reference here).  As shown below, the same is true of the claims asserted against Apple alone:

| Claim Limitation | Routine Steps in Organizing Case Documents |
|---|---|
| 40.  The method of claim 39 in which said displaying comprises displaying said data units as representations thereof in a stack of partly overlapping representations using perspective to create an illusion of increasing distance from a viewpoint implied by the displaying representations, wherein the representations at one place in the stack appear further away than the representations at another place in the stack. | The selected summary judgment briefing is stacked on the clerk's desk.  The stack of briefing documents is partly overlapping.  As the clerk picks up the document on the top of the stack, the rest of the documents in the stack appear smaller by comparison. |
| 42.  The method of claim 13 including displaying on a display device at least some of the data units of a stream selected from one of said main stream and said at least one substream as data unit representations in a stack of partly overlapping representations using perspective to create an illusion of increasing distance from a viewpoint implied by the displayed representations, wherein the representations at one place in the stack appear further away than the representations at another place in the stack. | The selected summary judgment briefing is stacked on the clerk's desk, on top of at least part of the docket (for example, the letter briefing filed earlier in the case in advance of the briefing on summary judgment).  The stack of briefing documents is partly overlapping.  As the clerk picks up the document on the top of the stack, the rest of the documents in the stack appear smaller by comparison. |
| 43.  The method of claim 42 in which said | The stack of the selected summary judgment |

| Claim Limitation | Routine Steps in Organizing Case Documents |
|---|---|
| displaying comprises including in the displayed data units at least one data unit associated with a future time. | briefing is topped with a motion to extend the hearing, which is scheduled in the future. |
| 44.  The method of claim 13 including selectively displaying on a display device at least some of said data units as a receding, foreshortened stack of partly overlapping data unit representations so that only a part of each of said representations in the displayed stack, after the first document in the stack, is visible to a user. | The selected summary judgment briefing is stacked on the clerk's desk, on top of at least part of the docket (for example, the letter briefing filed earlier in the case in advance of the briefing on summary judgment).  The stack of briefing documents is partly overlapping, and appears as a receding, foreshortened stack, as each document is farther away from the clerk than are the documents above it in the stack.  As the clerk picks up the document on the top of the stack, the rest of the documents in the stack appear smaller by comparison. |

As demonstrated above, the claimed steps are entirely capable of being performed by a human "using pen and paper," and are therefore drawn to an abstract idea.  *See CyberSource Corp.*, 654 F.3d at 1371 (holding that a "mental process [is] a subcategory of unpatentable abstract ideas").

> **2.      The '227 Patent Claims Add No "Inventive" Concept to the Abstract Idea (*Mayo* Step 2)**

Because Mirror Worlds' claims are directed at a patent-ineligible abstract idea, they are invalid unless the "elements of each claim – both individually and as an ordered combination – . . . transform the nature of the claim into a patent-eligible application of that abstract idea." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. Dec. 5, 2014) (citing *Alice*, 134 S. Ct. at 2355).  In other words, this "second step" under *Mayo* "is the search for an 'inventive concept,' or some element or combination of elements sufficient to ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *Id.*

Accordingly, in this step the court "must disregard 'well-understood, routine, conventional activity.'" *Enfish*, 2014 U.S. Dist. LEXIS 156760, at *17 (quoting *Mayo*, 132 S. Ct. at 1299). Here, the asserted claims contain no "inventive concept" and thus are invalid.

    a.       **The '227 Patent's asserted claims are limited to a generic computer**

It is not enough to add steps to an abstract idea which merely "consist of well-understood, routine, conventional activity," if such steps, "when viewed as a whole, add nothing significant beyond the sum of their parts taken separately." *See Mayo*, 132 S. Ct. at 1298.  For instance, as the Supreme Court held in *Alice*, the "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  134 S. Ct. at 2358; *see also East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-cv-517, 2015 WL 226084, at *7 (D.N.H. Jan. 15, 2015) ("The lesson of *Alice* and the other cases cited [here] is that when the alleged innovation involves the use of a generic computer to do what such computers typically do, i.e., speed up a process by eliminating the need for human activity, that innovation is not an invention eligible for patent protection.").

All the '227 Patent's asserted claims are limited to a generic computer system, which the Court has broadly construed to mean "a processing device programmed to carry out a set of logical operations."[18,19]  As the PC Defendants correctly argue in their Motion:  "Here, like in *Alice*, because the 'patent's recitation of a computer amounts to a mere instruction to implement[t] an abstract idea on . . . a computer, . . . that addition cannot impart patent eligibility.'"  PC Defendants' Rule 12(c) Motion,  at 15 (quoting 134 S. Ct. at 2358 (internal quotations omitted)).

---

[18]   Memo. Op. & Order at 8, *Apple II* (Jan. 14, 2015) (D.I. 266).

[19]   Indeed, the fact that the methods claimed by the '227 Patent can be performed by any undifferentiated computer system is a benefit touted by the '227 Patent.  *E.g.*, '227 Patent, col. 2:52-61.

Moreover, as discussed above, the additional limitations contained in the Apple Asserted Claims of displaying the documents in the stream in a graduated or foreshortened "stack" cannot be the required "inventive concept" because, as the patentee admitted during prosecution, "overlaid windows are known in the cited art." (And people have been stacking paper since the invention of paper.) The claim's recitation of "perspective" or invocation of the concept of perspective to make the stacked documents at the bottom of the stack appear smaller than the ones at the top also cannot be the "inventive concept," as the use of perspective has been known and widely applied since the 15th Century.[20] For the reasons identified in the PC Defendants' Rule 12(c) Motion, this is not sufficient to render the abstract idea claimed in the '227 Patent patentable under § 101. *See* PC Defendants' Rule 12(c) Motion § IV.D.

### b.  The '227 Patent is not addressed to a computer-specific problem

Any attempt by Mirror Worlds to argue that the '227 Patent's claims, however abstract and generic, are patentable because they are intended to address a specific problem inherent in computer systems should also fail. *Cf. DDR Holdings*, 773 F.3d at 1257 (holding that a "claimed solution" that was "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" renders claims directed at an abstract idea patentable).

The problems to which the '227 Patent is purportedly directed are not *inherent* in computer systems. Rather, the '227 Patent is addressed to problems associated with the wholesale adoption of *paper-based* categorization methods by computer systems. According to the '227 Patent, "conventional" operating systems were problematic because they required users to "invent pointless names for files and to construct organizational hierarchies that quickly

---

[20]  *See supra*, n. 16.

become obsolete." '227 Patent, col. 1:27-29.  Although naming files and organizing documents

in hierarchical categories may well be problematic when applied to a computer system, those

organizational principles (and the problems inherent therein) are *not new or unique* to computer

systems.  Rather, humans have been naming documents (and cases) and filing them in filing

cabinets or organizing them in books, libraries (or dockets) for ages.  *See Bascom Research LLC*

*v. Facebook, Inc.*, --- F.3d ----, 2015 WL 149480, *6 (N.D. Cal. Jan. 5, 2015) (citing "the library

of Alexandria and Simon Greenleaf's 1821 index that identified United States cases whose

holdings had been overruled or limited by subsequent cases" as evidence that methods for

"establishing relationships between documents" is a "centuries-old concept that can also be

performed by the human mind").[21]

The '227 Patent also describes problems associated with "conventional" operating

systems that relied on a "desktop metaphor" such that their "operations" were presented "in the

familiar language of the paper-based world, that is, paper documents as files, folders as

directories, a trashcan for deletion, etc." '227 Patent, col. 1:32-36.  Of course, the patent's

characterization of these operating systems' use of a "desktop metaphor" acknowledges that any

problems inherent in a computer's use of a "desktop metaphor" are *not* rooted in the unique

environment of computer systems, but in the age-old paper-based concept of the desktop.

Accordingly, the '227 Patent's claims do "precisely what *DDR Holdings* explains is fatal

to many computer-based patents:  'recite the performance of *some business practice known from*

*the pre-Internet world* along with the requirement to perform it on the Internet.'"  *The Money*

*Suite Co. v. 21st Century Ins. & Fin. Servs., Inc.*, C.A. No. 13-984-GMS (D. Del. Jan. 27, 2015)

---

[21]  Moreover, nothing in the patent suggests that the inventors had to solve any technological problems to
implement this abstract concept in the claimed generic computer system.  *Cf. Alice*, 123 S. Ct. at 2358 (citing
*Diamond v. Diehr*, 450 U.S. 175 (1981) ("The claims in *Diehr* were patent eligible because they improved an
existing technological process, not because they were implemented on a computer.")).

(D.I. 31) (attached hereto as Exhibit A) (quoting *DDR Holdings*, 773 F.3d at 1257) (emphasis in original) (holding unpatentable claims for generating price quotes for financial products using a front-end gateway).

### c.  The claimed solution is not new

Even if the purported problems identified in the '227 Patent's specification were sufficient to qualify as a problems "inherent" in computer systems (they are not), the solution that is proposed by the '227 Patent is not *new* but rather an attempt to claim an old, existing paper-based categorization method – one based on time – when performed on a computer system.  *Cf. East Coast Sheet Metal*, 2015 WL 226084, at *9 ("The lesson of *Diehr*, *DDR*, and *Cal. Tech.* is that an inventive concept is, among other things, a *new* idea that solves a recognized problem in a particular field of endeavor." (emphasis supplied)).  Proposing to solve the alleged problems created by the adoption by computers of a fundamental method of human organization (naming files and organizing them in categories) by substituting a *different* fundamental method of human organization (chronological organization) should not be sufficient to render these patent claims patentable under § 101 and the Federal Circuit's holding in *DDR Holdings*.

### d.  The claimed solution is not rooted in computer technology

Neither is the claimed solution "necessarily rooted in computer technology."  *Cf. DDR Holdings*, 773 F.3d at 1258.  Rather, as the PC Defendants describe in the claim chart in their Motion (*see* PC Defendants' Rule 12(c) Motion,  at 12-15), and as Apple describes in its claim chart above, the '227 Patent's purported "solution" can be performed by a "human using pen and paper."  *See CyberSource*, 654 F.3d at 1372.  Simply using a computer to make that performance faster is not sufficient to render the claims patentable.  *See SiRF Tech., Inc. v. Int'l Trade*

*Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) (holding that for a computer to make a claim directed at an abstract idea patentable, the computer "must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly").

## V.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court grant the PC Defendants' Rule 12(c) Motion and the instant Motion and declare the asserted claims of the '227 Patent invalid as a matter of law under § 101.

DATE:  February 13, 2015

Respectfully submitted,

*/s/ Stuart M. Rosenberg*
William C. Rooklidge,
CA State Bar No. 134483
WRooklidge@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA  92612
Telephone:  949.451.3800
Facsimile:  949.451.4220

Stuart M. Rosenberg
CA State Bar No. 239926
srosenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:  650.849.5389
Facsimile:  650.849.5089

Brooke Myers Wallace
CA State Bar No. 259169
bwallace@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7074
Facsimile: 213.229.6074

*Attorneys For Defendant Apple Inc. and, as to Mirror Worlds' infringement claims related to Apple's OS X operating system, Best Buy Stores, LP and BestBuy.com, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule CV-5(a)(3) this 13th day of February, 2015.


　　　　　　　　　　　　　*/s/ Stuart M. Rosenberg*
　　　　　　　　　　　　　STUART M. ROSENBERG