**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| MIRROR WORLDS TECHNOLOGIES, LLC, | Civil Action No. 6:13-cv-419 (LED) |
| Plaintiff, | **Jury Demanded** |
| vs. | |
| APPLE, INC., et al., | |
| Defendants. | |
| MIRROR WORLDS TECHNOLOGIES, LLC, | Civil Action No. 6:13-cv-941 (LED) |
| Plaintiff, | **Jury Demanded** |
| vs. | |
| DELL, INC., et al., | |
| Defendants. | |

**Mirror Worlds' <u>Cross-Motion</u> and <u>Response</u> to
Defendants' Motion for Judgment on the Pleadings**

# **Table of Contents**

I.      Introduction ................................................................................................... 1

II.     The claims of the '227 patent are patent-eligible under either step of the *Mayo* framework. ............................................................................................... 1

   A.      *Mayo* step 1: Defendants cannot establish that the patent claims are directed to an abstract idea. .................................................................... 2

      1.      The claims are directed to using a persistent main stream and substreams to organize data units on a computer system. ......... 3

      2.      The claims are not directed to an abstract idea. ........................ 7

      3.      Applying the holding of *DDR Holdings*, the claims are patent eligible as a matter of law. ........................................................ 8

      4.      The claims cannot be performed in the human mind or with pen and paper. .................................................................................... 12

      5.      Defendants "methods of organizing human activity" argument also fails. ........................................................................................... 16

      6.      Apple's "perspective" argument also fails. ............................... 17

   B.      *Mayo* step 2: Defendants fail to establish that the claims are patent-ineligible under *Mayo* step 2 ................................................................... 18

      1.      The '227 claims add additional steps that are not well-understood, routine, or conventional. ............................................................ 18

      2.      Defendants' *Mayo* step 2 arguments fail. ................................. 21

         a.      Defendants' no "meaningful addition" argument is wrong. ......... 21

         b.      Defendants' "generic computer with conventional programming" argument is wrong. ................................................ 22

         c.      Defendants' no "inventive concept" argument is wrong. ............. 23

   C.      The '227 claims are patent-eligible under the machine-or-transformation test. ......................................................................................................... 24

III.    Conclusion ....................................................................................................... 26

## Table of Authorities

**Cases**

*Alice Corp. v. CLS Bank*,
    134 S. Ct. 2347 (2014) ................................................................................... passim

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ............................................................................ 8, 16, 17, 24

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ..................................................................... 19

*CLS Bank Int'l v. Alice Corp. Pty.*,
    717 F.3d 1269 (Fed. Circ. 2014) ...................................................................... 1

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, No. 2013-1112*,
    2014 WL 7272219 (Fed. Cir. Dec. 23, 2014) ............................................. 2, 23

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) ................................................................. 13, 14

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ................................................................. passim

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ........................................................................................ 24

*DietGoal Innovations LLC v. Bravo Media LLC*,
    No. 13 CIV. 8391 PAE, 2014 WL 3582914 (S.D.N.Y. July 8, 2014) .................... 17

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014) ........................................................................ 3

*Enfish, LLC v. Microsoft Corp.*,
    2014 WL 5661456 (C.D. Cal. Nov. 3, 2014) ...................................................... 5

*Genetic Technologies Ltd. v. Bristol-Myers Squibb Co.*,
    No. CV 12-394-LPS, 2014 WL 5507637 ........................................................... 24

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) ............................................................................................ 8

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008) ............................................................ 16, 25, 26

*Mirror Worlds, LLC v. Apple Inc.*,
    692 F.3d 1351 (Fed. Cir. 2012) ...................................................................... 14

*O'Reilly v. Morse*,
    56 U.S. 62 (1853) .............................................................................................. 8

*Planet Bingo, LLC v. VKGS LLC*,
    576 F. App'x 1005, 1008 (Fed. Cir. 2014) ..................................................... 14

*Research Corp. Technologies v. Microsoft Corp.*,
   627 F.3d 859 (Fed. Cir. 2010) ............................................................................. 26

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) ........................................................................... 25

*SmartGene, Inc. v. Advanced Biological Labs., SA*, 555
   F. App'x 950 (Fed. Cir. 2014).............................................................................. 13

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
   346 F.3d 1057 (Fed. Cir. 2003) ............................................................................. 2

*TQP Dev., LLC v. Intuit Inc.*,
   No. 2:12-CV-180-WCB, 2014 WL 651935 (E.D. Tex. Feb. 19, 2014) ............................ 24, 26

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ....................................................................... passim

## I.    Introduction

Mirror Worlds responds to Defendants'[1] motions for judgment on the pleadings and cross-moves for judgment on the pleadings in Mirror Worlds' favor on Defendants' defense and counterclaim of patent-eligibility under section 101.  Mirror Worlds agrees that this issue is ripe for adjudication on the pleadings.

To prevail on section 101, Defendants have the burden of establishing by clear and convincing evidence that the asserted claims fail both steps of the *Mayo* test. Defendants demonstrate neither. At *Mayo* step 1, Defendants' defense fails as a matter of law because the patent claims are not directed to any abstract idea.  Instead, the claims are directed to using a persistent main stream and substreams to organize data units on a computer system, which is not an abstract idea.  Defendants' defense also fails as a matter of law at *Mayo* step 2.  Even using Defendants' inaccurate summaries of the '227 patent, the claims are patentable because they add additional steps that were not well-understood, routine, or conventional.  Thus, Defendants' motions should be denied, and the Court should rule that Defendants' section 101 defense and counterclaim fails as a matter of law.

## II.    The claims of the '227 patent are patent-eligible under either step of the *Mayo* framework.

In *Alice Corp. v. CLS Bank*, 134 S. Ct. 2347 (2014), the Supreme Court reaffirmed the two-step *Mayo* framework "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent eligible applications of those concepts."  *Alice*, 134 S. Ct. at 2355; *CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269 (Fed. Circ. 2014) (holding that the presumption of validity applies to challenges under section 101).

---

[1] Defendants filed two motions for judgment on the pleadings: the first by Defendants in Case No. 6:13-cv-941 (collectively "Microsoft") dkt. 277, and the second by Defendant Apple, Inc., dkt. 292. This opposition is filed in response to both motions.

1

Under *Mayo,* "[w]e first determine whether a claim is 'directed to' a patent-ineligible abstract idea. If so, we then consider the elements of the claim—both individually and as an ordered combination—to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, No. 2013-1112,* 2014 WL 7272219, at *2 (Fed. Cir. Dec. 23, 2014).

To prevail, Defendants must establish that the asserted claims fail both steps of *Mayo*. *Alice,* 134 S. Ct. at 2355.  Defendants have the burden of proof by clear and convincing evidence. *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.,* 346 F.3d 1057, 1067 (Fed. Cir. 2003) ("A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence.").  Defendants cannot show clear and convincing evidence of ineligibility under Section 101.  Thus, Defendants' motion should be denied, and Plaintiff's cross-motion granted.

### A. *Mayo* step 1: Defendants cannot establish that the patent claims are directed to an abstract idea.

The first step of the Mayo framework is to determine whether the claims are directed to one of the patent-ineligible categories:  "laws of nature, natural phenomena, and abstract ideas." *Alice,* 134 S. Ct. at 2355. Defendants assert that the asserted claims[2] are directed to abstract ideas.

At the first step of *Mayo*, Defendants must accurately summarize the claims, and then demonstrate that the summary is an abstract idea.  Defendants proffer similar summaries of the claims: "organizing documents on a computer in chronological order," Microsoft at  1;

---

[2] Plaintiff Mirror Worlds asserts claims 13, 14, 15, 16, 17, 18, 20, 22, 34, 39, and 55 (the "Common Claims") against all Defendants, and also asserts claims 40, 42, 43, and 44 against Apple (the "Apple Claims").

2

"organizing electronic documents in chronological order" Apple at 1.

We demonstrate below that Defendants' summaries improperly ignore what the claims actually recite.  The claims are actually directed at systems and methods for using a persistent main stream and substreams to organize data units on a computer system.  We then demonstrate that, as a matter of law, the '227 claims are not directed to an abstract idea.

> **1.     The claims are directed to using a persistent main stream and substreams to organize data units on a computer system.**

While a summary of a claim will necessarily omit details, to capture what a claim is directed to, the summary must include the core features of the claim.  "In determining whether a process claim recites an abstract idea, we must examine the claim as a whole…." *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014); *Alice*, 134 S. Ct. at 2355 n.3 ("Because the approach we made explicit in Mayo considers all claim elements, both individually and in combination, it is consistent with the general rule that patent claims must be considered as a whole." (internal quotes omitted)).

Because the fundamental goal of the *Mayo* analysis is to assess the pre-emptive effect of the claims, a summary that omits core claim features does not reflect a claim's potential preemptive footprint and, therefore, cannot be used to assess whether the claim is directed to an abstract idea.  *See Alice*, 134 S. Ct. at 2354 ("the concern that drives" the analysis Is "one of pre-emption").

For example, in *DDR Holdings*, the defendant summarized the claim as "making two web pages look the same."  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1248, 1257, 1259 (Fed. Cir. 2014).  That summary might have been an abstract idea, but it omitted key concepts and did not accurately reflect the claims.  The court held that the claims were not directed to "making two web pages look the same, or of any other variant suggested by

3

[Defendant] NLG." *Id*. at 1259.  Instead, the court held that the claims were "directed to systems and methods of generating a composite web page that combines certain visual elements of a 'host' website with content of a third-party merchant," which is not an abstract idea. *Id*. at 1256-59.

The '227 claims are directed at systems and methods for using a persistent main stream and substreams to organize data units on a computer system.  The '227 patent did not address an existing problem in the business world by using a computer system; instead, the 227 patent addressed a problem with computer systems themselves.  The patent explains that "conventional operating systems suffer" several disadvantages. '227 Patent 1:40-41. These include:

- "a file must be 'named' when created and often a location in which to store the file must be indicated"
- "users are required to store new information in fixed categories, that is directories or subdirectories"
- "users throw out old data rather than undertaking the task of archiving and remembering how to get the data back"
- "Users are forced either to use location on their graphical desktops as reminding cues or to use add-on applications"
- "accessibility and compatibility across data platforms," and
- "many filenames are not only pointless but useless for retrieval."

'227 Patent, 1:40-2:7.

The '227 patent solves these problems with the novel approach of using a persistent main stream and substreams to organize data units on a computer system.  This is reflected in the title of the patent: "Document Stream Operating System."  And the use of the "stream" is indisputably the core idea emphasized in the specification, which mentions "stream" 280 times, including:

- "A solution to these disadvantages is to use a document stream operating system." '227 Patent at 2:6-7.

4

- "One object of the present invention is to provide a document stream operating system and method which solves many, if not all, of the disadvantages of conventional operating systems." *Id.* at 2:13-16.

- "Another object of the present invention is to provide a document stream operating system in which documents are stored in one or more chronologically ordered streams." *Id.* at 2:17-19.

- "This invention is a new model and system for managing personal electronic information which uses a time-ordered stream...." *Id.* at 3:62-64

- "Substreams, unlike conventional, virtual or fixed directories which only list filenames, present the user with a stream 'view' of a document collection." *Id.* at 4:51-54.

- "Streams of the present invention are designed to work with conventional World Wide Web browsers...." *Id.* at 13:19-20.

-  *Id.* at Fig. 1.

Most importantly, the use of a persistent main stream and substreams is at the core of every claim.  Claim 13 (upon which all other asserted claims depend) requires "generating a main stream of data units and at least one substream, the main stream for receiving each data unit received by or generated by the computer system, and each substream for containing data units only from the main stream;" "including each data unit…in at least the main stream," and "maintaining at least the main stream and substreams as persistent streams."  '227 Claim 13. Thus, the '227 claims are directed at systems and methods for using a persistent main stream and substreams to organize data units on a computer system.

Defendants' summary—"organizing documents on a computer in chronological order"— entirely omits the core concept of the claims.  "Because software is necessarily intangible, accused infringers can easily mischaracterize and oversimplify software patents." *Enfish, LLC v. Microsoft Corp.*, 2014 WL 5661456, at *5 (C.D. Cal. Nov. 3, 2014).  If a summary accurately captures the idea of a patent, then one will be able to recognize the patent in that summary.  But

Defendants' summary provides no clue that the claims are actually focused on the concept of using a persistent main stream and substreams.

Defendants' sole effort to justify this omission is found in a single sentence in the final paragraph of Microsoft's brief: "a 'stream' is nothing more than the electronic version of a stack or filing cabinet of time-ordered paper documents."  Microsoft at 18.  Defendants are wrong as a matter of law, because a chronological file of electronic documents is not a "stream," much less a persistent main stream and substreams.

*First*, a "stream" is not merely a time-ordered set of documents.  It is a "time-ordered sequence of data units that functions as a diary of a person or an entity's electronic life and that is designed to have three main portions: past, present, and future."  Dkt. 266 (Markman Order) at 4.  The chronological stack of documents saved on a computer (*e.g.* a stack of court filings) is not "designed to have three main portions, past, present, and future."  It relates only to the past.  Nor does it "function as a diary of a person or an entity's electronic life."



FIG. 4

Fig. 4. '227 Patent.

*Second*, a chronological stack is not a "persistent stream" which is a stream that is "dynamically updated."  266 at 4. Defendants' chronological stack on a computer is not dynamically updated.

*Third*, Defendants' chronological stack is not a "main stream," which is a "stream that is inclusive of every data unit received by or generated by the computer system." *Id.* at 8-9.

*Fourth*, Defendants' chronological stack have persistent "substreams," which is a "stream that is a subset of data units yielded by a filter on a stream, the filter identifying certain documents within the stream." *Id*. at 9.

Accordingly, a summary of the claims that simplifies "a persistent main stream and substreams" to "documents in chronological order" is incorrect as a matter of law—just as it was incorrect to reduce "generating a composite web page that combines certain visual elements of a 'host' website with content of a third-party merchant" to "making two web pages look the same." *DDR Holdings,* 773 F.3d at 1248, 1257, 1259 (holding that the claims were not directed to "making two web pages look the same, or of any other variant suggested by [Defendant] NLG").[3]

\* \* \*

Defendants' assertion that the claims are directed to "organizing documents on a computer in chronological order" is wrong.  Properly summarized, the claims are directed to using a persistent main stream and substreams to organize data units on a computer system.

### 2.      The claims are not directed to an abstract idea.

That a patent claim can be summarized into a basic concept does not imply that it claims an abstract idea—such a summary is possible of every patent claim. *See, e.g. DDR Holdings,* 773 F.3d at 1248. Rather, to be directed to an abstract idea, the summarized concept must in fact constitute nothing more than an abstract idea, such as: (i) "a fundamental truth," *Alice*, 134 S.

---

[3] Apple proposes as an alternative summary "organizing items of information ('data units') in chronological order," Apple at 10.  This summary is even worse because it additionally omits the "computer system," which is also a key attribute of the claims.

Ct.at 2355 (internal quotes omitted);[4] (ii) "a mathematical algorithm," *DDR Holdings,* 773 F.3d at 1256;[5] or (iii) "a fundamental economic practice long prevalent in our system of commerce," *Bilski v. Kappos*, 561 U.S. 593, 611 (2010).

The use of a persistent main stream and substreams on a computer system does not fit into any of the recognized categories of abstract ideas.  It is certainly not a "fundamental truth" or "mathematical algorithm."

Nor does the patent claim a "fundamental economic practice long prevalent in our system of commerce." In fact, prior to the invention, the long-standing practice was to use an entirely different style of computer operating system.  *See, e.g.* '227 Patent 1:21-2:9 (discussing how conventional operating systems were organized).  Thus, the claims are not directed to an abstract idea.

### 3.  Applying the holding of *DDR Holdings*, the claims are patent eligible as a matter of law.

The Federal Circuit's analysis and holding in *DDR Holdings v. Hotels.com* is directly on point.  In *DDR* the court held the asserted claims patent eligible as a matter of law "because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).  The same is true for the '227 claims.

The claimed solution in the '227 patent was "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer" operating systems.

---

[4]     For example, "electro-magnetism, however developed for marking or printing intelligible characters…at any distances." *O'Reilly v. Morse*, 56 U.S. 62, 62, 14 L. Ed. 601 (1853).
[5]     For example, the mathematical formula for converting decimals into binary form. *Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972).

The specification expressly states "the present invention .... provide[s] a document stream operating system and method which solves many, if not all, of the disadvantages of conventional operating systems."  The patent explains that "conventional operating systems suffer" several disadvantages.  1:40-41.  These include:

- "a file must be 'named' when created and often a location in which to store the file must be indicated"
- "users are required to store new information in fixed categories, that is directories or subdirectories"
- "archiving is not automatic"
- lack of "accessibility and compatibility across data platforms"
- "many filenames are not only pointless but useless for retrieval"
- the loss of the "historical context" because there is no "tracking of where, why, and how a document evolves."

'227 Patent, 1:41-2:7.

These problems are rooted in computer technology and either do not exist or are present to a different kind and degree in paper document storage:

*Requirement of naming and locating*.  Before a document exists using a conventional operating system, the document must be "named" and it must be saved in a specific location.  By contrast "when a person grabs a piece of paper and starts writing, no one demands that a name be bestowed on the sheet or that a storage location be found."  '227 Patent 1:54-56.

*Hierarchy of directories and subdirectories*. To save a document using a conventional operating system, a user must identify a location in a hierarchical system of directories and subdirectories:



Once a document is saved into a subdirectory, it is often difficult to find because of the hierarchical layers and sublayers.  By contrast, paper document storage did not have this problem of subdirectories, because they were typically stored in one layer, either alphabetically or chronologically.

*Archiving*.  "Data archiving is an area where conventional electronic systems perform poorly compared to paper-based systems.  Paper-based systems are first and foremost archiving systems, yet data archiving is difficult in conventional desktop systems."  '227 Patent 1:62-64. This is because paper has a permanence (we can save documents that are decades old), but digital data is more volatile.  Electronic information is lost when computers crash, or when software or hardware is updated (information saved on a floppy disk is no longer viewable on modern laptops).  Thus, there is a greater and different archiving problem in computer systems.

*Cross-platform compatibility*. The problem of "accessibility and compatibility across data platforms" only arises in the computing world, where, for example, different programs are used on the same computer.  There is no compatibility problem in the paper-based setting.

*File names that are useless for retrieval*.  Because there is no requirement of naming files in the paper-based world, the problem of having useless file names does not arise to the same

degree.

    <u>Revision tracking</u>. In the computer world, it is typical to create and save new versions of documents as they are revised.  When multiple revisions of the same document are created, it can be difficult to know which document is the latest version. In contrast, the typical practice in the paper-based world was to use a single version; and revision tracking was a problem of both a different kind and degree.

    Accordingly, the '227 claims are "necessarily rooted in computer technology in order to overcome ... problem[s] specifically arising in the realm of computer" systems.  *DDR Holdings,* 773 F.3d at 1257.

    Moreover, the claims "do not merely recite the performance of some business practice known from the pre-[computing] world."  *Id*.  The use of a persistent main stream and substreams was not something done in the world of paper documents.  There was no practice (much less a long-standing practice) of preparing a "time-ordered sequence of [paper documents] that functions as a diary of a person or an entity's electronic life and that is designed to have three main portions: past, present, and future."  Dkt. 266 at 4.  Nor was there any practice of having a stack of paper documents that was persistent and "dynamically updated." *See, e.g.* '227 Patent 1:20-2:10.  Nor was there any practice of having a main stream of "that is inclusive of every [paper document] received by or generated by" someone, while also simultaneously having subsets of those documents maintained in persistent and "dynamically updated" substreams.  *Id*.

    For example, if a computer receives a document consisting of a letter from Tom Adams about bass fishing, using the streams-based approach, the same letter is simultaneously available in both: (1) a main stream, and (2) relevant substreams (such as a substream for all letters, another substream for documents relating to fishing, and another for correspondence with Tom

11

Adams). That was not a feature of paper document storage. *See, e.g.* '227 Patent Claim 13. *See, e.g.* '227 Patent 2:25-29 ("a conventional paper document can only be accessed in one place, but electronic documents can be accessed from multiple locations" at the same time). A letter on paper would have been stored in one location (filed under "A" for Adams, or "F" for fishing). Because it was not possible to use the streams-based approach before computers, there was no "well-known business practice" of using persistent streams and substreams prior to computing.

Defendants' attempt to analogize the inventions to paper documents does not account for problems and solutions that do not exist in the world of paper documents.  Similarly, in *DDR Holdings*, the court held that the Defendants analogy to a "store within a store" concept failed because "that practice did not have to account for the ephemeral nature of an Internet 'location' or the near-instantaneous transport between these locations made possible by standard Internet communication protocols, which introduces a problem that does not arise in the 'brick and mortar' context." *DDR Holdings,* 773 F.3d at 1258.  While the concept of chronologically organizing paper documents "may have been well-known by the relevant timeframe, that practice did not have to account for" problems in conventional operating systems such as the requirement of naming each file, storing files in fixed categories, lack of compatibility across data platforms, loss of historical context, and difficulty archiving.  *See, e.g.,* '227 Patent 1:41-2:7. Thus, Defendants' historical analogy to chronological ordering of paper documents fails.  *See DDR Holdings,* 773 F.3d at 1258.

### 4. The claims cannot be performed in the human mind or with pen and paper.

Defendants assert that the claims are abstract because they merely add "computer-based limitations" to processes that "humans can perform," e.g. "mental processes" or acts "carried out

by a human using pen and paper."  Microsoft at 11; Apple at 12.  This argument fails on two levels.

*First*, Defendants get the law wrong.  "Methods which can be performed entirely in the human mind are unpatentable not because there is anything wrong with claiming mental method steps as part of a process containing non-mental steps, but rather because computational methods which can be performed *entirely* in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none."  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (emphasis in original).

Defendants' argument depends on applying this test not to the <u>claims</u> but, rather to a stripped down version of the claims.  Microsoft at 11-12; Apple at 12.  Instead, the test must be applied to the claim language, and Defendants must establish that <u>all steps of the claim</u> can be performed in the mind or using pen and paper.  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (claim fails the test where "<u>All of claim 3's method steps</u> can be performed in the human mind, or by a human using a pen and paper." (emphasis added)); *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 F. App'x 950, 955 (Fed. Cir. 2014) (non-precedential) (invalidating a patent as a mental process, and holding that the "ruling is limited to the circumstances presented here, in which every step is a familiar part of the conscious process that doctors can and do perform in their heads.")).  Contrary to Defendants' suggestion, no Federal Circuit case has ever held, or suggested, that whether a claim is abstract is determined by summarizing the claim down to a stripped down version of the claims and then asking whether those concepts can be performed in the human mind or by pen and paper.[6]

---

[6]    No Federal Circuit or Supreme Court case cited by Defendants supports their approach.  The claims in Alice were invalid because "the concept of intermediated settlement," which the

13

*Second*, the claims cannot be performed with pen and paper. Here, Defendants cannot show that the asserted claims can be performed "entirely in the human mind" or "by a human using pen and paper."  The claims expressly recite the use of a "computer system."  The claim steps must be—and can only be— performed by a computer system.[7]  Similarly, the stream-based approach cannot be performed entirely in the human mind or with pen and paper.  Defendants' contention that the claims merely add "computer-based limitations on processes … that humans can perform" in a paper-based setting (Microsoft at 11) is wrong.  As explained, above, a paper based set of document is not a "stream."

Moreover, the streams-based approach requires that stored information be simultaneously available in multiple streams.  *See, e.g.* '227 Claim 13 (requiring a "main stream" and at least one "substream," both of which are "persistent").  This is impossible to do without the aid of computers.  In the "letter from Tom Adams" example above, in the pre-computing world, the

---

claims were directed to, is "'a fundamental economic practice." *Alice*, 134 S. Ct. at 2356 ((emphasis added)). The Court did not state that the idea could be done by humans mentally or using pen and paper (much less hold that ideas that can be performed by mentally or using pen and paper are abstract). *Id.*  Similarly, the analysis in *Ultramercial* had nothing to do with human performance, mental steps, or pen and paper; the decision never mentions any of those concepts. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 712 (Fed. Cir. 2014). In *Planet Bingo*, the Federal Circuit held that the claims were abstract because "'solv[ing a] tampering problem and also minimiz[ing] other security risks' during bingo ticket purchases… is similar to the abstract ideas of 'risk hedging' during 'consumer transactions,' *Bilski*, 130 S.Ct. at 3231, and 'mitigating settlement risk' in 'financial transactions,' *Alice*, 134 S.Ct. at 2356–57, that the Supreme Court found ineligible." The Court did not hold that a claim is invalid if it can be summarized into a basic concept that can be performed in the human mind or by pen and paper. *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014); *cf. CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) ("methods that can be performed entirely in the human mind" are invalid (emphasis added)).

[7]    Indeed, the Federal Circuit has recognized that the asserted claims require the use of a computer: the claims "require[] at a minimum: searching [using computer software], receiving data units from other computer systems (such as receiving e-mail), generating data units (sending an e-mail or creating a document), and generating a substream ('time-ordered' search results)." *Mirror Worlds, LLC v. Apple Inc*., 692 F.3d 1351, 1358 (Fed. Cir. 2012). Moreover, claims 15, 16, 34, 39, and all of the Apple Claims require a "display device," and thus cannot be performed in the mind or with pen and paper—a display device is a tangible machine that exists in the real world.

14

letter would have to be saved in a single place.  It could not simultaneously be available in more than one place.

This is also true in Defendants' court docketing example.  Defendants analogize the case docket to the "main stream" and the filtered results of the docket to "substreams."  Microsoft at 12-15.  Using a streams-based approach, if a Motion for Summary Judgment is filed, the motion would be simultaneously available in a main stream of all filings and a substream containing summary judgment-related papers (as well as any other relevant substreams, such as a substream of all motions).  This is impossible to do with paper.

Defendants suggest that the summary judgment filings can be made available in multiple places by making more copies.  *See* Microsoft at 13 (asserting that there would be "copies of the summary judgment briefing for reference in the case" in the substream). Defendants do not explain how the additional copies would be made in the paper-based world using only the human mind (without the use of a machine to scan, save, and print the additional copies).  Moreover, this multi-copy approach is still not the streams-based approach.  Under the streams-based approach, the *same* data unit—rather than different copies of a data unit—is simultaneously in the main stream and the relevant substreams. *See, e.g.* '227 Patent Claim 13.  The asserted claims expressly state that the substream is "for containing" a filtered set of "data units only from the main stream," not copies of data units from the main stream.  *Id.*

In addition, the claimed approach—having the same data unit simultaneously available in multiple streams—is materially different and has significant advantages over the multi-copy approach suggested by Defendants. For example, using Defendants' court filing analogy, assume that the Court creates a main folder of all court filings from a case, and another folder that contains copies of the summary judgment briefing.  *See* Microsoft at 12.  The Court locates the opening summary judgment motion in the "summary judgment briefing" folder, marks up the

15

brief, and then puts it back in the folder.  In the streams-based approach, the marked up copy

would then be simultaneously available in both the substream (all summary judgment briefing)

and the main stream (all court filings). In contrast, in the copy-based approach, the marked up

file would only be found in the "summary judgment briefing" subfolder.  The Court would then

be in the position of (1) having to remember which subfolder was used every time edits were

made, or (2) creating multiple additional copies of each document every time edits are made, so

that the edits can be saved in all relevant subfolders.

> **5.  Defendants "methods of organizing human activity" argument also fails.**

Defendants assert that every "method of organizing human activity" is an abstract idea.

Apple at 1; Microsoft at 7.  They are wrong. Both the Federal Circuit and Supreme Court have

expressly considered and rejected that premise.

In the *en banc* Federal Circuit case  *Bilski*, the defendant asserted that methods for

"organizing human activity" were not patent eligible, but that position was joined by only two

judges and rejected by the remaining members of the Federal Circuit.  *See In re Bilski*, 545 F.3d

943, 966, 970-72 (Fed. Cir. 2008) (Dyk, J., concurring, joined by Linn, J.), *aff'd but criticized on

other grounds sub nom Bilski v. Kappos*, 561 U.S. 593 (2010); *see e.g., DDR Holdings,* 773 F.3d

at 1257 (holding that a patent that addresses "the problem of retaining website visitors" is not an

abstract idea).

In reviewing *Bilski*, the Supreme Court also expressly considered the position that

methods of organizing human activity were ineligible under section 101, but, once again, that

position was joined only by the minority. *Bilski v. Kappos*, 561 U.S. 593, 628, 130 S. Ct. 3218,

3240, 177 L. Ed. 2d 792 (2010) (Stevens, J., concurring). The majority rejected that position and

expressly held that "federal law explicitly contemplates the existence of at least some business

method patents." *Bilski v. Kappos*, 561 U.S. 593, 606-07 (2010).

Apple's assertion that in *Alice* "the Supreme Court *did* hold that one example of an abstract idea is 'organizing human activity,'" Apple at 9 (emphasis Apple's), is simply wrong. The phrase "organizing human activity" was used in *Alice*, but for a completely different purpose. The patent holder had argued that "the abstract-ideas category is confined to preexisting, fundamental truths that exist in principle apart from any human action." *Alice*, 134 S. Ct. at 2356 (internal quotes omitted). The Court responded, "*Bilski* belies petitioner's assertion. The concept of risk hedging we identified as an abstract idea in that case … is a method of organizing human activity, not a truth about the natural world that has always existed." *Id*. at 2357-58. The Court thus used the phrase "organizing human activity" to explain that an "abstract idea" may arise from human activity (as well as from the natural world); it did not suggest that any method of organizing human activity was an abstract idea.

What is more, the Court in *Alice* went on to expressly identify the attribute of human activity that had "special significance" in determining whether it was a patent-ineligible abstract idea: whether it constituted "'a fundamental economic practice long prevalent in our system of commerce.'" *Alice*, 134 S. Ct. at 2356 (quoting *Bilski*, 561 U.S. at 599); see *DietGoal Innovations LLC v. Bravo Media LLC*, No. 13 CIV. 8391 PAE, 2014 WL 3582914, at *9 (S.D.N.Y. July 8, 2014) ("a 'method of organizing human activity' may be impermissibly abstract if it is grounded in a fundamental practice"). As demonstrated above, the '227 patent does not claim a fundamental economic practice.

### 6.     Apple's "perspective" argument also fails.

Dependent claims 40, 42, 43, and 44 (the "Apple Claims") are asserted only against Apple, and not the '941 Defendants. Like the Common Claims, each of these dependent claims also require the use of a streams-based solution to computing. *See* '227 Patent Claims. Yet,

17

Apple asserts that the Apple Claims are "directed at" another idea, the "use of 'perspective' to give the 'impression' of depth." Apple at 11.  This summary of the Apple Claims fails because, as explained above (1) the key feature of the claims is the use of a streams-based computer system, and (2) the purpose of the claims was to avoid the problems in conventional operating systems.  Apple's summary reflects neither of these, and just picks up one feature that is common in those dependent claims (e.g. the use of perspective).   Because Apple's summary does not reflect the claims themselves, it fails.[8]

**B.** *Mayo* **step 2: Defendants fail to establish that the claims are patent-ineligible under** *Mayo* **step 2.**

Because Defendants do not establish step one of the *Mayo* framework, the second step of the *Mayo* framework need not be addressed.  Moreover, as demonstrated below, Defendants' section 101 defense also fails because they cannot establish *Mayo* step 2.

**1.** **The '227 claims add additional steps that are not well-understood, routine, or conventional.**

"We have described step two of this analysis as a search for an inventive concept—*i.e.,* an element or combination of elements that is sufficient to ensure that the patent in practice

---

[8]      Moreover, a consideration of the preemptive footprint of the claims shows that the Apple Claims are not directed at using "perspective." *Alice*, 134 S. Ct. at 2354 (The "concern that drives this exclusionary principle [prohibiting abstract ideas from patentability] as one of preemption."). Using Apple's example, "Artists have used 'perspective' to give a viewer the impression of three-dimensional depth despite the depiction on a flat, two-dimensional surface (like on canvas or paper) since the 15th Century, and have invoked that idea on computers." Apple at 11. While that may be so, creating an image (whether on canvas, paper, or computer) using perspective does not implicate any of the patent claims. No claim would be infringed by creation of such an image, because there is no use of (1) "streams," (2) "substreams," (3) "timestamp to identify," (4) "receiving" of "data units from other computers," (5) "associating each data unit with at least one chronological indicator," (6) "maintaining" of "persistent streams," or myriad other limitations. The fact that Apple's summary is completely divorced from the preemptive footprint of the claims further indicates that the summary is incorrect. *See, e.g. DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1248, 1256-59 (Fed. Cir. 2014) (claims are not directed to "making two web pages look the same," where the claims did not "attempt to preempt every application of the idea of increasing sales by making two web pages look the same").

amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355 (internal quotes and brackets omitted).  The *Mayo* analysis is based on the "risk of pre-emption," *i.e.*, "disproportionately tying up the use of the underlying ideas." *Id.* at 2354. Thus, "in applying the § 101 exception, we must distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more, thereby 'transform[ing]' them into a patent-eligible invention.  The former 'would risk disproportionately tying up the use of the underlying' ideas, and are therefore ineligible for patent protection.  The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.* at 2354-55 (internal citations omitted).

This step requires an "examination of claim elements 'both individually and 'as an ordered combination.'" *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014) (*quoting Alice*, 134 S.Ct. at 2355).  To pass step 2, it is enough that the claimed features are not "well-understood, routine, conventional activity." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (quoting *Mayo Collaborative Svcs. v. Prometheus Lab's, Inc.*, 132 S. Ct. 1298 (2012)).

The claims of the patent require much more and are far narrower than just "organizing documents on a computer in chronological order," as Defendants assert.  For example:

Streams.  Each claim of the '227 patent requires a "stream."  As explained above, a "stream" is a "sequence of data units that functions as a diary of a person or an entity's electronic life and that is designed to have three main portions: past, present, and future." Dkt. 266 at 4.

Main streams and substreams.  In addition, the claims require at least two streams: a main stream and at least one substream.  '227 Patent Claim 13.  The main stream must be "inclusive of every data unit received by or generated by the computer system." Dkt. 266 at 9. The substream,

19

in contrast, must be a "subset of data units yielded by a filter on a stream, the filter identifying certain documents within the stream." *Id.*

Persistent streams.  The claims further require that a "main stream" and "at least one substream" be "maintain[ed] as persistent streams," which are "persistent streams" are "streams that are dynamically updated." *Id.* at 4.

These features in the '227 claims were not routine or conventional activity. In fact, the very purpose of the invention was to override the routine, conventional operation of the computer operating system, and instead use a streams-based computer system that is nonconventional.  The use of streams, the use of a main stream and substreams, and the use of persistent streams are non-routine and unconventional approaches.

For example, assume Brian received a letter from John two years ago, and saved the letter on his computer.  To locate the letter using a conventional operating system, Brian would have to (1) remember what he named the letter, and (2) remember what folder he saved it in.  Using the claimed approach, Brian could find the file without remembering the file name or location: he can simply create a substream (for example, of all letters from John), and use the timestamp to identify the correct letter.  These additional features—the use of a persistent main stream and substreams—were not-conventional, and are contrary to the well-understood, routine, conventional operation of a typical operating system. Thus, they add "significantly more" under *Mayo* step 2.

In addition, the Apple Claims also require displaying data units from the streams as stacks of partly overlapping documents using perspective.  The use of stacks that use perspective to display data units was also unconventional.  Conventional operating systems did not used "streams" and therefore did not display them. Moreover, they conventionally displayed documents as if they were on a flat surface and equidistant from the viewer:

20



This display technique, therefore, was also unconventional and non-routine.

### 2.    Defendants' *Mayo* step 2 arguments fail.

#### a.    Defendants' no "meaningful addition" argument is wrong.

Defendants assert that "none of the claim limitations, independently or taken as a whole, provide any meaningful addition to the abstract idea of chronologically organizing documents." Defs. at 4, 15-17.  This argument fails because, as explained above, each claim has additional meaningful limitations.

Moreover, the preemptive footprint of the '227 claims demonstrates that Defendants are wrong.  If Defendants were correct that the claims have no "meaningful addition" to the concept of "chronologically organizing documents," then the claims would preempt substantially all methods of "chronologically organizing documents." But that is not the case.  Instead, the claims "ensure that the patent in practice amounts to significantly more than a patent upon [chronologically organizing documents] itself.'"  *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 714 (Fed. Cir. 2014).  For example, the following methods of "chronologically organizing documents" do not infringe the claims:

(1) saving chronologically ordered documents in a filing cabinet;

(2) saving chronologically ordered documents electronically on a hard disk;

(3) saving documents electronically in memory with associated databases that includes a

date field;

(4) scanning a set of chronologically ordered documents onto a computer and saving it as

a pdf;

(5) saving four documents in chronological order in a folder by naming them "1," "2,"

"3" and "4";

(6) creating a table (electronic or on paper) and listing all documents in chronological

order;

(7) creating a slideshow with chronologically ordered photos; and

(8) saving a copy of all court filings in chronological order in an electronic folder.

There are countless other examples, both using a computer and using paper.

That there are so many other ways to chronologically organize documents demonstrates

that the claims claim substantially less than simply "chronologically organizing documents."

*DDR Holdings,* 773 F.3d at 1259 (the claims "recite a specific way to automate the creation of a

composite web page").   Because *"the claimed solution amounts to an inventive concept for

resolving"* this particular operating-system-centric problem, "the claims are patent-eligible."  *Id.*

at 1259.

### b.    Defendants' "generic computer with conventional programming" argument is wrong.

Defendants next assert that the '227 claims add only operations "that can be performed

by any generic computer with conventional programming."  Defs. at 16. This argument also fails.

A computer implementation is "meaningful in the context of this analysis" if it

"involve[s] more than performance of 'well-understood, routine, [and] conventional activities

previously known to the industry.'"  *Content Extraction & Transmission LLC v. Wells Fargo*

*Bank, Nat. Ass'n, No. 2013-1112*, 2014 WL 7272219, at *3 (Fed. Cir. Dec. 23, 2014).  That is exactly the case here.  As explained above, the very purpose of the '227 Patent was to avoid pitfalls associated with conventional programming by using a streams-based approach.  '227 Patent 1:20-2:10.  Thus, instead of reciting features that can be done with "conventional programming," the '227 claims describe a computer that use a non-conventional, streams-based approach.  Because this approach was not well-understood, routine, or conventional, Defendants' argument fails.

### c.      Defendants' no "inventive concept" argument is wrong.

Apple suggests that to constitute an "inventive concept," the claims must add steps that were not known in the prior art. Apple at 15 ("displaying documents in the stream in a graduated or foreshortened 'stack' cannot be the required 'inventive concept' because" this was "'known in the cited art.'").  Apple gets the law wrong.

Establishing that claimed features constitute an "inventive concept" for purposes of *Mayo* step 2 does not entail an analysis of whether the features were novel and non-obviousness over the prior art.  *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981) (holding "[t]he 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter"); *Bilski*, 561 U.S. at 602 ("The § 101 patent-eligibility inquiry is only a threshold test" preceding an analysis of whether "the invention [is] novel, see § 102, non-obvious § 103"); *TQP Dev., LLC v. Intuit Inc.,* No. 2:12-CV-180-WCB, 2014 WL 651935, at *5 (E.D. Tex. Feb. 19, 2014) (J. Bryson) ("those arguments go to issues of anticipation and obviousness, not to whether the claims of the '730 patent are patent eligible under section 101").  It is enough that the claimed features are not "well-understood, routine, conventional activity."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (quoting *Mayo Collaborative Svcs. v.*

23

*Prometheus Lab's, Inc*., 132 S. Ct. 1298 (2012)).  As demonstrated above, the additional steps in

the '227 claims were not well-understood, routine, conventional activity.  Thus, the claims are

patent-eligible under *Mayo* step 2.

Moreover, the use of streams as claimed in the patent was so non-routine that the PTO

found that the approach was novel and non-obvious when allowing the claims, and in confirming

the claims in two recent reexaminations.   Exhibits 1, 2 ('227 Patent Ex Parte Reexamination

Certificates).  The PTO expressly found that "the prior art fails to teach or suggest generating a

main stream of data units and at least on substream, the main stream for receiving each data unit

received by or generated by the computer system, and each substream for containing data units

only from the main stream."  Exhibit 3 (Notice of Intent to Issue Ex Parte Reexamination

Certificate).[9]

### C.   The '227 claims are patent-eligible under the machine-or-transformation test.

"While the Supreme Court has held that the machine-or-transformation test is not the sole

test governing § 101 analyses, *Bilski,* 561 U.S. at 604, 130 S.Ct. 3218, that test can provide a

'useful clue' in the second step of the *Alice* framework...."  *Ultramercial, Inc. v. Hulu, LLC*, 772

F.3d 709, 716 (Fed. Cir. 2014).

Under the machine-or-transformation test, "[a] claimed process is surely patent-eligible

under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular

article into a different state or thing."  *In re Bilski*, 545 F.3d at 954.

*Machine*.  Each of the asserted '227 claims are patent eligible under the "machine" prong.

A method that uses a "computer" can satisfy the machine prong if the claimed computer "play[s]

---

[9]       The Court may take judicial notice of the prosecution history. *See Genetic Technologies Ltd. v. Bristol-Myers Squibb Co*., No. CV 12-394-LPS, 2014 WL 5507637, at *3 (D. Del. Oct. 30, 2014) (when addressing a motion to dismiss under 12(b)(6), "A court may also take judicial notice of the prosecution histories, which are 'public records.'").

a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010).  However, a claimed "computer" does not satisfy the machine prong if "the computer implementation was purely conventional." *Alice*, 134 S. Ct. at 2358.

In the '227 patent, the claimed "computer" plays a critical part in permitting the method to be performed.  As demonstrated above, it is impossible to use a streams-based approach (much less practice the patent claims) without the use of a computer because the approach requires that stored information be simultaneously available in multiple locations (*i.e.* a main stream and at least one substream).  *See, e.g.* '227 Claim 13 (requiring a "main stream" and at least one "substream," both of which are "persistent").

In addition, the claims use a nonconventional computer implementation.  As explained above, the purpose of the invention was to avoid the conventional computer operating system; thus, the claims teach using a non-conventional streams-based approach (rather than a conventional operating system).  *See, e.g.* '227 Patent 1:40-2:7.  And, as also demonstrated above, the claims require specialized and novel programming, including the use of persistent streams and substreams.  '227 Patent 1:40-2:7.  Because the claims expressly require the use of a "computer system" that plays a fundamental role in the method, and the computer implementation is not "purely conventional," the claims satisfy the "machine" prong, and therefore are patent-eligible.

*Transformation*.  In addition to satisfying the "machine" prong, each of the Apple Claims satisfies the "transformation" part of the test.  Claims 40, 42, 43, and 44 have additional limitations that relate to displaying data in a stack.  *See, e.g.* Apple at 7; '227 Patent Claims.

In *Bilski*, the Federal Circuit explained that "the electronic transformation of the data

25

itself into a visual depiction in *Abele* was sufficient; the claim was not required to involve any transformation of the underlying physical object that the data represented." *In re Bilski*, 545 F.3d at 963.  "Thus, the transformation of that raw data into a particular visual depiction of a physical object on a display was sufficient to render that more narrowly-claimed process patent-eligible." *Id*. at 963; *see Research Corp. Technologies v. Microsoft Corp.*, 627 F.3d 859, 868-69 (Fed. Cir. 2010) (holding that a method for converting image data into a form that a computer can display as a half-tone image is patentable even though the method merely converts data into a different form); *TQP Dev., LLC v. Intuit Inc.*, No. 2:12-CV-180-WCB, 2014 WL 651935, at *7 (E.D. Tex. Feb. 19, 2014) (Bryson J.) ("although the invention in this case does not result in the physical transformation of matter of the sort involved, for example, in *Diamond v. Diehr*, 450 U.S. 175 (1981) (method for curing rubber), it involves a specific system for modifying data that has equally concrete and valuable effects in the field of electronic communications").

Each of the Apple Asserted Claims requires creating and displaying a visual representation with data.  *See, e.g.* 227 Claims (Claims 40, 42, and 43 require displaying "a stack of partly overlapping representations using perspective to create an illusion of increasing distance from a viewpoint," and claim 44 requires "displaying…at least some of said data units as a receding, foreshortened stack of partly overlapping data unit representations").  These visual representations are displayed on a display device that can be physically viewed.  Thus, the claims transform data into a tangible object.  This is "sufficient to render that more narrowly claimed process patent-eligible."  *Bilski*, 545 F.3d at 963.

## III.   Conclusion

For the reasons set forth above, Defendants' motion should be denied and the Court should enter judgment on the pleadings in favor of Mirror Worlds that Defendants' section 101 defense and counterclaim fails as a matter of law.

26

Date: March 2, 2015                          Respectfully submitted,


                                             By: /s/ *Christin Cho*
                                             Christin Cho
                                             CA State Bar No. 238173
                                             (admitted to practice before the U.S. District
                                             Court for the Eastern District of Texas)
                                             Email: christin@dovellaw.com

                                             Gregory Dovel
                                             CA State Bar no. 135387
                                             (admitted to practice before the U.S. District
                                             Court for the Eastern District of Texas)
                                             Email: greg@dovellaw.com
                                             Simon Franzini
                                             CA State Bar No. 287631
                                             (admitted to practice before the U.S. District
                                             Court for the Eastern District of Texas)
                                             Email: simon@dovellaw.com
                                             Richard Lyon
                                             CA State Bar No. 229288
                                             (admitted to practice before the U.S. District
                                             Court for the Eastern District of Texas)
                                             Email: rick@dovellaw.com
                                             DOVEL & LUNER, LLP
                                             201 Santa Monica Blvd., Suite 600
                                             Santa Monica, CA 90401
                                             Telephone: 310-656-7066
                                             Facsimile: 310-657-7069

                                             T. John Ward, Jr.
                                             State Bar No. 00794818
                                             E-mail: jw@wsfirm.com
                                             Claire Abernathy Henry
                                             State Bar No. 24053063
                                             E-mail: Claire@wsfirm.com
                                             Wesley Hill
                                             State Bar No. 24032294
                                             E-mail: wh@wsfirm.com
                                             Ward & Smith Law Firm
                                             P.O. Box 1231
                                             Longview, Texas 75606-1231
                                             (903) 757-6400 (telephone)
                                             (903) 757-2323 (facsimile)

                                             **ATTORNEYS FOR PLAINTIFF
                                             MIRROR WORLD TECHNOLOGIES,
                                             LLC**

27

## **Certificate of Service**

I certify that this document is being filed electronically and, as a result, is being served on counsel of record through the Electronic Filing System on the filing date listed above.

/s/ *Christin Cho*
Christin Cho