**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| MIRROR WORLDS<br>    TECHNOLOGIES, LLC,<br>        Plaintiff, | CIVIL ACTION NO. 6:13-cv-419 |
| v. | **JURY TRIAL DEMANDED** |
| APPLE INC., ET AL.,<br>    Defendants. | |

| | |
|---|---|
| MIRROR WORLDS<br>    TECHNOLOGIES, LLC,<br>        Plaintiff, | CIVIL ACTION NO. 6:13-cv-941 |
| v. | **JURY TRIAL DEMANDED** |
| MICROSOFT CORP., ET AL.,<br>    Defendants. | |

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR
JUDGMENT ON THE PLEADINGS
AND
OPPOSITION TO PLAINTIFF MIRROR WORLDS TECHNOLOGIES, LLC'S
CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

<u>Page</u>

I.   INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ................................................................................................. 2

    A.   The Asserted Claims Are Directed to an Abstract Idea .................................. 2

        1.   *Mayo* Step One requires courts to examine whether the asserted claims are directed to ineligible concepts, regardless of jargon ................................. 2

        2.   The claims are abstract even under Mirror Worlds' characterization .................... 4

        3.   Mirror Worlds does not dispute that numerous courts have held that methods of organization are fundamental, abstract ideas ...................... 6

        4.   Mirror Worlds' arguments regarding novelty are misplaced in *Mayo*'s step one ................................................................................................. 8

        5.   Mirror Worlds is wrong to argue that the asserted claims cannot be performed without a computer .................................................................. 9

        6.   Apple and Microsoft Defendants' court docketing analogy is sound ................... 9

    B.   The Asserted Claims Do Not Contain Any "Inventive Concept" ................................ 12

        1.   The named inventor admits that time-based organization is well-understood and conventional .................................................................. 13

        2.   Presenting the "streams" using "perspective" cannot supply the necessary inventive concept ......................................................................... 14

    C.   Mirror Worlds' Reliance on *DDR Holdings* Is Misplaced ......................................... 16

    D.   The Machine-or-Transformation Test Does Not Help Mirror Worlds Here ................ 18

III.   CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) ................................................................................ 3, 4, 5, 8, 9, 18

*Bascom Research, LLC v. LinkedIn, Inc.,*
    --- F. Supp. 3d ----, 2015 WL 149480 (N.D. Cal. Jan. 5, 2015) ................................. 7

*Bilski v. Kappos,*
    561 U.S. 593 (2010) ................................................................................................. 17

*buySAFE, Inc. v. Google, Inc.,*
    964 F. Supp. 2d 331 (D. Del. 2013), *aff'd* 765 F.3d 1350 (Fed. Cir. 2014) ............................. 17

*Cal. Inst. of Tech. v. Hughes Commc'ns, Inc.,*
    --- F.3d ----, 2014 WL 5661290 (C.D. Cal. Nov. 3, 2014) ................................. 2, 12

*Certusview Techs., LLC v. S&N Locating Servs., LLC,*
    No. 2:13-cv-346, 2015 WL 269427 (E.D. Va. Jan. 21, 2015) ................................. 7

*Clear w. Computers, LLC v. Altec Indust., Inc.,*
    No. 14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) ................................. 10

*Cloud Satchel, LLC v. Amazon.com, LLC,*
    --- F. Supp. 3d ----, No. 13-941, 2014 WL 7227942 (D. Del. Dec. 18, 2014) ..................... 2, 3

*Cogent Med., Inc. v. John Wiley & Sons, Inc.,*
    No. C-13-4479, 2014 U.S. Dist. LEXIS 139856 (N.D. Cal. Sept. 30, 2014) .............. 10, 11, 12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
    776 F.3d 1343 (Fed. Cir. 2014) ......................................................................... 6, 9

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,*
    558 F. App'x 988 (Fed. Cir. 2014) ......................................................................... 7

*Data Distrib. Techs., LLC v. Brer Affils., Inc.,*
    No. 12-4878, 2014 U.S. Dist. LEXIS 115543 (D.N.J. Aug. 19, 2014) ................................. 10

*DDR Holdings, LLC v. Hotels.com, L.P.*
    773 F.3d 1245 (Fed. Cir. 2014) ................................................................ 15, 16, 17

*Diamond v. Diehr,*
    450 U.S. 175 ................................................................................................. 8

*Dietgoal Innovations LLC v. Bravo Media LLC,*
    33 F. Supp. 3d 271 (S.D.N.Y. 2014) ............................................................................ 4, 15

*Digitech Image Techs., LLC v. Elects. for Imaging, Inc.,*
    758 F.3d 1344 (Fed. Cir. 2014) ....................................................................................... 6

*Enfish, LLC v. Microsoft Corp.,*
    No. 12-cv-07360, 2014 U.S. Dist. LEXIS 156760 (C.D. Cal. Nov. 3, 2014) ................... 6, 7, 8

*In re Abele,*
    684 F.2d 902 (C.C.P.A. 1982) ........................................................................................ 18

*In re Bilski,*
    545 F.3d 943 (Fed. Cir. 2008) ....................................................................................... 18

*In re TLI Commc'ns LLC Patent Litig.,*
    --- F. Supp. 3d ----, 2015 WL 627858 (E.D. Va. Feb. 6, 2015)................................ 3, 8, 16, 17

*Intellectual Ventures I LLC v. Capital One Fin. Corp.,*
    No. 13-cv-00740, 2014 WL 1513273 (E.D. Va. Apr. 16, 2014) ........................................ 4, 18

*Intellectual Ventures I LLC v. Motorola Mobility LLC,*
    No. 11-908 (D. Del. Feb. 24, 2015).................................................................................. 17

*Mayo Collaborative Services v. Prometheus Laboratories,*
    132 S. Ct. 1289 (2012)..................................................................................................... 12

*Mirror Worlds Inc. v. Apple Inc.,*
    No. 6:08-cv-88 (E.D. Tex. Sept. 28, 2010)........................................................................ 3

*Mirror Worlds Techs., LLC v. Apple Inc.,*
    No. 13-cv-00419 (E.D. Tex. Jan. 14, 2015)....................................................................... 5

*Money Suite Co. v. 21st Century Insurance, Inc.,*
    No. 13-984, 2015 WL 436160 (D. Del. Jan. 27, 2015) ....................................................... 3

*Open Text S.A. v. Box, Inc.,*
    --- F. Supp. 3d ----, 2015 WL 269036 (N.D. Cal. Jan. 20, 2015) ......................................... 8

*Planet Bingo, LLC v. VKGS LLC,*
    756 F. App'x 1005 (Fed. Cir. 2014) ................................................................................. 7

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) ....................................................................................... 17

## I.    INTRODUCTION

The crux of Mirror Worlds' argument in its Cross-Motion and Opposition is that the '227 Patent covers the allegedly *new* idea to organize electronic information chronologically, which is allegedly better than older ideas for organizing information.  Mirror Worlds is wrong, as the abstract idea of organizing information chronologically has been known for centuries at least (as has the idea of using perspective in two-dimensional images, recited in the patent claims asserted only against Apple), and there is nothing novel about using a computer to organize and display information.  But regardless, Mirror Worlds' reliance on *novelty* is fundamentally misplaced here, as the law is clear that abstract methods for organizing information – new or old – are not patent-eligible, and are not rendered patent-eligible merely by performing them on a computer.

Moreover, while Mirror Worlds relies heavily on jargon in the asserted claims (e.g., "stream" and "substream") to argue that the claims are technological and not abstract, that jargon cannot help Mirror Worlds.  The Court has already construed "stream" and "substream" to have a *non-technical, abstract meaning*, and the law requires the Court to look past this kind of jargon in patent claim language in any event, to determine whether the *idea* being claimed is abstract. Here, there is no doubt that the claimed idea – organizing information chronologically and displaying it using perspective – is abstract.

Finally, there is nothing in the asserted claims beyond this abstract idea; no "something more" that would render the claims concrete and patent-eligible.  Mirror Worlds does not identify anything in the claims that meets this bar, and instead argues that the claims must pass muster regardless under *DDR Holdings* because they relate to computers.  In essence, Mirror Worlds argues that because *other* methods of organization that had previously been implemented in computer systems (e.g., file-cabinet-based and desktop-based systems) had disadvantages or

"problems," the age-old method of organization that the '227 Patent discloses – chronological organization – is "unconventional" and "solves" problems inherent in computer systems themselves.  But it is abundantly clear that the "problems" Mirror Worlds identifies are *not* inherent in computer systems, but rather are inherent in the abstract methods of organization themselves.  And the "solution" Mirror Worlds claims is likewise not unique to computer systems, but rather is an utterly conventional and abstract solution to these abstract problems.  Therefore *DDR Holdings* does not help Mirror Worlds at all.  For at least these reasons, the Court should grant Apple's Rule 12(c) Motion for Judgment on the Pleadings and deny Mirror Worlds' Cross-Motion.

## II.    ARGUMENT

### A.    The Asserted Claims Are Directed to an Abstract Idea

#### 1.    *Mayo* Step One requires courts to examine whether the asserted claims are directed to ineligible concepts, regardless of jargon

Mirror Worlds argues that Apple and Microsoft Defendants have improperly oversimplified the claims by ignoring certain pseudo-technical claim terms (e.g., "stream").  But Mirror Worlds is incorrect.  Step one of the *Mayo* test requires courts to ignore the "technical jargon" used in a claim and focus on the purpose of the claim to discern whether it is directed to an abstract idea.  *See, e.g.*, *Cloud Satchel, LLC v. Amazon.com, LLC*, No. 13-941, --- F. Supp. 3d ----, 2014 WL 7227942, at *6-7 (D. Del. Dec. 18, 2014) (characterizing the asserted claim "at its core," implicitly disagreeing with plaintiff's argument that defendants' "greatly oversimplified" the claims); *Cal. Inst. of Tech. v. Hughes Commc'ns, Inc.*, --- F.3d ----, 2014 WL 5661290, at *13 (C.D. Cal. Nov. 3, 2014) (a court "must identify the purpose of the claim—in other words, what the claimed invention is trying to achieve—and ask whether that purpose is abstract.").  For example, in *Money Suite Co. v. 21st Century Insurance, Inc.*, the court determined that the patent

was directed to an abstract idea when "stripped of its . . . technical jargon."  No. 13-984, 2015

WL 436160, at *3 (D. Del. Jan. 27, 2015).  Moreover, the "length or specificity of the asserted

claims" does not preclude the finding that the claims fundamentally recite an abstract idea

"where, as here, the claim language does nothing more than describe the contours" of the

claimed process.  *Cloud Satchel*, 2014 WL 7227942, *7.  In other words, "dress[ing] up" a

concept in "'patent-ese'-type convoluted language" cannot save an otherwise abstract idea.  *In re

TLI Commc'ns LLC Patent Litig.*, --- F. Supp. 3d ----, 2015 WL 627858, *13, 14 (E.D. Va. Feb.

6, 2015) (holding that a claim, "distilled to its essence," that was directed to "categorizing

photographs based on when they were taken or on some other characteristic or basis" was

abstract and not patent-eligible); *see also, e.g.*, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct.

2347, 2352 (2014) (equating the "shadow credit and debit records" limitations recited in the

asserted claims to "account ledgers" and equating the "exchange institutions" in the claims to

"banks").

  Here, as Apple and Microsoft Defendants explain in their motion, "stripped of

its . . . technical jargon," the asserted claims' purpose is plainly directed to the abstract idea of

organizing information chronologically on a computer.  *See Money Suite*, 2015 WL 436160, at

*3.  Indeed, the preamble of the asserted claims so states:  "A method *which organizes* each data

unit received by or generated by a computer system . . . ."  '227 Patent, 16:9-10 (emphasis

supplied).  Mirror Worlds' predecessor confirmed this, during the first Mirror Worlds trial.

There, Mirror Worlds' own technical expert characterized the patents as "address[ing] the

problem of order – organizing and then finding your stuff, the files and the documents, on a

computer."  Transcript at 73:15-19, *Mirror Worlds Inc. v. Apple Inc.*, No. 6:08-cv-88 (E.D. Tex.

Sept. 28, 2010) (D.I. 419) (Ex. 3) (*Mirror Worlds I*) ("Transcript III").  The limitations of the

asserted claims only further specify the *criterion* for organizing information – *i.e.*, in *time* order.[1] The use of time as an organizing principle for electronic recordkeeping is no less abstract an idea than the use of any other organizational principle, such as organizing information by "accounts," and therefore cannot render the claims patent-eligible.  *See, e.g.*, *Alice*, 134 S. Ct. at 2359 (holding claims ineligible because "[u]sing a computer to create and maintain 'shadow' accounts amounts to electronic recordkeeping — one of the most basic functions of a computer").

### 2.        The claims are abstract even under Mirror Worlds' characterization

Mirror Worlds argues that the claims are patent-eligible because they recite "streams," and that "streams" are a "novel" and concrete concept.  According to Mirror Worlds, "[p]roperly summarized, the claims are directed to using a persistent main stream and substream to organize data units on a computer."  Cross-Motion at 7.  But dressing up the idea of chronological organization, retrieval, and presentation using terms like "stream" and "substream" is not sufficient to transform the idea of chronological organization from the abstract to the concrete. *See Dietgoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 283 (S.D.N.Y. 2014) (rejecting plaintiff's attempt to "dress up the claims"); *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, No. 13-cv-00740, 2014 WL 1513273, at *2-3 (E.D. Va. Apr. 16, 2014) (holding that a claim that recited the use of a "data stream" was abstract and not patent eligible).

Moreover, Mirror Worlds cannot argue that the "stream" terms in its claims are concrete or technological because the Court has adopted Mirror Worlds' own agreed construction of "stream" to mean something *entirely abstract and non-technical*: "a time-ordered sequence" of "items of information that [are] of direct user interest" that "*functions as a diary* of a person or

---

[1]    Moreover, the limitations supplied by the Apple Asserted Claims (the use of perspective) do not alter the purpose to which the asserted claims are directed.  *See* Apple's Motion, at 11.  In its Cross-Motion, Mirror Worlds does not take issue with Apple's characterization of the limitations unique to the Apple Asserted Claims or Apple's conclusion that they are also directed to an abstract idea, except to reiterate its arguments regarding the Common Asserted Claims.  *See* Cross-Motion, at 17-18.

an entity's electronic life . . . ."  Memo. Op. & Order at 4, 7, *Mirror Worlds Techs., LLC v. Apple Inc.*, No. 13-cv-00419 (E.D. Tex. Jan. 14, 2015) (D.I. 266) (emphasis supplied).  As the parties agreed in this case, a "stream" is "a diary," and Mirror Worlds' predecessor conceded that a diary is an "idea."  During *Mirror Worlds I*, inventor David Gelertner testified at trial that all the jury needed to understand about his patents was the "simple concept" that his inventions involved "*the idea of* a diary, *the idea of* a lifestream mirroring a person's experience . . . ." Transcript at 127:5-6, *Mirror Worlds I* (Sept. 27, 2010) (D.I. 416) ("Transcript I") (Ex. 1) (emphases supplied).  As Mr. Gelertner put it, "[i]f I look in the *stream*, it's like looking at a diary, and I can . . . find my way around the *stream* the way I would find my way around a diary."  Transcript at 12:24-13:17, *Mirror Worlds I* (Sept. 27, 2010) (D.I.417) ("Transcript II") (Ex. 2) (emphases supplied).  In fact, Mr. Gelertner himself characterized his own patents as abstract:  "[T]he patent deals with several ideas. . . . It deals with the stream itself *in the abstract* no matter how you display it.  Then it . . . deals with a particular form of display."  *Id.* at 14:24-15:4 (emphasis supplied).[2]  Because the "stream" is nothing more than information ordered chronologically, Mr. Gelertner implicitly acknowledges that the '227 Patent "deals with [information ordered chronologically] no matter how you display it."  *See id.*  This is not an idea eligible for patent protection, and *Alice* confirms that the attempt to ground this abstract idea "on a computer system" cannot save the claim.  *Alice*, 134 S. Ct. at 2357-58 ("[m]ethod claims, which merely require generic computer implementation, fail to transform that abstract idea into a patent-eligible invention").

---

[2]  As Apple argued in its Motion, adding the limitation of displaying the stream using perspective also does not transform the abstract idea of chronological organization into a concrete one, nor does it add the requisite "inventive concept" under *Mayo* step two.  *See* Apple's Motion, at 11, 15; Part II.B.2, *infra*.

**3.    Mirror Worlds does not dispute that numerous courts have held that methods of organization are fundamental, abstract ideas**

Mirror Worlds cannot and does not take issue with any of the Federal Circuit or district court cases Apple cites as holding that methods for organizing information are abstract.  For example, Mirror Worlds does not address the Federal Circuit's opinion in *Content Extraction*, where the Federal Circuit held that "the claims of the asserted patent are directed to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" because those concepts are "undisputedly well-known." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).  Nor does Mirror Worlds address the Federal Circuit's holding in *Digitech*, where the Federal Circuit held as abstract a claim that recited a process for "taking two data sets," generated by "taking existing information . . . and organizing this information into a new form," and combining them into a single data set.  *Digitech Image Techs., LLC v. Elects. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014).  Further, Mirror Worlds ignores Apple's reliance on *Enfish*, where the court in the Central District of California held that "[i]n essence," claims that "capture[d] the concept of organizing information using tabular formats" were abstract.  *Enfish, LLC v. Microsoft Corp.*, No. 12-cv-07360, 2014 U.S. Dist. LEXIS 156760, at *19 (C.D. Cal. Nov. 3, 2014).

The *Enfish* case is particularly instructive.  There, like here, every claim had a "similar purpose:  storing, organizing, and retrieving [information from] memory . . . ." *Id.*  In *Enfish*, the claims instructed that the information was stored in a logical table.  *Id.*  The court concluded that these claims were directed at an abstract idea, noting, "[t]ables are a basic and convenient way to organize information on paper; unsurprisingly, they are a basic and convenient way to organize information on computers."  *Id.* at 19-20.  Here, too, the asserted patents have simply adopted a

"basic and convenient way to organize information on paper" – that is, in chronological order – and, like in *Enfish*, it is "unsurprising" that chronological organization is also a "basic and convenient way to organize information on computers." *See id.*

Mirror Worlds fails to confront these directly relevant cases, let alone attempt to distinguish them. Instead, Mirror Worlds argues that the Supreme Court and Federal Circuit "have expressly considered and rejected" the idea that "methods of organizing human activity" are abstract. Cross-Motion at 16-17. But Mirror Worlds is wrong. The Federal Circuit has explained on several occasions that "organizing human activity" is indeed abstract, and that this is exactly what was at issue in *Alice*. *See Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) (non-precedential) (holding that a claim directed to "managing a game of Bingo . . . was similar to the kind of 'organizing human activity' at issue in *Alice* . . . ."); *see also Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (non-precedential) (holding that the "well-known concept of categorical data storage, *i.e.*, the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent eligible").

Numerous district courts have concluded the same, following the Federal Circuit's guidance. For example, in *Bascom Research*, the court summarized other cases pertaining to "computer-based patents involving the creation and organization of data that have been invalidated after *Alice*" and held that the claims at issue in that case were directed at the abstract idea of "establishing and using relationships between documents is a common, age-old practice" because other courts had found "similar 'commonplace and time-honored practices' to be abstract ideas." *Bascom Research, LLC v. LinkedIn, Inc.*, --- F. Supp. 3d ----, 2015 WL 149480, at *8, 9 (N.D. Cal. Jan. 5, 2015); *see also CertusView Techs., LLC v. S&N Locating Servs., LLC*,

No. 13-cv-346, 2015 WL 269427, at *15 (E.D. Va. Jan. 21, 2015) ("Indeed, the Supreme Court

has suggested that a 'method of organizing human activity' . . . can fall within the patent-

ineligible category of abstract ideas.") (citing *Alice*, 134 S. Ct. at 2357); *In re TLI*, 2015 WL

627858, *14 (holding that the "idea of taking, organizing, classifying, and storing photographs"

is abstract).

### 4.    Mirror Worlds' arguments regarding novelty are misplaced in *Mayo*'s step one

Mirror Worlds next argues that time-ordered organization was a novel approach that

solved problems suffered by conventional computer systems.  Cross-Motion, at 4, 8.  However,

inserting the consideration of "novelty" into the first step of the *Mayo* test runs afoul of Supreme

Court precedent in *Diamond v. Diehr*.  *See In re TLI*, 2015 WL 627858, at *9 (citing *Diehr*, 450

U.S. 175, 190); *Enfish,* 2014 U.S. Dist. LEXIS, at *13 (citing *Diehr*, 450 U.S. at 207).  Here, just

as in *In Re TLI*, Mirror Worlds' "focus on novelty is misplaced; it conflates whether a patent is

directed to eligible subject matter under § 101 with whether a patent meets § 102's novelty

requirement.  Indeed, the Supreme Court has unequivocally stated that the two inquiries are

separate and distinct . . . ."  2015 WL 627858, at *9; *see also Open Text S.A. v. Box, Inc.*, --- F.

Supp. 3d ----, 2015 WL 269036, at *3 (N.D. Cal. Jan. 20, 2015) (even an "idea which was new at

the time of invention" can "still [be] an abstract idea, and therefore meet[] the first part of the

*Mayo / Alice* test").  Mirror Worlds does not appear to dispute this statement of the law, but

nevertheless repeatedly falls back on an insistence that its claims are not directed to an abstract

idea because they are *novel*.  *See* Cross-Motion, at 4, 8.  This argument should be rejected

because it is incorrect as a matter of law.

**5.      Mirror Worlds is wrong to argue that the asserted claims cannot be performed without a computer**

In an attempt to rebut Microsoft Defendants and Apple's argument that the asserted claims could be performed by humans using pen and paper, and are therefore abstract, Mirror Worlds argues that the asserted claims require a computer to be performed.[3]  Cross-Motion, at 12-16.  This argument does not help Mirror Worlds.  The claims in *Alice* also required a computer, but were found to be abstract nonetheless.  *See* 134 S.Ct. at 2358; *see also, e.g., Content Extraction*, 776 F.3d at 1347.

**6.      Apple and Microsoft Defendants' court docketing analogy is sound**

Mirror Worlds also takes issue with Apple and Microsoft Defendants' docketing analogy (Microsoft Defendants' Motion, at 12-15; Apple's Motion, at 12-13), arguing that Defendants' analogy does not demonstrate that the asserted claims are abstract.  Mirror Worlds makes several points in support of this argument, each of which is meritless, as described below.

**a.      A court docket is a "stream"**

Mirror Worlds argues that a court docket is not a "stream" because it does not relate to the present or future, as is required by the parties' agreed construction, and instead "relates only to the past."  Cross-Motion, at 6.  This is incorrect, as Microsoft Defendants (and Apple, by incorporation) explained in their motion.  Microsoft Defendants' Motion, at 12-15.  The court docket does, in fact, relate to the present when a party files a new document, and it relates to the future when the docket includes, for example, scheduling orders for future filings.  *See id.* at 13.  Mirror Worlds' predecessor confirmed during *Mirror Worlds I* that this is just the kind of

---

[3]  As an example of why the claims require a computer, Mirror Worlds argues that the asserted claims require the "same" data unit – the same stored information that is of interest to the user – to be "simultaneously in the main stream and the relevant substreams," and that this means the data unit cannot be copied.  Cross-Motion, at 15.  Mirror Worlds' argument is not supported by the asserted claim language or by any of the Court's constructions.  Nothing in the asserted claims speaks to any requirement that the same data unit be "simultaneously" in the main stream and in the substream.  Even if that were a requirement, there is nothing in the claims that precludes the data unit in the substream from being a copy of the data unit in the main stream.

activity that *does* qualify as pertaining to the present and future portions of the claimed "stream."

Mirror Worlds' technical expert testified:  "[S]omething that would be in the present might be a

letter I'm writing now.  And something in the future portion [of the stream] could be something

like a to-do item I put in my calendar for the future."  Ex. 3 (Transcript III), at 79:20-80:2; *see*

*also* Ex. 2 (Transcript II), at 14:11-12 (inventor testifying that an "appointment that's for next

Wednesday" relates to the future portion of the stream).  Therefore, Defendants' court docket

analogy is sound with respect to the "streams" limitations of the asserted claims.

### b.      A court docket is a dynamically updated

Mirror Worlds argues that a court docket is not a "persistent" stream because it is not

dynamically updated.  Cross-Motion, at 6.  Again, this is incorrect.  As explained in Microsoft

Defendants' Motion, the court docket is dynamically updated as documents are filed, and

therefore the docket qualifies as a "persistent stream."  Indeed, Mirror Worlds' technical expert

testified during *Mirror Worlds I* that the claimed persistence only requires that "things keep

getting added to it dynamically as things come along."  Ex. 3(Transcript III), at 80:3-8.

Accordingly, the court docket analogy is apt with respect to the asserted claims' recitation of

"persistence."

Regardless, other courts have held the concept of dynamically updating a collection of

information is abstract and not patent-eligible.  *See e.g., Data Distrib. Techs., LLC v. Brer Affils.,*

*Inc.*, No. 12-4878, 2014 U.S. Dist. LEXIS 115543, at *30 (D.N.J. Aug. 19, 2014) (holding that

patent directed to "maintaining a database and updating users about new information" was

"undeniably abstract"); *Clear w. Computers, LLC v. Altec Indust., Inc.*, No. 14-cv-79, 2015 WL

993392, at *4 (E.D. Tex. Mar. 3, 2015) (holding that patent claiming "dynamically building a

template" is abstract and does not provide the requisite "inventive concept" to be patentable

because "[a] general purpose computer with minimal programming can perform functions

'automatically' and 'dynamically,' and implementation of an abstract idea on such a computer is not an inventive concept"); *Cogent Med., Inc. v. John Wiley & Sons, Inc.*, No. C-13-4479, 2014 U.S. Dist. LEXIS 139856, at *11-13 (N.D. Cal. Sept. 30, 2014) (holding that a patent directed to updating selections of electronically stored articles based on user interest is abstract and not patent-eligible).

### c.      A court docket is a "main stream"

Mirror Worlds argues conclusorily that a court docket is not a "main stream," but does not explain why it should not qualify as such. *See* Cross-Motion, at 7.  In fact, as explained in Microsoft Defendants' Motion (at 12), the court docket does include every document that is filed in ("received by") and every order that is issued in ("generated by") a particular litigation. Therefore, the court docket analogy is apt with respect to the "main stream" limitations of the asserted claims.

### d.      A court docket can contain a "substream"

Mirror Worlds also argues without explanation that the court docket does not have a "substream."[4] *See* Cross-Motion, at 7.  Mirror Worlds again is incorrect.  As Microsoft Defendants explained in their Motion (at 12), documents from the court docket can be filtered, by hand or electronically, according to subject (e.g., motions for summary judgment) or in other ways.  Mirror Worlds' technical expert confirmed during *Mirror Worlds I* that the '227 Patent uses the term "substream" to refer to "a search or a filter where only the parts that are related to that word or that person come out as the search results."  Ex. 3(Transcript III), at 80:18-21. Thus, because the court docket can be searched or filtered, the court docket analogy is apt for the claimed recitation of "substreams."

---

[4]  *See* n.3, *supra*.

Regardless, other courts have held that filtering search results is an abstract concept.  *See, e.g., Cogent Med.*, 2014 U.S. Dist. LEXIS 139856, at *11-13 (holding that a patent directed to cataloging a library of information and "set[ting] aside particular information that may be especially relevant based on the particular user" is abstract and not patent-eligible).

*   *   *

Accordingly, because Mirror Worlds' arguments that a computer is required for the performance of the asserted claims is beside the point, Microsoft Defendants and Apple's court docketing analogy is sound, and correctly illustrates the abstract nature of the asserted claims.

## B.   The Asserted Claims Do Not Contain Any "Inventive Concept"

As discussed in Apple's Motion, when making the determination as to whether the asserted claims add an "inventive concept" or something that amounts to "significantly more" than a patent on an ineligible concept in *Mayo* step two, the court *must* disregard "well-understood, routine, conventional activity."  *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1299 (2012) .  "A conventional element may be one that is ubiquitous in the field, insignificant or obvious."  *Cal. Tech.*, --- F.3d ----, 2014 WL 5661290, at *14 (citing *Mayo*, 132 S. Ct. at 1298).  Thus, while *Mayo* step two may involve a consideration of the state of the art as evidence of what was "conventional" at the time, novelty alone is not sufficient to render claims directed to an abstract idea patentable without the addition to the claims of some "inventive concept," or something "significantly more."  Indeed, like the court determined in *Cogent Medicine*, "[i]t is important to distinguish novelty and obviousness from the 'inventive feature' inquiry required by the Supreme Court in *Alice*."  2014 U.S. Dist. LEXIS 139856, at *13 n.3.  According to that court, the "inventive feature question concerns whether the patent adds something to the abstract idea that is 'integral to the claimed invention . . . .'"  *Id.*  In other words, the "'inventive feature' is better understood as referring to the abstract idea doctrine's

prohibition on patenting fundamental truths, whether or not the fundamental truth was recently discovered." *See id.* (citing *Alice,* 134 S.Ct. at 2357). This is exactly what the claims do here: attempt to patent the fundamental idea of organizing information chronologically and displaying it using perspective on a computer. Thus, just like the claims in *Cogent Medicine*, "even if [Mirror Worlds] is right that no previous software system implemented a similar feature," that, in and of itself, is not sufficient to make it patent-eligible. *See id.* at *12-13 (holding that claim directed to the "abstract idea of maintaining and searching a library of information" and "set[ting] aside particular information that might be relevant to a user," even with an "enhanced interface" that plaintiff alleged had not been implemented before, was ineligible for patenting).

### 1.     The named inventor admits that time-based organization is well-understood and conventional

Here, Mirror Worlds does not dispute that organizing information in chronological order was a well-known, well-understood, and indeed fundamental practice. Significantly, in *Mirror Worlds I*, Mr. Gelertner, the named inventor, testified that he *purposefully* adopted a "natural, human idea" for how to organize and present information of interest to the user *based on how life itself was organized*: time. Ex. 1(Transcript I), at 127:18-20. Dr. Gelertner testified:

> The idea of a diary, the idea of a lifestream mirroring a person's experience reflects the fact that – and this is true for all of us. We experience life day by day, hour by hour. That's the way life is arranged. We flow through time. *Life is organized in time.* Everybody knows what a diary is. Everybody knows what a journal is. . . . I wanted [the] software to be simple, intuitive, natural. I wanted you to be able to understand in 30 seconds how it worked. I wanted it to use natural human ideas rather than esoteric, technical ideas.

*Id.* at 127:5-20 (emphasis supplied).

Mirror Worlds insists in its Cross-Motion that Mr. Gelertner's adoption of a "stream" metaphor for his time-based organizational scheme supplies the necessary inventive concept to render even the abstract asserted claims patentable. Mirror Worlds is wrong, because as the

parties agreed during claim construction and Mr. Gelertner has confirmed – a "stream" is nothing more than a "diary of your life in documents, in terms of a medical bill and a dentist appointment and your son's report card and your son's something else and a photo, something else, a diary of your life." Ex. 2(Transcript II), at 10:10-15.  A diary could not be more "well understood" – indeed, that is why Mr. Gelertner testified he chose that method of organization – and thus the "stream-based approach" is not sufficient to supply the necessary "inventive concept" to the asserted claims.  Indeed, Mirror Worlds does not claim that computers *could not* have organized information according to time before its patent, just that no one *chose* to organize their electronic information by time.

### 2. Presenting the "streams" using "perspective" cannot supply the necessary inventive concept

Mirror Worlds argues that the limitations in the Apple Asserted Claims, which require displaying the documents "from the streams as stacks of partly overlapping documents using perspective" (Cross-Motion, at 20), supply the necessary inventive concept to render the Apple Asserted Claims patent-eligible because that type of display was "unconventional."  Mirror Worlds is wrong.  As Apple argued in its Motion, "the use of perspective has been known and widely applied since the 15th Century."  Apple's Motion, at 15.  Mirror Worlds does not dispute this, and Mirror Worlds does not (because it cannot) claim that it invented the idea of presenting "overlapping documents using perspective" on a computer.  Instead, Mirror Worlds argues that this particular display was not "conventional."  *See* Cross-Motion, at 20, 23.  Again, Mirror Worlds is incorrect.  As Apple explained in its Motion, the patentee made statements in the

prosecution history that evidenced that this type of display was "well understood" at the time.[5] Apple's Motion, at 11, 15.

Regardless, courts have found patents that generically claim particular ways of displaying electronic information cannot supply the necessary "inventive concept" to render otherwise abstract claims patent-eligible.  For example, one court found that "displaying . . . results on a visual display" was a "conventional computer task[]," despite plaintiff's argument that its claimed "display functionality" was "highly particularized," because the "claimed process could 'be carried out in existing computers long in use, no new machinery being necessary.'"  *Dietgoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 289 (S.D.N.Y. 2014) (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)) (holding patents claiming "Picture Menus, which display on a User Interface meals comprised from food objects from the Database that the user can mix and match to meet customized eating goals" abstract and patent-ineligible).  Just like the claimed user interface at issue in *Dietgoal*, the claimed process of presenting representations of the documents in the stream to the user in a stack of overlapping rectangles using perspective *could have* been carried out in existing computers (*see id.*), and at no point does Mirror Worlds contend otherwise.  Indeed, neither the '227 Patent generally, nor the Apple Asserted Claims more specifically, teach or claim *how* to render that particular "stacked" perspective.  The patent simply assumes that this is *possible* using existing, conventional, computer technology. Therefore, this element does not supply the required "inventive concept" and the claims are not patent-eligible.

---

[5]  Mirror Worlds argues that Apple should not be permitted to rely upon these statements.  *See* Cross-Motion, at 23.  But Mirror Worlds relies on the prosecution history for this exact purpose, arguing that the limitations disclosed in the asserted claims were not "well known" because the U.S. Patent & Trademark Office found the claims to be valid over the prior art.  *See id.* at 24.  Mirror Worlds cannot have it both ways.

**C.     Mirror Worlds' Reliance on *DDR Holdings* Is Misplaced**

The asserted claims at issue here are sharply distinguishable from those at issue in *DRR Holdings*, as Apple explained in its Motion.  Apple's Motion, at 15-18.  In *DDR Holdings*, the Federal Circuit concluded that the claims were not directed to an abstract idea because they were attempting to solve a problem unique to the Internet.  *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257-58 (Fed. Cir. 2014).  The claimed solution was therefore "necessarily rooted in computer technology in order to *overcome a problem specifically arising in the realm of computer networks*."  *Id.* at 1257 (emphasis supplied).  In *DDR Holdings*, the Internet had "introduce[d] a problem that does not arise in the 'brick and mortar' [store] context," and the patent was focused on solving that problem.  *Id.* at 1258.  Here, by contrast, the problem to be solved is *neither* unique to the Internet, *nor* is it unique to general-purpose computers (as are used in the purported invention).[6]  Rather, humans have grappled with alternative organizational schemes at least since the invention of writing.  Each of the myriad possible approaches to organization has its advantages and disadvantages.  File-cabinet and desktop-based approaches to organization may have disadvantages when used on a computer (*see* '227 Patent, at 1:32-59), but those disadvantages are not unique to the computer context.  Thus, the Federal Circuit's decision in *DDR Holdings* does not save the asserted claims.

Other courts that have considered *DDR Holdings* in the context of claims similar to those here – *i.e.*, directed to organizing information on a computer in a purportedly new way – have concluded that the claims are not patent-eligible and that *DDR Holdings* does not apply.  For example, in *In re TLI*, the court concluded that the claims at issue were "sharply distinguishable" from those at issue in *DDR Holdings* and determined that a computerized system in which

---

[6]  *See* Apple's Motion, at 14.

photographs were classified by time and then organized into a directory accordingly was *not* unique to computers, was abstract, and was not eligible for patenting.  *See* --- F. Supp. 3d ----, 2015 WL 627858, at \*13-14.  The court explained that an asserted claim "does not attempt to solve a problem unique to computers or the Internet; [instead] the challenge of taking, classifying, organizing, and storing photographs is a longstanding practice that predates computers."  *Id.* at \*14.  Here, just as in *In re TLI*, and unlike the facts in *DDR Holdings*, the challenges of organizing information predates computers, and choosing to organize that information in time-order and display it using perspective is abstract, and not eligible for patenting.

Even if choosing to implement a time-order-based organizational scheme on a computer were not abstract, as Mirror Worlds suggests (incorrectly), that does not, in and of itself, save the patent from ineligibility under § 101.  Indeed, just as the Federal Circuit cautioned in *DDR Holdings*, citing its decision in *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014), even "claims purporting to address Internet-centric challenges" may not always be eligible for patenting.  *DDR Holdings*, 773 F.3d at 1258.  Just as in *Ultramercial*, the claims here recite nothing more than an abstraction with "no particular concrete or tangible form."  772 F.3d at 715; *see also* Order at 15, *Intellectual Ventures I LLC v. Motorola Mobility LLC*, No. 11-908 (D. Del. Feb. 24, 2015) (D.I. 379) (Ex. 2) (citing *Ultramercial*) (finding that although the claims at issue, which were directed at distributing software updates to a computer, did "not recite a mathematical algorithm or a fundamental economic or longstanding commercial practice, they nonetheless recite nothing more than an abstraction with 'no particular concrete or tangible form'" and so were not patentable).

### D.      The Machine-or-Transformation Test Does Not Help Mirror Worlds Here

The role of the machine-or-transformation test after *Alice* is "at best, unclear," though it remains an "important and useful clue."  *In re TLI*, 2015 WL 627858, at *15 (quoting *Bilski v. Kappos*, 561 U.S. 593, 603 (2010)).  Regardless, the machine-or-transformation test does not support Mirror Worlds' arguments that the asserted claims are patent-eligible.  The Federal Circuit has stressed that "[m]erely using a computer to perform more efficiently what could otherwise be accomplished manually does not confer patent-eligibility."  *See buySAFE, Inc. v. Google, Inc.*, 964 F. Supp. 2d 331, 336 (D. Del. 2013), *aff'd,* 765 F.3d 1350 (Fed. Cir. 2014); *accord Alice*, 134 S. Ct. at 2358.  Moreover, the "mere manipulation or reorganization of data" cannot satisfy the transformation prong of the test.  *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, No. 13-cv-740, 2014 WL 1513273, at *3 (E.D. Va. Apr. 16, 2014).  Mirror Worlds cites the Federal Circuit's discussion of *In re Abele*, 684 F.2d 902 (C.C.P.A. 1982), in *In re Bilski*, 545 F.3d 943, 963 (Fed. Cir. 2008), as support for Mirror Worlds' argument that the Apple Asserted Claims' recitation of the display of the data units using perspective satisfies the "transformation" portion of this test.  Cross-Motion, at 25-26.  *In re Abele* is inapposite, and so the Federal Circuit's discussion of that case in *In re Bilski* does not help Mirror Worlds here.  In *In re Abele*, the claims were directed to a particular method for improving CAT scans of human bodies.  684 F.2d at 908-09.  The Federal Circuit concluded that, in that case, "the transformation of that raw data" – the "X-ray attenuation data" of the claims – "into a particular visual depiction of a physical object on a display," that is, into a depiction of the human's bones and tissue on the CAT scan display, was sufficient to render a patent whose claims were otherwise generically directed to an algorithm eligible for patenting.  *See Bilski*, 545 F.3d at 962-963.  Accordingly, what the Federal Circuit was characterizing as "transformation" was in fact the transformation of real-world data derived from X-rays into a visual depiction of a human's bones and tissue.  *See*

*id.*  This is sharply distinguishable from the claims at issue here, so neither *Bilski* nor *Abele* helps

Mirror Worlds.  Here, and unlike *In re Abele*, the Apple Asserted Claims do not recite a specific

way to take information about real-world, tangible, physical realities (e.g., a broken leg bone)

and build or "transform" that information into an accurate digital representation of that broken

bone on a computer's screen.  The Apple Asserted Claims only require the already electronically

stored documents to be displayed according to a particular aesthetic:  that is, using "perspective"

so that the documents in the "stream" appear to be "stacked."  That is significantly different than

the claims at issue in *In re Abele*.  Thus, the machine-or-transformation test does not dictate a

different result than the analysis of the asserted claims under *Alice*, *DDR Holdings*, and their

progeny.

### III.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court grant Apple's

Motion, deny Mirror Worlds' Cross-Motion, and declare the asserted claims of the '227 Patent

invalid as a matter of law under § 101.

DATE:  March 19, 2015

Respectfully submitted,

*/s/ Stuart M. Rosenberg*
William C. Rooklidge,
CA State Bar No. 134483
WRooklidge@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA  92612
Telephone:  949.451.3800
Facsimile:  949.451.4220

Stuart M. Rosenberg
CA State Bar No. 239926
srosenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211

Telephone:  650.849.5389
Facsimile:  650.849.5089

Brooke Myers Wallace
CA State Bar No. 259169
bwallace@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7074
Facsimile: 213.229.6074


*Attorneys For Defendant Apple Inc. and, as to
Mirror Worlds' infringement claims related to
Apple's OS X operating system, Best Buy Stores, LP
and BestBuy.com, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule CV-5(a)(3) this 19th day of March, 2015.


<u>/s/ Stuart M. Rosenberg</u>
STUART M. ROSENBERG