**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| MIRROR WORLDS TECHNOLOGIES, LLC,<br>Plaintiff,<br><br>v.<br><br>APPLE INC., ET AL,<br>Defendants. | CIVIL ACTION NO. 6:13-cv-419<br><br>**JURY TRIAL DEMANDED** |
| MIRROR WORLDS TECHNOLOGIES, LLC,<br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION, ET AL,<br>Defendants. | CIVIL ACTION NO. 6:13-cv-941<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS MICROSOFT CORPORATION, DELL INC., HEWLETT-PACKARD CO., LENOVO (UNITED STATES) INC., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC'S CONSOLIDATED OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

**AND**

**REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................1

II.    ARGUMENT ......................................................................................................2

    A.    The Asserted Claims Are Directed To An Abstract Idea ..............................2

        1.    The Relevant Inquiry Is Whether The Asserted Method Claims Are Patentable—Not The Preferred Embodiment Or The Unasserted (And Invalid) System Claims. .................................................................4

        2.    Mirror Worlds Cannot Escape The Abstract Idea Covered By The Claims ................................................................................................6

        3.    The Claims Cover An Abstract Idea That Can Be Performed By A Generic Computer And Humans ....................................................7

    B.    The Asserted Claims Do Not Contain An "Inventive Concept" That Transforms The Abstract Organizational Idea Into Patentable Subject Matter ....................................................................................................8

        1.    Claims Covering An Abstract Idea Must Possess An Inventive Concept ................................................................................................8

        2.    The Asserted Claim Limitations Include No Inventive Concept ....................9

    C.    *DDR Holdings* Does Not Apply To Claims At Issue Here ......................................10

        1.    The Asserted Claims Are Not Directed To A Problem That Arises Exclusively In The Realm Of Computers ....................................................11

        2.    The Few Cases Following *DDR Holdings* Underscore That The Claims Must Be Rooted In Computer Technology, Which They Are Not Here ................................................................................................14

III.   CONCLUSION ................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) ..............................................................2, 5, 6, 8, 9, 12, 13

*CertusView Techs., LLC v. S & N Locating Servs., LLC,*
    No. 2:13-cv-346, 2015 WL 269427 (E.D. Va. Jan. 21, 2015) ...............................14

*Clear with Computers, LLC v. Altec Industries, Inc.,*
    No. 6:14-cv-79, Dkt. No. 59 (E.D. Tex. Mar. 3, 2015).........................3, 10, 13, 14

*DDR Holdings, LLC v. Hotels.com L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) ...............................................................10, 11, 14

*East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.,*
    No. 12-cv-517, 2015 WL 226084 (D.N.H. Jan. 15, 2015)...............................13, 14

*Enfish, LLC v. Microsoft Corp.,*
    No. 2:12-cv-7360, 2014 WL 5661456 (C.D. Cal. Nov. 3, 2014)............................2

*Essociate, Inc. v. Clickbooth.com, LLC,*
    No. 8:13-cv-1886, Dkt. No. 51 (C.D. Cal. Feb. 11, 2015)...................................14

*In re TLI Communs. LLC Patent Litig.,*
    No. 1:14-md-2534, 2015 WL 627858 (E.D. Va. Feb. 6, 2015) .......................7, 14

*Intellectual Ventures I, LLC v. Mfrs. and Traders Trust Co.,*
    No. 13-1274, 2014 WL 7215193 (D. Del. Dec. 18, 2014)...................................14

*Intellectual Ventures I, LLC v. Motorola Mobility LLC.,*
    No. 11-908, 2015 WL 846532 (D. Del. Feb. 24, 2015) .......................................15

*IpLearn, LLC v. K12 Inc.,*
    No. 11-1026, 2014 WL 7206380 (D. Del. Dec. 17, 2014)...................................14

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.,*
    No. 12-1138, 2014 WL 7149400 (D. Del. Dec. 15, 2014)...................................14

*KomBea Corp. v. Noguar, L.C.,*
    No. 2:13-cv-957, 2014 WL 7359049 (D. Utah, Dec. 23, 2014) ..........................14

*Mayo Collaborative Servs. v. Prometheus Labs Inc.,*
    132 S. Ct. 1289 (2012) ....................................................................................7, 8, 9

*Mirror Worlds, LLC v. Apple, Inc.,*
    No 6:08-cv-88, Dkt. No. 178 (E.D. Tex. Feb. 16, 2010) ...............................5, 8, 10

*Mirror Worlds, LLC v. Apple, Inc.,*
    No 6:08-cv-88, Dkt. No. 302 (E.D. Tex. Aug. 11, 2010) ...............................5, 8, 10

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Money Suite Co. v. 21st Century Ins. and Fin. Servs., Inc.*,
    No. 13-984, 2015 WL 436160 (D. Del. Jan. 27, 2015).........................................................14

*Mortgage Grader, Inc. v. Costco Wholesale Corp.*,
    No. 13-43, 2015 WL 778125 (C.D. Cal. Jan. 12, 2015) ......................................................14

*MyMedicalRecords, Inc. v. Walgreen Co.*,
    No. 2:13-cv-631, 2014 WL 7339201 (C.D. Cal. Dec. 23, 2014)..........................................14

*Smartflash LLC v. Apple Inc.*,
    No. 6:13-cv-447, 2015 WL 661174 (E.D. Tex. Feb. 13, 2015)............................................15

*Trading Techs. Int'l, Inc. v. CQG, Inc*
    No. 1:05-cv-4811, 2015 WL 774655 (N.D. Ill. Feb. 24, 2015) ...........................................15

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)...............................................................................................8

*Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA, LLC*,
    No. 1:13-cv-441, 2015 WL 394273 (N.D. Ill. Jan. 29, 2015)..............................................14

## I.  INTRODUCTION

Mirror Worlds' Opposition and Cross-Motion makes two points clear:  First, this issue is ripe for adjudication, and, second, no matter how one describes the asserted claims, those claims are directed to an unpatentable, abstract idea.  Mirror Worlds' efforts to hide the claimed, abstract idea by referring to the purported problems the inventors attempted to solve, to the unasserted "system" claims—which this Court previously held invalid— and to the concept of "persistent streams" all fail.  Instead, the Court must focus on the claims at issue and what those claims as a whole require, which here is nothing more than the application of the abstract idea of chronologically organizing data on a computer system using conventional, well-understood techniques.  That the chronological organization is "persistent," as Mirror Worlds emphasizes, does not diminish the abstract character of the idea claimed.  Indeed, "persistence" merely means that the chronologically organized "streams" are updated as new documents are added, just as the "diary of a person" is regularly updated.  Neither do the claims add any "inventive concept" to the abstract idea; rather, by illustrating these concepts through well-understood analogies in the real world, the patent makes clear that these concepts are not unique to computers.  *See, e.g.,* '227 patent, 4:27-30 ("*[L]ike a diary, a stream records evolving* work, correspondence and transactions because historical context can be crucial in an organizational setting.")  (emphasis added).

Contrary to Mirror Worlds' assertions, moreover, the Microsoft Defendants' Motion is not premised on an improper summary of the claims.  Instead, the opening Motion addresses each asserted claim limitation and demonstrates that the claimed methods encompass the abstract idea of chronologically organizing data on a computer, and those methods do so using only conventional computing techniques.  Finally, because this organizational problem does *not* "specifically aris[e] in the realm of computer[s]" nor is the claimed solution "necessarily rooted in computer technology," the Federal Circuit's limited holding in *DDR Holdings* bears no relevance to the claims at issue and

this Motion.

Thus, for all the reasons explained in the Microsoft Defendants' Motion and below, the asserted claims fail to satisfy § 101 and are invalid.

## II. ARGUMENT

### A.      The Asserted Claims Are Directed To An Abstract Idea

Mirror Worlds' Cross-Motion does not contest that the asserted claims cover methods of organizing information by time.  Indeed, Mirror Worlds cannot, given that the Field of the Invention describes the "present invention" as relating to "an operating system in which documents are stored in a chronologically ordered 'stream'." '227 patent at 1:4-6.  The Detailed Description of the Preferred Embodiments further emphasizes this method of time-ordered organization:  "A 'stream' according to the present invention is a time-ordered sequence of documents that functions as a diary of a person or an entity's electronic life." *Id.* at 4:6-8.  And the preamble of the only asserted independent claim further reinforces this method of organization:  "A method which organizes each data unit [according to the Court, "an item of information that is of direct user interest in the user's timeline"[1]] received by or generated by a computer system, comprising the steps of . . ." '227 patent, cl. 13.  There can be no dispute, therefore, that all of the asserted claims are directed to a "method of organizing human activity" on a computer, which the *Alice* decision explains does not, without more, constitute patentable subject matter.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347, 2356-57 (2014); *see also Enfish, LLC v. Microsoft Corp.*, No. 2:12-cv-7360, 2014 WL 5661456, at *6-7 (C.D. Cal. Nov. 3, 2014) (holding claims for "storing, organizing, and retrieving memory in a logical table" "[i]n essence…capture the *concept* of organizing information using tabular formats" and "preempt a basic way of organizing information"; therefore, they are unpatentable.) (emphasis in original).

---

[1]  *See* Dkt. 266 at 14.

Apparently, recognizing this problem, Mirror Worlds tries to argue that the claims are directed to more than an abstract idea, criticizing the Microsoft Defendants for what it says was an oversimplification of the claims.  This is a straw man.  The opening Motion addresses each of the asserted claims on a limitation-by-limitation basis.  *See* Motion at 3-4, 12-18.

Regardless, none of the claim terms that Mirror Worlds points to now add anything of substance to the basic idea of organizing information chronologically.  Throughout its brief, Mirror Worlds focuses heavily on the requirement that the streams be "persistent."  *See, e.g.,* Cross-Motion at 5-7, 11, 14.  In this context, "persistent" simply means that the streams—the chronologically organized data—are "dynamically updated" as new data arrives.[2]  This Court, however, in *Clear with Computers, LLC v. Altec Industries, Inc.*, rejected nearly the same argument, holding that the terms "dynamically building a template" and "active database" are legally insufficient to confer patent eligibility because general purpose computers perform these updating functions with minimal programming.  No. 6:14-cv-79, Dkt. No. 59, at pp. 8-9 (E.D. Tex. Mar. 3, 2015) ("*CWC*") (Ex. 1).

Also contrary to Mirror Worlds' arguments, the claim term "stream" does not demonstrate that the asserted claims are directed anything more than an abstract idea.  *See* Cross-Motion at 6, 11.  The Court has construed "stream" as "a time-ordered sequence of data units that functions as a diary of a person or an entity's electronic life" and "is designed to have three main portions: past, present, and future."  Dkt. 266 at 4.  The notion of keeping a written record, or a "diary" of a person's life, is an ancient idea that long predates computers.  Likewise, written day planners contain entries reflecting past and future meetings and also include notes reflecting present events; these day planners have long been used to organize information in chronological order.  Mirror Worlds tries to make much out of the idea of a "future" portion of the "diary," but all this means according to the

---

[2]  This Court construed "persistent streams" as "streams that are *dynamically* updated." Dkt. 266 at 15 (emphasis added).

patent is that "the stream contains documents allotted to future times and events, such as, reminders, calendar items, and to-do lists." '227 patent at 4:19-21.  Paper diaries and court dockets (*e.g.*, a pre-trial order setting out procedures and deadlines for an upcoming trial) do the just the same; there is nothing about this concept that is unique to computers.

Nor do the requirements that the main stream be inclusive of every data unit ("an item of information that is of direct user interest in the user's timeline") and that there be at least one substream somehow save Mirror Worlds' claims.  *See* Cross-Motion at 7, 11.  The entries in a person's diary are of direct interest to them and a diary that is diligently maintained and regularly updated might indeed contain all such items of information in that person's life, including both past and present events as well as their future plans and aspirations.  And, as explained in the opening Motion, a "substream" is merely a subset of some of the items of information in the "main stream" that may be generated in response to a request.  Motion at 3, 12.  Outside of the computing context, this can be accomplished using a copier to copy documents from the main chronological sequence and providing instructions to update that subset if any new documents become available (*e.g.*, in the docket analogy, if the judge requests a binder of the parties' briefing and asks that the binder be updated if the parties file additional papers on the same issue).  All of this is conventional and routine, and none of it makes the claimed methods of organizing information in chronological streams any less abstract.

> 1.    **The Relevant Inquiry Is Whether The Asserted Method Claims Are Patentable—Not The Preferred Embodiment Or The Unasserted (And Invalid) System Claims.**

Mirror Worlds repeatedly asserts that "the '227 claims are directed at systems and methods." *See, e.g.,* Cross-Motion at 3-5.  That is wrong.  Mirror Worlds asserts no *system* claims in this case.  Furthermore, this Court held that all of the previously-asserted system claims in the '227 patent were invalid because the specification fails to disclose any structure, *i.e.*, particular computer

algorithms or computing techniques, corresponding to the claimed functions for each of the components recited in those claims.  *See* Ex. 2, *Mirror Worlds, LLC v. Apple, Inc.*, No 6:08-cv-88 ("*Apple I*"), Dkt. No. 178 (E.D. Tex. Feb. 16, 2010) at 1-2; Ex. 3, *Apple I*, Dkt. No. 302 (E.D. Tex. Aug. 11, 2010) at 8-9.  Mirror Worlds' reference to the system claims, thus, has implications here. First, those *invalid* system claims cannot serve to inject some non-abstract concept into the remaining method claims.  Furthermore, and as explained later, this Court's finding that the specification lacks any corresponding structure for the generic functions of generating, time-stamping, ordering, and updating the claimed "streams" forecloses a finding that the '227 patent discloses any specific, non-conventional programming necessary to satisfy the Supreme Court's "inventive concept" requirement.

Relatedly, because a § 101 analysis focuses *only* on the *asserted claims*, any statements in the '227 patent regarding supposed problems the named inventor sought to solve are immaterial unless they somehow are revealing of characteristics of the asserted claims (and that is not the case here).  *See Alice*, 134 S. Ct. at 2355 (*Mayo* step one involves "determin[ing] whether the *claims at issue* are directed to [a] patent-ineligible concept[]") (emphasis added); *Cf* Cross-Motion at 4-12 (repeatedly pointing to supposed "disadvantages" in the prior art untied to the claims).  Thus, Mirror Worlds' arguments regarding the alleged "disadvantages" of "conventional operating systems," such as needing to use file names, folders, directories, subdirectories, hierarchies, or a "desktop metaphor," are irrelevant, as here they shed no light on characteristics of the asserted claims.  The same also is true of the excerpt from the user interface of the preferred embodiment shown in Figure 4 of the '227 patent, which Mirror Worlds copies into its brief, because it has nothing to do with the claims asserted against the Microsoft Defendants.  *See* Cross-Motion at 6.  The claims contain no preclusions or limitations foreclosing these "conventional" features or requiring any particular interface from the specification, and, indeed, Mirror Worlds asserts its claims against software that

*requires* file names, folders, directories, subdirectories, and hierarchies, all while using the proverbial "desktop metaphor."[3]

Likewise, Mirror Worlds' asserts that the claims provide an "advantage" over "conventional systems" by allowing users to have the same electronic document "simultaneously available" in a main stream and all relevant substreams *without making an additional copy of the same. Id.* at 11-12, 15-16.  But again Mirror Worlds identifies no claim language that it believes requires this purported advantage.  The focus for § 101, however, must remain on whether the actual "*claims at issue* are directed to [a] patent-ineligible concept[]," not the purported problems solved, the specification, or unasserted, invalidated system claims.  *Alice*, 134 S. Ct. at 2355 (emphasis added).

## 2. Mirror Worlds Cannot Escape The Abstract Idea Covered By The Claims

Mirror Worlds argues that the asserted claims "are directed to using a persistent main stream and substreams to organize data units on a computer system."  Cross-Motion at 1.  This "summary" of the claims, Mirror Worlds asserts, does not reflect an abstract idea.  *Id.*  Mirror Worlds goes on to contend, relying on *Mayo,* that the first step in a § 101 analysis requires an accurate summary of the claims.  *Id.* at 2.  But *Mayo* says no such thing, nor have the Microsoft Defendants contended that the first step in a § 101 review requires summarizing the claims.  Instead, and just as the Microsoft Defendants have done, "all claim elements, both individually and in combination," must be considered.  *Alice,* 134 S. Ct. at 2355, n. 3.  And as discussed herein, that Mirror Worlds' claims in some instances use technical-sounding terminology, does not change the fact that they are directed to an abstract idea.  *See infra*, Section C.1; *Alice*, 134 S. Ct. at 2352, 2360; Ex. 1, *CWC* at 3-4, 8-9.

All told, Mirror Worlds' erroneous "summary" argument, which according to Mirror Worlds asks whether the summarized claimed concept constitutes something more than an abstract idea,

---

[3] Mirror Worlds accuses the Windows operating system of infringement, which requires that every document be identified by a file name, stored in a hierarchical directory structure, and accessed through the user's electronic desktop.

incorrectly conflates steps one and two of the *Mayo* analysis.  Cross-Motion at 7.  *Mayo* makes

clear, and *Alice* underscores, that the Court must *first* determine if the claims are directed to an

abstract idea; if so, *then* the Court must determine whether an "inventive concept" is present to

ensure that the claims amount to "significantly more" than an abstract idea.  *Mayo Collaborative*

*Servs. v. Prometheus Labs Inc.*, 132 S. Ct. 1289, 1294, 1296-97 (2012).  Mirror Worlds' conflation

of these two steps further illustrates the errors in its argument.

### 3.    The Claims Cover An Abstract Idea That Can Be Performed By A Generic Computer And Humans

As explained here, and in the Microsoft Defendants' Motion, organizing and updating a

chronologically-organized sequence of documents can be performed by a generic computer with

conventional programming and even by a human, further demonstrating that the claims are directed

to an unpatentable abstract idea.[4]  Motion at 11-15.

Mirror Worlds responds to this presentation in two ways:  First, by asserting that the

Microsoft Defendants' presentation is based on an inaccurate, "stripped down version of the claims"

and, second, by asserting that the claims' requirement for a "computer system" removes the claims

from the ability of a human.  Cross-Motion at 13-14.  Both responses fail.  Mirror Worlds' "stripped

down version" argument purposefully overlooks the three-page table appearing in the Microsoft

Defendants' Motion; that table covers *every* limitation of *every* asserted claim and demonstrates

how a human can perform each limitation.  Motion at 12-15.  As such, Mirror Worlds' simply

ignores what the Microsoft Defendants have presented.  Next, Mirror Worlds' reliance on

"computer system" falls equally flat.  The mere recitation of generic computer elements to

---

[4]  Although it is not the dispositive test, the fact that the claims here merely add generic, computer-based limitations to abstract actions that humans can perform either mentally or with a pen and paper further demonstrates that they are directed to an unpatentable abstract idea.  *See In re TLI Communs. LLC Patent Litig.*, No. 1:14-md-2534, 2015 WL 627858, at *10 (E.D. Va. Feb. 6, 2015) ("Although…not dispositive…the fact that human beings could execute the concept underlying the [asserted] patent independently of computers is further evidence that [it] is directed to an abstract idea."); *see also* Motion at 11-12.

implement a claim does not resurrect a claim covering an abstract idea.  Indeed, as *Alice* explains,

"merely requiring generic computer implementation fails to transform [an] abstract idea into a

patent-eligible invention."  *Alice,* 134 S. Ct. at 1352, 1357.  Moreover, this Court's prior holding

that the previously-asserted system claims are invalid because the specification lacks any algorithms

or specific programming designed to implement the computer system's chronological organization

underscores the generic nature of these claims and the absence of any inventive concept.  *See* Ex. 2,

*Apple I*, Dkt. No. 178 (E.D. Tex. Feb. 16, 2010) at 1-2; Ex. 3, *Apple I*, Dkt. No. 302 (E.D. Tex.

Aug. 11, 2010) at 8-9.

**B.      The Asserted Claims Do Not Contain An "Inventive Concept" That Transforms The Abstract Organizational Idea Into Patentable Subject Matter**

        **1.      Claims Covering An Abstract Idea Must Possess An Inventive Concept**

In an attempt to rewrite the standards set forward by the Supreme Court in *Mayo* and *Alice*,

Mirror Worlds cites to *Diamond v. Diehr*, a case from 1981, to argue that *Mayo* step two does not

involve any consideration of the state of the art.  Cross-Motion at 24-25.  But the Supreme Court

has expressly rejected Mirror Worlds' argument.  In *Mayo*—and again in *Alice*—the Court

reiterated that a claim covering an abstract idea may nonetheless be patentable if "it contains an

'*inventive concept*' sufficient to 'transform' the claimed abstract idea into a patent eligible

application."  *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1294) (emphasis added).

Specifically, a "claim that recites an abstract idea must include 'additional features'," and these

"'additional features' must be *more than* 'well-understood, routine, conventional activity'."  *Alice*,

134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1297); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d

709, 715 (Fed. Cir. 2014) (quoting *Mayo*, 132 S. Ct. at 1298) (emphasis added).  Indeed, in *Mayo*

the Supreme Court specifically stated that "[p]urely 'conventional or *obvious*' '[pre]-solution

activity' is normally not sufficient to transform an unpatentable [abstract idea] into a patent-eligible

application."  *Mayo*, 132 S. Ct. at 1298 (emphasis added); *see also id.* at 1304 (recognizing that, "in

evaluating the significance of additional steps, the § 101 patent-eligibility inquiry and, say, the

§ 102 novelty inquiry might sometimes overlap.").  Thus, although a separate inquiry from novelty

or non-obviousness, § 101 *does* take into account the routine, conventional, or obvious activities

that were in use or known before the asserted claims.

### 2.       The Asserted Claim Limitations Include No Inventive Concept

As detailed in the opening Motion, the asserted claims contain no "inventive concept" that

transforms the claimed abstract chronological organization into patentable subject matter under

§ 101.  *See* Motion at 15-18.  Each of Mirror Worlds' contrary arguments fails.

First, Mirror Worlds argues that the claims' use of "persistent" "main steams and

substreams" are "non-routine and unconventional approaches" to computer operating systems; thus,

"they add 'significantly more' under *Mayo* step 2."  Cross-Motion at 19-20.  However, that the

claimed method allegedly operates differently than other preexisting methods is of no moment; the

question is whether the claims possess "additional features" sufficient to transform the abstract idea

into a patent eligible invention.  *Alice*, 134 S. Ct. at 2357.  They do not.  As explained above, a

"stream" is nothing more than a timeline, and a "substream" is simply a subset of that timeline.

Further, "persistent" streams are just timelines that are updated.  These elements are part and parcel

with the abstract idea of chronologically ordering documents; the claims merely add generic steps

that can be performed by any generic computer and humans, which is insufficient to transform an

abstract idea into a patentable invention.  *See Alice*, 134 S. Ct. at 2358 (a claim that includes "a

mere instruction to 'implemen[t]' an abstract idea 'on…a computer'" does not pass *Mayo* step two.)

(quoting *Mayo*, 132 S. Ct. at 1301).  And, as explained above, Mirror Worlds' argument matches

the argument this Court recently rejected in *Clear with Computers,* where the Court found that "[a]

general purpose computer with minimal programming can perform functions 'automatically' and

'dynamically,' and the implementation of an abstract idea on such a computer is not an inventive

concept." Ex. 1, *CWC* at 8.  Thus, here, as in *Clear with Computers*, "a persistent main stream and substreams" are nothing more than "generic computer components used for [dynamically organizing] data.  *See id.*  And the '227 patent discloses no special algorithm or programming to achieve this generic function.  *See* Ex. 2, *Apple I*, Dkt. No. 178 (E.D. Tex. Feb. 16, 2010) at 1-2; Ex. 3, *Apple I*, Dkt. No. 302 (E.D. Tex. Aug. 11, 2010) at 8-9.[5]

Second, Mirror Worlds' effort to save the claims by identifying examples of chronological organization that would not infringe is a red herring.  Cross-Motion at 21-22.  Mirror Worlds' argument proffers nothing more than incomplete hypothetical examples that rely on a superficial characterization of the claims and, as such, prove nothing.  In contrast, the Microsoft Defendants stepped through each limitation in detail, showing how the claims preempt activity long performed by humans and lack any inventive concept.  It is that limitation-by-limitation analysis that counts, not Mirror Worlds' truncated, hypothetical analysis.[6]

**C.**    ***DDR Holdings* Does Not Apply To Claims At Issue Here**

Rather than respond to the many cases the Microsoft Defendants cite in their Motion,[7] Mirror Worlds instead tries only (but fails) to fit its claims into the narrow holding in *DDR Holdings, LLC v. Hotels.com L.P.*, the sole Federal Circuit case vacating a judgment of invalidity on §101 grounds post-*Alice*.  773 F.3d 1245 (Fed. Cir. 2014).  The claims at issue in *DDR Holdings* sought to address a problem unique to website owners and clickable advertisements:  If a website visitor clicked on an advertisement, that visitor was transported away from the host website and to

---

[5]   Furthermore, Mirror Worlds' argument that the asserted claims must be non-routine because their validity was upheld before the PTO is irrelevant.  *See* Ex. 1, *CWC*, at 11 ("the fact that the claim previously passed novelty and nonobviousness hurdles does not necessarily preclude invalidation under § 101").

[6]   Mirror Worlds also alleges that the "'227 claims are patent-eligible under the machine or transformation test," but addresses the "transformation" prong in relation to the claims only asserted against Apple.  Cross-Motion at 24-26.  Since Mirror Worlds made no argument that the claims asserted against the Microsoft Defendants are patentable under the machine or transformation test, the Microsoft Defendants do not respond to that here.

[7]   *See, e.g.*, Motion at 10-11 (citing *Cogent Medicine, Inc. v. Elsevier Inc.*; *CyberFone Sys., LLC v. Cellco P'ship*; *Data Distribution Techs., LLC v. BRER Affiliates, Inc.*; *Walker Digital, LLC v. Google, Inc.*; *Bascom Research, LLC v. LinkedIn, Inc.*; *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*).

the website of the third-party advertiser. *Id.* at 1257-58.  To address this problem, the claimed

invention there taught directing a website visitor instead to an "automatically-generated hybrid web

page that combines visual 'look and feel' elements from the host website and product information

from the third-party merchant's website related to the clicked advertisement." *Id.* at 1257.  Based

on this automatic generation of a hybrid web page—a need that did not exist before the Internet—

the Federal Circuit held that the claims at issue satisfied § 101 because:

> [The claims] do not merely recite the performance of some business practice
> known from the pre-Internet world along with the requirement to perform it on
> the Internet.  Instead, the claimed solution is necessarily rooted in computer
> technology in order to overcome a problem specifically arising in the realm of
> computer networks.

*Id.*  Even so, the Federal Circuit cautioned "that not all claims purporting to address Internet-centric

challenges are eligible for patent," and that "after *Alice*, there can remain no doubt: recitation of

generic computer limitations does not a make an otherwise ineligible claim patent-eligible." *Id.* at

1256, 1258.

Unlike the claims in *DDR Holdings,* Mirror Worlds' asserted claims are not "necessarily

rooted in computer technology in order to overcome a problem specifically arising in the realm of

computer[s]" and instead, as the '227 patent itself acknowledges, merely recite a practice that long-

existed in the paper world. *See, e.g.,* '227 patent at 4:6-30.

### 1.    The Asserted Claims Are Not Directed To A Problem That Arises Exclusively In The Realm Of Computers

Contrary to Mirror Worlds' assertion, the problem of trying to organize data is not one that

"specifically aris[es] in the realm of computer networks." *See* Cross-Motion at 8-12 (quoting *DDR

Holdings,* 773 F.3d at 1257).  Even Mirror Worlds admits, as it must, that these organizational

problems are not specific to computer technology but "are present to a different kind and degree in

paper document storage." Cross-Motion at 9.  Indeed, anyone who has ever had a messy desktop or

a disorganized file cabinet knows that staying organized is difficult when new information, whether

in paper or electronic form, constantly appears.  Notwithstanding, Mirror Worlds erroneously contends that the need to identify a storage location and/or use file folders is a computer-specific problem.  But the '227 patent itself acknowledges the opposite and explains how "conventional operating systems employ a 'desktop metaphor'" that uses "the familiar language of the paper-based world," including "files" and "folders as directories."  '227 patent at 1:32-40.  Mirror Worlds' additional references to archiving and revision tracking as computer-specific issues are equally flawed.  *See* Cross-Motion at 10-11.  One need only work a weekend collecting tax-related documents in advance of April 15 to appreciate the difficulty of archiving outside the computer world, while those who practiced law before word processor will absolutely appreciate the difficulties associated with tracking revisions to typed and re-typed memos and briefs.  Keeping up with information and keeping track of the latest information is not a challenge that arose with the advent of the computer.

Likewise, Mirror Worlds' repeated reliance on technical jargon (or "patentese"), like "persistent main stream and substreams," does not convert the abstract idea in its claims into patentable subject matter.  *See* Cross-Motion at 11.  As explained above, "persistent" just means that the chronological sequences are updated to include new items of information and the fact that a "stream" serves as a diary with a past, present and future portion simply means that the items in it can relate to past, present, or future events.  All of this was conventional and well known even in the pre-computing world (*e.g.*, a day planner containing entries and notes for past and future meetings as well as meetings occurring on the present day).  That Mirror Worlds' claims use some technical sounding terms to describe these things does not transform them into patent eligible subject matter.  In *Mayo,* and again in *Alice,* the Supreme Court repeated its warning that "[t]his Court has long 'warn[ed]…against' interpreting § 101 in ways that make patent eligibility 'depend simply on the draftsman's art'."  *Alice,* 134 S. Ct. at 2360 (quoting *Mayo*, 132 S. Ct. at 1294).  And

12

just as *Alice* recognized that "'shadow' credit and debit records" recited in the claims there are just "account ledgers" and that "'exchange institutions'" are just "banks," so too should this Court recognize here that a "main stream" is just a timeline and a "substream" is just a subset of a timeline.  *Alice*, 134 S. Ct. at 2352.  Likewise, just as the claimed "active database" at issue in *CWC* was held to be "analogous to…a rolodex of updateable customer information," so too are "persistent streams" analogous to a court's docket system (or any other paper-based system that one might update and maintain as new information becomes available), which chronologically organizes documents and updates that organization as new documents are filed.  *See* Ex. 1, *CWC*, at 8-9.

Mirror Worlds further argues that the simultaneous availability of the same copy of an electronic document in both the main stream and substream somehow saves its claims.  *See* Cross-Motion at 11.  But again, as noted above, Mirror Worlds identifies nothing in the claim language that requires its purported "single copy" distinction.  Even so, being able to have a single copy of an electronic document "simultaneously available" in both a main stream and a substream at most implies that it may be faster to practice the method on a computer, *not* that the underlying method was alien to the pre-computer world.  For example, using the docket analogy in the opening Motion, a copier can be used to make copies of the briefs filed on the court's docket system permitting a judge to simultaneously review a substream of documents (*i.e.*, the chronologically ordered set of requested briefs) that are also stored in the main stream docket.  Using a computer to organize and search the same documents in electronic form may speed that process up, but speeding up an abstract process with a computer does not render that "innovation" patent eligible.  *East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-cv-517, 2015 WL 226084, at *7 (D.N.H. Jan. 15, 2015) ("The lesson of *Alice* and the other cases [addressing § 101] is that when the alleged innovation involves the use of a generic computer to do what such computers typically do, *i.e.*, speed up a process by eliminating the need for human activity, that innovation is not an invention

eligible for patent protection.").

**2.      The Few Cases Following *DDR Holdings* Underscore That The Claims Must Be Rooted In Computer Technology, Which They Are Not Here**

*DDR Holdings* has only been found applicable in a few instances—the overwhelming majority of cases to consider *DDR Holdings* in the context of a § 101 challenge have held that it did not apply to save the claims at issue.[8]  Indeed, even the few cases that do follow *DDR Holdings* illustrate that the holding there is truly narrow and applies only to claims "*necessarily rooted* in computer technology."  773 F.3d at 1257 (emphasis added).  An analysis of these cases further demonstrates that the asserted claims here fail to rise to that level.

For example, in *Intellectual Ventures I, LLC v. Mfrs. and Traders Trust Co.*, the validity of claims directed to "providing a customized web page with content based on the user's profile and website navigation history" was upheld under *DDR Holdings*.  No. 13-1274, 2014 WL 7215193, at *9 (D. Del. Dec. 18, 2014).  The court there found the claims directed to the Internet-based task of "tailoring information delivered to an Internet user depending upon the particular needs of the user," and provide a solution that causes the computer to work in other than a "normal, expected manner." *Id.* (internal quotation marks omitted).  Here, however, Mirror Worlds can identify nothing unexpected in the manner in which the claimed, generic "computer system" of the '227 patent operates.

Next, in *Smartflash LLC v. Apple Inc.*, this Court upheld claims directed to "Digital Rights

---

[8]  A great many cases have declined to follow *DDR Holdings* for similar claims and in similar circumstances.  *See, e.g.,* Ex. 1, *CWC* at  9-10; Ex. 4, *Associate, Inc. v. Clickbooth.com, LLC*, No. 8:13-cv-1886, Dkt. No. 51, at 7-9 (C.D. Cal. Feb. 11, 2015); *In re TLI Communs.*, 2015 WL 627858, at *14; *Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA, LLC*, No. 1:13-cv-441, 2015 WL 394273, at *8 (N.D. Ill. Jan. 29, 2015); *Money Suite Co. v. 21st Century Ins. and Fin. Servs., Inc.*, No. 13-984, 2015 WL 436160, at *1, 5 (D. Del. Jan. 27, 2015); *CertusView Techs., LLC v. S & N Locating Servs., LLC*, No. 2:13-cv-346, 2015 WL 269427, at *16, 22 (E.D. Va. Jan. 21, 2015); *East Coast Sheet Metal*, 2015 WL 226084, at *6, 9; *Mortgage Grader, Inc. v. Costco Wholesale Corp.*, No. 13-43, 2015 WL 778125, at *7 (C.D. Cal. Jan. 12, 2015); *MyMedicalRecords, Inc. v. Walgreen Co.*, No. 2:13-cv-631, 2014 WL 7339201, at *5 (C.D. Cal. Dec. 23, 2014); *KomBea Corp. v. Noguar, L.C.*, No. 2:13-cv-957, 2014 WL 7359049, at *5 (D. Utah, Dec. 23, 2014); *IpLearn, LLC v. K12 Inc.*, No. 11-1026, 2014 WL 7206380, at *1, n.1 (D. Del. Dec. 17, 2014); *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, No. 12-1138, 2014 WL 7149400, at *7 (D. Del. Dec. 15, 2014).

Management." No. 6:13-cv-447, 2015 WL 661174, at *8 (E.D. Tex. Feb. 13, 2015).  The Court

noted that this "is a technology that was developed *after* widespread use of the Internet [because]

[e]ntry into the Internet Era *presented new and unique problems* for digital content providers in

combatting unauthorized use and reproduction of protected media content"; thus, *DDR Holdings*

applies.  *Id.*  (emphasis added).  Again, as explained above and in the opening Motion, nothing

associated with persistent chronological organization is new and unique to generic computers.

Then, in *Trading Techs. Int'l, Inc. v. CQG, Inc.*, the Court applied *DDR Holdings* to uphold

claims directed to solving "problems of prior graphical user interface devices (GUIs), in the context

of computerized trading, relating to speed, accuracy and usability."  No. 1:05-cv-4811, 2015 WL

774655, at *4 (N.D. Ill. Feb. 24, 2015).  The Court noted that "electronic trading has only been

viable for a couple of decades, and its analog predecessor…operate[s] in a significantly different

fashion," and found that the claimed "static price axis" added an "inventive concept" as it solved

GUI-specific problems.  *Id.* at *4-5.  In contrast, the Microsoft Defendants have shown that

persistent chronological organization has long existed; it did not solve a computer-specific problem.

Lastly, in *Intellectual Ventures I, LLC v. Motorola Mobility LLC.*, the Court upheld claims

directed to "implementing a QoS [quality of service] aware wireless point-to-multi-point

transmission system."  No. 11-908, 2015 WL 846532, at *2 (D. Del. Feb. 24, 2015).  The Court

found that the claims' specific use of "packet headers to allocate bandwidth" added an "inventive

concept" and likened them to *DDR Holdings* because they "specif[y] how interactions with the

network are manipulated to yield a desired result."  *Id.* at *10 (internal quotation marks omitted).

Once again, nothing associated with persistent chronological organization is new and unique to

generic computers or any technology beyond what a human can do with pen and paper, and the '227

patent does not specify any algorithms or unconventional computer programming designed to

perform the claimed methods.

The asserted claims in this case are not comparable to those in *DDR Holdings* or the cases above, and Mirror Worlds' reliance on *DDR Holdings* is thus misplaced.

### III.   CONCLUSION

For the reasons set forth by the Microsoft Defendants, the Court should grant judgment on the pleadings that the asserted claims are invalid under 35 U.S.C. § 101.  In the event the Court denies the Motion, the Microsoft Defendants request that, in its denial, the Court certify the issue for immediate appeal to the Federal Circuit pursuant to Federal Rule of Civil Procedure 54(b).


March 19, 2015                                        Respectfully submitted,


                                                     */s/ Mark N. Reiter*_____
                                                     William B. Dawson SBN 05606300
                                                     wdawson@gibsondunn.com
                                                     Mark N. Reiter SBN 16759900
                                                     mreiter@gibsondunn.com
                                                     Michael A. Valek SBN 24044028
                                                     mvalek@gibsondunn.com
                                                     Mandy Pezzano SBN 24074886
                                                     mpezzano@gibsondunn.com
                                                     GIBSON, DUNN & CRUTCHER LLP
                                                     2100 McKinney Avenue
                                                     Suite 1100
                                                     Dallas, TX 75201-6912
                                                     Telephone: 214.698.3100
                                                     Facsimile: 214.571.2900

                                                     *Attorneys for Defendants Microsoft Corporation, Dell Inc., Hewlett-Packard Co., and Lenovo (United States) Inc.*

/s/ Allan M. Soobert (with permission)
Allan M. Soobert
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone: (202) 551-1822
Facsimile: (202) 551-0222
allansoobert@paulhastings.com
*Attorneys for Defendants Samsung*
*Electronics America, Inc. and Samsung*
*Telecommunications America, LLC.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV–5(a).  As such, this document was served on all counsel who have consented to electronic service on March 19, 2015.

/s/ Mark N. Reiter
Mark N. Reiter