IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MIRROR WORLDS TECHNOLOGIES, LLC, <br>     Plaintiff, <br><br> vs. <br><br> APPLE INC., ET AL., <br>     Defendants. | § § § § § § § § § | CAUSE NO. 6:13-CV-419 <br> (LEAD CASE) |

## ORDER

Before the Court are Defendant Apple Inc.'s ("Apple") Motion for Summary Judgment of Preclusion under the *Kessler* Doctrine (Docket No. 254); Plaintiff Mirror Worlds Technologies LLC's ("Mirror Worlds") Cross-motion of No Preclusion (Docket No. 262); Defendants Microsoft Corporation, Dell Inc., Hewlett-Packard Co., Lenovo Inc., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC's (collectively, "PC Defendants") Motion for Judgment on the Pleadings (Docket No. 277); Apple's Motion for Judgment on the Pleadings (Docket No. 292); and Mirror Worlds' Cross-motion for Judgment on the Pleadings (Docket No. 300). On May 29, 2015, the Court heard argument on these motions.

For the reasons below, the Court **DENIES** Apple's Motion for Summary Judgment of Preclusion under the *Kessler* Doctrine (Docket No. 254); **GRANTS** Mirror World's Cross-motion of No Preclusion (Docket No. 262); **DENIES WITHOUT PREJUDICE** PC Defendants' Motion for Judgment on the Pleadings (Docket No. 277); **DENIES WITHOUT PREJUDICE** Apple's Motion for Judgment on the Pleadings (Docket No. 292); and **DENIES WITHOUT PREJUDICE** Mirror Worlds' Cross-motion for Judgment on the Pleadings (Docket No. 300).

## BACKGROUND

Mirror Worlds filed this suit, styled *Mirror Worlds Techs., LLC v. Apple Inc., et al.*, No. 6:13-cv-419 (the "Apple case"), alleging infringement of U.S. Patent No. 6,006,227 ("the '227 Patent"). The Defendants in the Apple case originally included Apple, the PC Defendants, and retailer Best Buy. Docket No. 1. On the PC Defendants' motion, the Court severed the PC Defendants into a separate action, styled *Mirror Worlds Techs., LLC v. Dell Inc., et al.*, No. 6:13-cv-941 (the "Microsoft case"). Docket No. 136. The Apple case and Microsoft case have been consolidated for pretrial purposes. *Id*. Best Buy remained a party to both the Apple case and the Microsoft case, but is stayed in both matters. Docket No. 210.

Apple filed its Motion for Summary Judgment of Preclusion based on events that took place in a prior suit between Apple and Mirror Worlds LLC, an entity unrelated to the similarly named plaintiff in this case. Docket No. 254. Mirror Worlds responded by filing a cross-motion of no preclusion. Docket No. 262. Additionally, the PC Defendants and Apple filed motions for judgment on the pleadings, arguing that the '227 Patent is invalid under 35 U.S.C. § 101 for claiming an abstract idea. Docket Nos. 277, 292. Mirror Worlds responded by filing a cross-motion that the '227 Patent is not invalid. Docket No. 299.

The '227 Patent specification discloses a "document stream" operating system that identifies documents with time indicators to maintain them in chronologically ordered "streams." '227 Patent cols. 1–3. According to the specification, this system contrasts with conventional operating systems, which use file names and hierarchical directories to organize files. *Id*. The specification provides that "conventional operating systems . . . are not well suited to the needs of most users [and sometimes] employ a 'desktop metaphor' which attempts to simplify common file operations by presenting the operations in the familiar language of the paper-based world,

that is, paper documents as files, folders as directories, a trashcan for deletion, etc." *Id*. at col. 1:31–36. The specification recites that "the paper-based model is a rather poor basis for organizing information." *Id.* at col. 1:37–38. The specification then describes six disadvantages associated with conventional operating systems. *Id*. at cols. 1, 2 (use of file names and directory structures, manual archiving, limited reminding functions, no cross-platform compatibility, no tracking of a file's creation). The patent submits that the claimed invention solves "many, if not all, of [these] disadvantages." *Id*. at col. 2:14–15.

The '227 Patent was filed June 28, 1996 and the United States Patent Office issued its second Reexamination Certificate on December 20, 2011. Docket No. 1, Ex. 1 (Reexamination Certificate 6,006,227 C2). Claim 13 is the only independent claim asserted and it recites:

> A method which organizes each data unit received by or generated by a computer system, comprising the steps of:
> generating a main stream of data units and at least one substream, the main stream for receiving each data unit received by or generated by the computer system, and each substream for containing data units only from the main stream;
> receiving data units from other computer systems;
> generating data units in the computer system;
> selecting a timestamp to identify each data unit;
> associating each data unit with at least one chronological indicator having the respective timestamp;
> including each data unit according to the timestamp in the respective chronological indicator in at least the main stream; and
> maintaining at least the main stream and the substreams as persistent streams.

*Id*. at col. 16:9–25.

## MOTIONS CONCERNING THE *KESSLER* DOCTRINE

In March 2008 Mirror Worlds LLC sued Apple for infringement of the '227 Patent. *Mirror Worlds, LLC v. Apple Inc*., No. 6:08-cv-88 (E.D. Tex.) ("*Mirror Worlds I*"). A jury found that Mac OS X versions 10.4, 10.5 and 10.6, which include Spotlight, Time Machine, and Cover Flow features, infringed claim 13 and 22. *Mirror Worlds, LLC v. Apple, Inc.*, 784 F.

3

Supp. 2d 703, 710 (E.D. Tex. 2011). The jury awarded $208.5 million to Mirror Worlds LLC. *Id*. On Apple's motions for judgment as a matter of law, the Court found that Mirror Worlds LLC did not present substantial evidence that Apple (or any of its customers[1]) ever performed the method steps (i.e., Mirror Worlds LLC did not present substantial evidence that anyone actually used the Spotlight, Time Machine, or Cover Flow features), vacated the verdict, and granted judgment in favor of Apple. *Id*. at 731. In a 2-1 ruling, the United States Court of Appeals for the Federal Circuit affirmed the District Court's ruling. *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1362 (Fed. Cir. 2012).

In 2013, Mirror Worlds LLC sold the '227 Patent to Network-1 Security Solutions, Inc., which then assigned the patent to Mirror Worlds. Docket No. 254 at 8. A few days later, Mirror Worlds filed the instant lawsuit, accusing Apple computers and servers that run Mac OS X versions 10.6, 10.7, 10.8, and 10.9. Docket No. 261 at 3. Notably, Mirror Worlds only accuses acts of infringement occurring after the *Mirror Worlds I* judgment. *Id*. Mirror Worlds' amended infringement contentions identifies Spotlight as satisfying all of the limitations in claim 13 and dependent claims 14, 15, 16 17, 18, 20, 34, 39 and 55.[2] Docket No. 254, Ex. D (Amended Claim Charts) at 2–49, 51–58, 70–78. For claim 22, Mirror Worlds contends that Spotlight satisfies all of the limitations except for the "archiving" limitation that is allegedly satisfied by Time Machine. *Id*. at 49–51. For claims 40 and 42–43, Mirror Worlds contends that Spotlight satisfies most of the limitations, and that Cover Flow satisfies the additional limitations that relate to displaying. *Id*. at 58–69.

---

[1] At the close of Mirror Worlds LLC's case-in-chief, the Court granted Apple's oral motion for judgment as a matter of law that Apple did not induce infringement of any of the patents because Mirror Worlds LLC did not offer any evidence that Apple's customers, or other third parties, actually performed the patented method. *See Mirror Worlds*, 784 F.Supp.2d at 710 & n.7. Thus, the only question that went to the jury was whether Apple directly infringed the '227 Patent by using the Spotlight, Time Machine, or Cover Flow features itself. *Id*.

[2] Because the parties' briefing primarily focuses on claim 13 and Spotlight, this Order does as well.

*Summary Judgment Standard*

Summary judgment shall be rendered when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue for trial exists, a court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

*Analysis*

The *Kessler* Doctrine provides that "when a 'new' product is 'essentially the same' as the adjudged non-infringing product, it also acquires the status of being non-infringing vis-a-vis the same accusing party or its privies." *Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045, 1057 (Fed. Cir. 2014) (citing *Foster v. Hallco Mfg. Co*., 947 F.2d 469, 479–80 (Fed. Cir. 1991)). This non-infringing status is acquired as to all claims of the previously asserted patent that were brought or could have been brought in the first case. *Id*. at 1058–59.

The *Kessler* Doctrine is based on the United States Supreme Court case of *Kessler v. Eldred*, 206 U.S. 285 (1907). In *Kessler*, the owner of a patent related to electric lighters (Eldred) filed an infringement suit against a business competitor (Kessler). Kessler succeeded in proving that his lighter did not infringe Eldred's patent. Eldred then filed suit against one of Kessler's distributors, who sold the same lighters that were at issue in the first action. Kessler

intervened to indemnify his customer, and also filed a separate suit to enjoin Eldred from asserting infringement suits against any of Kessler's customers that use the same lighter.

The Supreme Court agreed with Kessler, and found that the final judgment in the first case "settled finally and everywhere . . . that Kessler has the right to manufacture, use, and sell" his electric lighter. *Kessler*, 206 U.S. at 288. In other words, by prevailing in the first suit, Kessler had immunized his electric lighter from any future infringement suits brought by Eldred at all stages in Kessler's distribution chain.

Apple describes the instant dispute as a "straight-forward application of the *Kessler* doctrine." Docket No. 271 at 1. Apple argues that by failing to prove anyone used the Spotlight feature in *Mirror Worlds I*, computers using that software acquired the status of being a non-infringing device. Docket No. 254 at 1. Thus, Apple contends, the *Kessler* Doctrine prevents Mirror Worlds from asserting the same patent against Apple for practicing "essentially the same activity." *Id*.

Mirror Worlds responds that Apple conflates claim preclusion with the *Kessler* Doctrine. Docket No. 342 at 16:9–17:3. Mirror Worlds contends that the *Kessler* Doctrine only applies when there is a finding that an accused product "is not embraced by the asserted patent claims." Docket No. 261 at 1. To illustrate, Mirror Worlds offers the hypothetical of a patentee suing RefridgeCo for selling allegedly infringing refrigerators. Docket No. 261 at 9–10. Mirror Worlds argues that the *Kessler* Doctrine is only triggered if a court finds that RefridgeCo's refrigerators do not infringe the patent because they do not meet all of the claimed limitations. *Id*. By contrast, Mirror Worlds contends the *Kessler* Doctrine is not triggered if a court makes no ruling that the claims do not read on the refrigerators but nevertheless finds RefridgeCo does not infringe because it does not import its refrigerators into the United States. In that scenario,

Mirror Worlds submits the *Kessler* Doctrine does not bar the hypothetical patentee from bringing subsequent litigation against any RefridgeCo customer who does import the refrigerators into the U.S. *Id.*; *see also* Docket No. 342 at 21:13–18 (similar hypotheticals).

Here, the parties dispute very little.[3] Both parties admit the prior finding of non-infringement in *Mirror Worlds I* was based on the fact that Mirror Worlds LLC failed to show Apple (or its customers) used the Spotlight feature in the accused Mac OS X versions. Neither party disputes that Mirror Worlds (unlike Mirror Worlds LLC in the prior suit) has evidence that Apple (or its customers) uses the Spotlight feature in the currently accused Mac OS X versions. Docket No. 342 at 26:8–21. The parties simply disagree whether these facts are relevant. According to Apple, the *Kessler* Doctrine is automatically triggered by the *Mirror Worlds I* finding of noninfringement, regardless of the reasoning behind that finding. Docket No. 271 at 4, Docket No. 342 at 10:9–25. Mirror Worlds disagrees and argues that the Court must consider the reasoning behind the prior finding of noninfringement because the *Kessler* Doctrine is only triggered when a Court finds a claim limitation is missing from an accused product or device. Docket No. 282 at 1.

These circumstances do not give rise to a straight-forward application of the *Kessler* Doctrine. Here, a jury found that the Spotlight feature "includes every requirement or step in a single claim of" the '227 Patent. *Mirror Worlds I*, Docket Nos. 407 at 9, 408. In post-trial briefing, Apple argued that "there is no evidence that Apple performed the required steps of the '227 [Patent]" and that "[t]here is also no evidence that Mac OS X meets several claim

---

[3]Mirror Worlds does not dispute that it is "in privy" with Mirror Worlds LLC. Mirror Worlds also does not dispute that the *Kessler* Doctrine, if applicable, would bar all claims of the '227 Patent in the instant suit. In the briefing, Mirror Worlds argued that it needed additional discovery to determine if the new versions of Mac OS X are "essentially the same" as the versions accused in *Mirror Worlds I*. Docket No. 261 at 14–18. However, at the May 29, 2015 hearing, Mirror Worlds stated that it had recently taken discovery and determined that "the software, although altered, wasn't materially changed as to any of the claim limitations." Docket No. 342 at 25:9–19.

7

limitations." Docket No. 452 at 1, 2–4, 9–13. The Court agreed with Apple that Mirror Worlds LLC did not present substantial evidence that Apple (or its customers) used the Spotlight feature, but expressly declined to consider whether the Spotlight feature contained all the claim limitations. *Mirror Worlds*, 784 F. Supp. 2d at 720. The Federal Circuit affirmed that ruling, holding that Mirror Worlds LLC's circumstantial evidence was not substantial enough to support the jury's finding that Apple used the Spotlight feature. *Mirror Worlds*, 692 F.3d at 1359, 1362.[4] In sum, Apple was not liable for infringement because Mirror Worlds LLC failed to prove that Apple ever used Spotlight—not because the Spotlight feature did not contain one or more claim limitations.

Apple asserts that no "case has ever relied on th[is] distinction" in declining to apply the *Kessler* Doctrine. Docket No. 342 at 24:5–6. The opposite is likewise true—Apple cites to no binding authority that considered this distinction irrelevant. The authorities that Apple cites apply the *Kessler* Doctrine only after a finding of noninfringement based on the accused device not meeting a claim limitation. *Eldred v. Kessler*, 106 F. 509, 518 (7th Cir. 1900) (finding the accused lighter did not contain the claimed "pivoted arm carrying at its upper end the electrode"), *aff'd*, *Kessler*, 206 U.S. 285; *Brain Life*, 746 F.3d at 1052 (finding the accused products did not incorporate the claimed "analog-to-digital conversion"); *MGA, Inc. v. LaSalle Mach. Tool, Inc.*, 148 Mich. App. 350, 363 (1986) (finding the accused product did not contain the claimed "abutment means" and "like back and forth movement"), *aff'd*, *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729 (Fed. Cir. 1987); *SpeedTrack, Inc. v. Office Depot, Inc.*, No. C 07-

---

[4] Direct infringement of a method claim requires a showing that the party actually practiced the claimed method. *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009). This is an important requirement because making, using, or offering to sell a product that has the capability of infringing a method claim does not result in liability until that product actually performs the claimed method. *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 521–22 (Fed. Cir. 2012). For a well-known and marketed feature such as Spotlight, this should not be a high bar to meet because a "finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009); *Mirror Worlds*, 784 F. Supp. 2d at 715.

3602 PJH, 2014 WL 1813292, at *1 (N.D. Cal. May 6, 2014) (finding the accused product did not include the claimed "category description"), *aff'd* No. 2014-1475, 2015 WL 3953688 (Fed. Cir. Jun 30, 2015). Two problems become apparent when extending the *Kessler* Doctrine from these scenarios to the facts of this case.

First, Apple has not fully addressed the ramifications of applying the *Kessler* Doctrine to cases where the prior findings of noninfringement are not based on missing claim limitations. For example, Apple responds to the Mirror Worlds' RefridgeCo hypothetical by stating the hypothetical is "inapposite [because] Mirror Worlds did not lose its prior case against Apple on territoriality grounds." Docket No. 271 at 6. That is true, but unhelpful. Apple's response implicitly admits the need to look to the finding on noninfringement to determine if it was based on territoriality grounds. However, Apple never explains why a finding of noninfringement based on failing to use a method triggers the *Kessler* Doctrine but a finding of noninfringement based on extra-territoriality use does not.

Moreover, extending the *Kessler* Doctrine as Apple proposes does not serve the policy rationale behind the Doctrine. The *Kessler* Doctrine "fills the gap between" claim and issue preclusion to prevent a patent owner who lost an infringement action against a manufacturer from filing a new suit that post-dates the judgment in the first action under a claim or theory not actually litigated against the manufacturer. *Speedtrack*, 2015 WL 3953688, at *11. The Kessler Doctrine thus stops a patent owner from repeatedly harassing a manufacturer after a court found the manufacturer "*lawfully produces*" a "particular thing." *Brain Life*, 746 F.3d 1045, 1055–56 (internal quotations and citations omitted) (emphasis added). In the case of an originally asserted method claim, this means a finding that the accused product operates lawfully. Here, the Court never determined that performing a Spotlight search is lawful (only that Mirror Worlds LLC

failed to show Apple [or its customers] ever performed a Spotlight search). In the current suit, Mirror Worlds asserts that Apple (or its customers) infringe by actually performing Spotlight searches on post-judgment products. Thus, the concern that Mirror Worlds is somehow circumventing a prior finding of noninfringement by asserting a new theory or claim against a lawful product is not present here.

What is present here is Apple's concern with finality of judgments—that Mirror Worlds should not have a second attempt to show Mac OS X infringes. This is an important policy concern, but one is that is properly addressed by claim preclusion, not *Kessler*.[5] *See Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1294–99 (Fed. Cir. 2001) (explaining the law and purposes of claim preclusion). The *Kessler* Doctrine, when applicable, provides Apple with the full protection of a prior finding of noninfringement. However, the facts of this case do not justify applying the *Kessler* Doctrine in a nontraditional way.

The second problem arising from Apple's reading of the Kessler Doctrine concerns Apple's disparate treatment of the noninfringement and "essentially the same" requirements. *See Brain Life*, 746 F.3d 1045 at 1057. To show the products are essentially the same, Apple only considers whether each limitation of claim 13 reads on the Spotlight feature the same in the instant lawsuit as in *Mirror Worlds I*. Docket No. 254 at 10–16. Apple does not consider whether there is evidence that Apple (or its customers) use Spotlight in the accused products. In contrast, when considering the *Kessler* Doctrine's noninfringement requirement, Apple does not consider claim limitations, but argues any reason for noninfringement, such as lack of use of a method claim, can trigger the *Kessler* Doctrine. In this way, Apple treats the noninfringement requirement more broadly to include a finding that a method was not used, but limits the

---

[5] The parties indicated they will file cross-motions concerning claim preclusion. Docket No. 342 at 21:8–11. The Court expresses no opinion at this time as to the merit of such motions.

essentiality requirement to only considering whether the method contains all the claim limitations.

However, the *Kessler* Doctrine treats these requirements consistently. That is, products are adjudged to be essentially the same *with respect to the prior finding of noninfringement*. *See, e.g.*, *SpeedTrack, Inc.*, 2015 WL 3953688, at *3–4 (defendants showed their implementation of the accused software was essentially the same because the software in the second suit did not infringe for the same reason that the software in the prior suit did not infringe). For the currently accused devices to be "essentially the same" with respect to the prior finding of noninfringement in *Mirror Worlds I*, there cannot be substantial evidence that the Spotlight feature is used.

When pressed with this concern at oral argument, Apple responded that it "doesn't matter [that Mirror Worlds has evidence that Spotlight is used] because [of] the judgment of non-infringement where in the first suit the Plaintiff took a swing and a miss, they have to sit down." Docket No. 342 at 13:1–14:6. But it does matter. The *Kessler* Doctrine requires more than a finding of non-infringement—it requires finding the products are essentially the same. *Brain Life*, 746 F.3d at 1057. Showing similarity between the current Spotlight feature and the prior Spotlight feature in ways that have nothing to do with the finding of noninfringement is not relevant to ensure the full effect of the prior noninfringement ruling.

For example, if the Spotlight feature in *Mirror Worlds I* did not meet the "selecting a timestamp" limitation of Claim 13, then, in order to be essentially the same, the currently accused Spotlight feature should also not meet the "selecting a timestamp" limitation. Here, however, there was not substantial evidence that anyone used the Spotlight feature in the previous Mac OS X versions. Even if Apple is correct that the *Kessler* Doctrine can be extended

11

to situations where the noninfringement was based on the lack of use, then it stands to reason that the "essentially the same" requirement likewise turns on lack of use.

For the above reasons, the Court declines to extend the *Kessler* Doctrine to the facts of this case. Apple has not shown that the *Kessler* Doctrine's noninfringement requirement can and should be triggered by a finding that a method was not used, as opposed to a finding that a method does not perform every step or limitation of the asserted claim. Even if Apple demonstrated that lack of use can meet the *Kessler* Doctrine's noninfringement requirement, Apple failed to show why such "lack of use" is irrelevant to the *Kessler* Doctrine's essentially the same requirement. Accordingly, the Court **DENIES** Apple's Motion of Preclusion (Docket No. 254) and **GRANTS** Mirror World's Cross-Motion of No Preclusion (Docket No. 262).

## MOTIONS CONCERNING 35 U.S.C. § 101

The PC Defendants move for judgment on the pleadings that the asserted claims of the '227 Patent are ineligible for patent protection under 35 U.S.C. § 101. Docket No. 277. Apple filed a separate motion addressing claims asserted only against Apple. Docket No. 292. Mirror Worlds cross-moves for judgment on the pleadings that the asserted claims are patentable under 35 U.S.C. § 101.

*Motion on the Pleadings*

A motion for judgment on the pleadings provides the Court with a method for summary adjudication of a claim or defense after the pleadings are closed, but before trial. *See* FED. R. CIV. P. 12(c). The standard under Rule 12(c) is the same as that under a Rule 12(b)(6) motion to dismiss. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). The Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *Id.* Thus, the Court determines whether the pleadings allege "enough facts to

12

state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Abstract Idea*

Section 101 of the Patent Act defines patentable subject matter: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. "Congress took this permissive approach to patent eligibility to ensure that ingenuity should receive liberal encouragement." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (internal quotations omitted). Supreme Court precedent carves out three specific exceptions to the broad patentability principles set forth under § 101: laws of nature, physical phenomena, and abstract ideas. *Id.* These exceptions represent "the basic tools of scientific and technological work." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354, (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). "'Monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws." *Id.* (quoting *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1303 (2012)). Accordingly, courts must distinguish between patents that claim the "building blocks of human ingenuity and those that integrate the building blocks into something more." *Id.* (quoting *Mayo*, 132 S. Ct. at 1303).

The Supreme Court has set forth a two-part test for patent eligibility. *Id.* at 2355. First, the court determines whether the claims at issue are directed towards one of the three patent-

ineligible concepts. *Id.* If so, then the court then asks "what else is there in the claims before us?" *Id.* (quoting *Mayo*, 132 S. Ct. at 1296–97). To answer the second question, the court considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (internal quotations omitted). The second step is a search for an "inventive concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.' " *Id.* (quoting *Mayo*, 132 S. Ct. at 1298).

*Analysis*

The parties disagree over what, if any, abstract idea is claimed in the patent. PC Defendants assert that "the claims are directed to the abstract idea of organizing documents in chronological order on a computer." Docket No. 277 at 1. Apple asserts that "the claims are directed to the abstract idea of organizing electronic documents in chronological order." Docket No. 292 at 1. Mirror Worlds argues that the claims are directed to "using a persistent main stream and substreams to organize data units on a computer system," which Mirror Worlds submits is not abstract. Docket No. 299 at 1.

Defendants' proposals improperly restrict the alleged abstract idea to organizing "documents." Restricting the alleged abstract idea to "documents" helps analogize the invention to real-world equivalents such as diaries and day planners, but it is at odds with both the specification's summary of the invention and the claim language, which clearly refer to "documents" as electronic files or electronic information associated with a file. *See, e.g.*, '227 Patent col. 2:23–24 ("files"), col. 2:27 ("electronic documents"), col. 2:63 ("data units"), col 3:65 ("information"), col. 16:9 ("data unit" in claim 13). The reply briefs acknowledge this

discrepancy. Docket No. 312 at 3 (Apple replacing "documents" with "information"), Docket No. 314 at 1 (PC Defendants replacing "documents" with "data"). While "information" and "data" are closer to the claim language of "data unit," these descriptions sill miss the mark. In the *Markman* proceeding, the Court construed "data unit" to mean "an item of information that is of direct user interest in the user's timeline." Docket No. 266 at 14. Accordingly, the claimed method organizes not only documents, but many other different types of electronic information, potentially including pictures, movies, calendar entries, executable programs, etc.

This distinction between organizing "documents" and organizing "data units" is critical. Under § 101, the law confers patent eligibility on improvements in computer technology, but it does not confer eligibility on the mere use of a computer's standard processing capabilities to achieve a faster or more accurate result of a known method from outside the computing realm. *See Alice*, 134 S. Ct. at 2359–60 (noting that whether the claims purport to improve the functioning of the computer itself is relevant to patent eligibility); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 721 (Fed. Cir. 2014) ("In effect, *Alice* articulated a technological arts test for patent eligibility, concluding that the asserted method and system claims were patent ineligible because they did not 'improve the functioning of the computer itself' or 'effect an improvement in any other technology or technical field.' ") (Lourie, J., concurring). Using "data units" rather than "documents" clarifies that this invention is directed to improving computer technology.

Another problem with Defendants' proposals is the inclusion of the term "chronologically." This problem becomes apparent by considering the claim's purpose, which can be useful in finding the abstract idea, if any, embodied by the claims. *See California Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 991 (C.D. Cal. 2014) ("To [determine whether a claim is directed to an abstract idea], the court must identify the purpose of the

claim—in other words, what the claimed invention is trying to achieve—and ask whether that purpose is abstract."). The purpose of the claimed invention is to organize data units in a way that addresses the problems with conventional operating systems. '227 Patent cols. 1–2. Organizing them chronologically is a way to achieve that purpose. "Chronologically" is one of the limiting features (along with main streams, substreams, timestamping all data units generated and received, etc.) that describes how the invention "organizes each data unit received or generated by a computer system." '227 Patent col. 16:9–10. Thus, the "chronologically" limitation is better considered as part of the second step of the *Mayo* framework—whether the claim meaningfully limits the abstract idea to create an inventive concept.

Mirror Worlds likewise errs by pointing to claim limitations peripheral to the core idea of organizing data units to argue that the invention is not directed to an abstract idea. Mirror Worlds' identified limitations, "using a persistent main stream and substreams," limit *how* the invention organizes the data units. These limitations, along with chronological organization, are "plainly identifiable and divisible" from the remaining abstract idea of data unit organization. *See DDR Holdings, LLC v. Hotels.com*, L.P., 773 F.3d 1245, 1256 (Fed. Cir. 2014) (describing scenarios where the generic computer limitations are plainly identifiable and divisible from the abstract idea embodied in the claim). After removing these plainly identifiable and divisible limitations, the Court finds that claim 13 is directed to the abstract idea of organizing data units on a computer.

Having concluded that Claim 13 is directed to an abstract idea, the next step is to determine if the claim contains meaningful limitations that create an "inventive concept." *Mayo*, 132 S. Ct. at 1294. Defendants argue that the claim limitations denote purely conventional computer functions. Specifically, Defendants argue that a stream is nothing more than a

16

chronological stack of documents; a stream with a future component is nothing more than a day planner that has a future event scheduled and past events recorded; a persistent stream merely requires the stream to be automatically updated as new documents come in—something commonplace for computers; a mainstream including every data unit is nothing more than a very detailed diary (that includes everything of interest to the author); and a substream is simply taking several related diary entries and making a copy. Docket No. 314 at 3, 4, 9. Defendants also provide a detailed analogy of a court's docketing system by comparing every limitation of claim 13 to the "routine steps in organizing case documents." *Id*. 12–15.

Mirror Worlds responds that Defendants confuse a mainstream with a conventional timeline and data units with conventional documents. Docket No. 326 at 3–6. According to Mirror Worlds, a mainstream is an order stack of *every* data unit (letters, documents, emails, photos, music files, etc.), whereas a timeline is a set of events presented in order, such as a day planner. *Id*. at 4. Mirror Worlds argues that a mainstream organizes data units, not just documents and recorded events. *Id*. Mirror Worlds further submits that use of a persistent (automatically and dynamically updated) mainstream and persistent substreams were not known in the art prior to the invention. *Id*. at 4–5.

As indicated above, the abstract idea in question is necessarily directed to improving computer technology. The invention seeks to improve how computer operating systems organize data units, primarily by improving the "conventional operating systems [that] require the user to invent pointless names for files and to construct organizational hierarchies that quickly become obsolete." '227 Patent col. 1:27–29.

In particular, the claims address one or more of the six cited disadvantages associated with conventional operating systems. '227 Patent, cols. 1, 2. The proposed solution in claim 13

17

requires, among other things, (1) generating a main stream containing each data unit received or generated by the computer system and at least one substream, (2) selecting a timestamp to identify each data unit, (3) associating each data unit with at least one chronological indicator having the respective timestamp, (4) including each data unit according to the timestamp in the respective chronological indicator in at least the main stream, and (5) maintaining the main stream and substreams as persistent streams. The problem is specific to the field of computer operating systems and the claimed solution "purport[s] to improve the functioning of the computer itself." *Alice*, 134 S. Ct. at 2359; '227 Patent col 1:41–2:5 (listing reduced overhead, better organizing, more complete archiving, and superior reminding functioning as the invention's improvements over conventional operating systems). Claim 13 is accordingly "rooted in computer technology in order to overcome a problem specifically arising in the realm of computers." *DDR Holdings*, 773 F.3d at 1257.

For this reason, analogies to a court's docketing system or a day planner are not helpful. Defendants use these analogies to show that people have been organizing documents chronologically since the Book of Genesis. Docket No. 277 at 10. This argument is misplaced because it presumes that the claimed invention can be separated from a computer environment. Defendants thereby improperly criticize the invention as a method of using a computer to chronologically organize documents. Instead, the invention is a method whereby a computer system organizes every data unit that it receives or generates chronologically with time stamps. Claim 13 is not the type of claim that has been routinely found ineligible under *Alice*—one that claims a pre-computer (or pre-internet) activity and merely adds the limitation "do it on a computer (or webpage)."

The limitations here require the computer to *maintain* data units in a *persistent* mainstream of *all data units received or generated* and at least one *persistent substream*. Defendants argue that these limitations are routine and conventional. Docket No. 314 at 9–10; Docket No. 312 at 13–14. However, only by removing the invention from the realm of computer technology can Defendants argue that organizing "documents" or "information" chronologically is conventional. Similarly, Defendants argue that "persistent" only means "includ[ing] new items of information" and one substream "is just a subset of a timeline." Docket No. 314 at 12–13. But showing that pre-computer analogs to the claimed invention are routine and conventional is irrelevant. Defendants must show that the claimed computer functions are "well-understood, routine, conventional activit[ies]" previously known to the industry. *Alice*, 134 S. Ct. at 2359. In this procedural posture, Defendants cannot do so.

On a motion for judgment on the pleadings well-pleaded facts are accepted as true and viewed in the light most favorable to the non-movant. *Guidry*, 512 F.3d at 180. The '227 Patent, attached to the complaint, describes the claimed computer functions as unconventional. The patent describes "this invention [as] a new model and system for managing personal electronic information which uses a time-ordered stream as a storage model." '227 Patent col. 3:62–63. The patent contrasts using time ordered streams with "conventional operating systems." *Id.* at col. 2:13–16 ("One object of the present invention is to provide a document stream operating system and method which solves many, if not all, of the disadvantages of conventional operating systems."). Against this backdrop, Defendants have not provided any evidence that claimed computer functions (using persistent mainstreams and substreams) were "well-understood, routine, conventional activit[ies]" previously known to the industry at the time of filing. *See Alice*, 134 S. Ct. at 2359.

Finally, Defendants emphasize that the concern underlying the § 101 analysis is whether the claim, as a whole, disproportionately preempts this solution to a computer problem relative to the inventors' contribution.  Docket No. 342 at 41:15–17.  Defendants argue that even if the claim is rooted in computer technology and overcomes a problem specifically arising in the realm of computers, the computer functions are so generic that there is a risk of "overbroad preemption."  Docket No. 342 at 41:8–43:1.  Defendants' concern is a valid one.  *See DDR*, 773 F.3d at 1258 (cautioning that "not all claims purporting to address Internet-centric challenges are eligible for patent").  However, the Court cannot conclude at the pleading stage that claim 13 uses conventional and generic computer functions to disproportionately preempt the abstract idea.  Accordingly, the PC Defendants, Apple, and Mirror World's Motions (Docket Nos. 277, 292, 300) are **DENIED WITHOUT PREJUDICE**.  Any party may re-file its motion at the summary judgment stage, subject to the cumulative page limits for summary judgment motions in the local rules.

Further, the parties are **ORDERED** to meet and confer and file a joint status update requesting any amendments to the Docket Control Order no later than **July 17, 2015**.

**SIGNED this 7th day of July, 2015.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE